## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------

GREGORY J. DUHON, M.D.,

            Plaintiff,

       v.

THE BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, LOUISIANA STATE BOARD OF
MEDICAL EXAMINERS, HEALTHCARE
PROFESSIONALS FOUNDATION OF
LOUISIANA, PROFESSIONAL RENEWAL
CENTER, P.A., NEERAJ JAIN, M.D.,
MARGARET BISHOP-BAIER, M.D., ERIK A.
WHITFIELD, M.D., JAMES DAVID
HAMMOND, M.D., BETSY WHITE
WILLIAMS, M.D., and LAWRENCE H.
CRESSWELL, M.D.,

            Defendants.

---------------------------------------------------------

CASE NO. 20-cv-2022-KTM-KWR

JUDGE MILAZZO

MAGISTRATE JUDGE ROBY

JURY TRIAL DEMANDED

### PLAINTIFF'S RESPONSE OPPOSING DEFENDANT
### PROFESSIONAL RENEWAL CENTER'S
### MOTION TO SEVER AND TRANSFER UNDER § 1404(a)

Plaintiff Gregory J. Duhon, M.D. opposes the motion to sever and transfer filed by

Defendant Professional Renewal Center ("PRC") and respectfully requests it be denied in its

entirety.[1] The forum selection clause relied on by PRC in its motion and supporting brief ("Def.

Mem.") was not properly formed between the parties; is not enforceable for several reasons; and

---

[1] Dkt. 63, Professional Renewal Center, P.A.'s Motion to Sever and Transfer Venue Pursuant to
28 U.S.C. § 1404(a) and Fed. R. Civ. P. Rule 21 Or in The Alternative Motion to Dismiss.

is outweighed by considerations of judicial economy.[2] Plaintiff also opposes PRC's alternative motion to dismiss and responds accordingly in his consolidated brief on all Rule 12(b) motions.

## I.      Background[3]

### A.      Plaintiff's Occupationally Mandated Psychological Evaluation

PRC is an addiction treatment center in Lawrence, Kansas.[4] Its motion to sever claims under Rule 21 and transfer them to the District of Kansas under § 1404(a) relies on a forum selection clause in a "Participation Agreement" attached to its supporting memorandum (Dkt. 63-3). Defendant Betsy White Williams is PRC's Clinical Director, President, Treasurer and sole shareholder.[5] Williams has not joined in the motion. The alleged forum selection clause refers to "any dispute arising between Professional Renewal Center and me," but does not refer to disputes between Williams and Plaintiff.[6]

Plaintiff's Amended Complaint details his allegations against PRC and will not be repeated here at length.[7] In short, with respect to PRC, Plaintiff alleges that PRC conducted a fraudulent occupationally-mandated psychological evaluation ("OMPE") on Plaintiff for $6,500; concocted a false and incomprehensible "diagnosis"; and baselessly demanded he remain at PRC for 60-90

---

[2] Dkt. 63-2, supporting memorandum, attaching Dkt. 63-3 (PRC "Participation Agreement").

[3] A court may consider evidence outside the pleadings in determining a motion to sever and transfer. *See, e.g.*, *Ha Thi Le v. Lease Financial Group, LLC*, 2017 WL 2911140 (E.D. La. May 7, 2017) (denying motion to reconsider on the basis of "new" evidence that was not presented in support of the original motion).

[4] Dkt. 55, Plaintiff's Amended Complaint ("AC") ¶¶ 10, 33.

[5] Pltf. Ex. 1, State of Kansas Office of the Secretary of State Business Summary for PRC.

[6] PRC's counsel filed a motion to extend Williams' time to answer or otherwise plead to the Amended Complaint and appeared to represent her. Dkt. 82. However, when Plaintiff's counsel called a few days later to ask whether Williams intended to join in PRC's motion to sever and transfer, PRC's counsel stated that he did not know and that she would soon be represented by new counsel. Nothing has been heard from her since then.

[7] PRC's recitation of Plaintiff's allegations is  sanitized and only the relevant inaccuracies will be corrected here.

days of "treatment" at a cost of more than $50,000.[8] This has been described as a "diagnosing for dollars" scam targeting physicians.[9]

Plaintiff refused to remain at PRC after his OMPE or pay for the fraudulent "treatment," and PRC thereafter worked hand-in-glove with HPFL and LSBME in attempting to coerce and intimidate him to return.[10] When that failed, PRC did nothing to avoid the fallout and simply stood by as the harmful effects of its false report destroyed Plaintiff's career.[11]

All of this resulted in a dark and permanent stain on Plaintiff's licensing and employment records that continues to harm him on an ongoing basis.[12] Two prominent psychiatrists in Louisiana, one on the faculty of Tulane and the other on that of LSU itself, evaluated Plaintiff and declared him fit-for-duty, and both were highly critical of PRC and identified numerous flaws and inaccuracies in its OMPE report.[13]

### B.   PRC's "Participation Agreement"

The Participation Agreement was given to Plaintiff at the time of his OMPE. The essential terms of the OMPE are not contained in the Participation Agreement or any other contract with Plaintiff. Instead, they are contained in a "master contract" between PRC *and HPFL* (which Plaintiff has never seen).[14]

---

[8] AC ¶¶ 33-41.
[9] Ex. 2 "Physician Health Programs: 'Diagnosing for Dollars'?", *Clinical Psychiatry News*, Dec. 5, 2017.   https://www.mdedge.com/psychiatry/article/153573/depression/physician-health-programs-diagnosing-dollars?sso=true.
[10] AC ¶¶ 48-51.
[11] *Id.* ¶¶ 54-57, 59-61.
[12] *Id.* ¶¶ 56-57, 59(d).
[13] *Id.* ¶¶ 43-44.
[14] For a description of PRC's business model, including its master contracts with state PHPs like HPFL, *see Peterson v. Martinez*, 2017 WL 6418224 (Ct. App. Minn. Dec. 18, 2017).

PRC incorrectly asserts that "PRC's ties to Louisiana are slight."[15] To the contrary, PRC has established an active conduit with HPFL and LSBME through which physicians licensed in Louisiana are sent to Kansas for OMPEs. PRC has decided to solicit that business all over the United States, including in Louisiana.[16] The "master contract" between PRC and HPFL (and possibly LSBME) also reveals as false PRC's contention that "there was no party who had significant interaction with PRC, other than Plaintiff."[17] As detailed below, PRC anticipated more contact with HPFL and others in connection with Plaintiff's OMPE than it contemplated with Plaintiff himself.

The Participation Agreement was no "agreement" at all. Rather, it was simply a long list of rules for Plaintiff's inpatient stay at the PRC facility;[18] a list of other obligations he has and rights he has not;[19] and a list of rights PRC has and obligations it has not.[20] It was a one-way notification, signed by Plaintiff to acknowledge receipt, that imposes no obligations whatsoever on PRC. Of the two short paragraphs under a section entitled "PRC Obligations,"[21] one disclaimed any responsibility to contest legal efforts to obtain Plaintiff's records and the other promised illusory confidentiality.

The confidentiality provision included exceptions for those "with prior permission" (already coerced by HPFL[22]); and "as legally obligated in response to any legal proceeding;" and "as provided in this agreement" (which included HPFL even without permission if PRC believed

---

[15] Def. Mem. at 12.
[16] AC ¶¶33, 36, 38, 48, 50 and 81.
[17] Def. Mem. at 13.
[18] Dkt. 63-3, at 2-3 ("Obligations of Participant"), 4-5 ("Maintaining Appropriate Boundaries," "Weapons," and "Inappropriate Behavior").
[19] *Id*. at 6 ("Financial Obligations" and "[No] Medicare").
[20] *Id*. at 7-8 ("PRC Reporting Policies," "PRC Termination for Cause," and "Miscellaneous").
[21] *Id.* at 7.
[22] AC ¶ 33.

the information "could impact the Participant's ability to provide appropriate client care"[23]); and if he "failed to comply with evaluation or treatment;"[24] and if he revoked his stand-alone consent to disclosures by PRC;[25] and if his stay was terminated;[26] and in response to any litigation discovery;[27] and (apparently for good measure), any "information obtained during the evaluation process to third parties…if the team feels the disclosure is necessary for safety reasons."[28]

Also revealing are the terms for keeping Plaintiff in the dark about his own OMPE. The Participation Agreement advised Plaintiff that PRC would thoroughly document the evaluation process,[29] but he was denied "any and all rights " to that material;[30] denied any ownership or ability to review it;[31] allowed only to "request" a copy of the final report (with no assurance it would be granted);[32] and denied access to any "collateral data gathered," *i.e.* information about Plaintiff conveyed to PRC by third parties.[33] PRC aggressively opposes any effort by examinees to obtain this information.[34]

The Participation Agreement also contained various acknowledgements that Plaintiff's OMPE was "voluntary" and not the result of "fraud or duress."[35] Of course, such statements are meaningless because in all contexts they are either: (1) true, or (2) untrue and themselves the result of fraud or duress. Here, as alleged in Plaintiff's Amended Complaint, there was nothing voluntary

---

[23] Dkt. 63-3, at 7 (PRC Reporting Policies)
[24] *Id.* at 7.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 2, item 7(d).
[28] *Id.* at 3, item 8.
[29] *Id.* at 1, ¶ 7(a).
[30] *Id.* at 1, ¶ 7(b).
[31] *Id.* at 1, ¶ 7(c).
[32] *Id.* at 1, ¶ 7(e) .
[33] *Id.* at 3, item 3.
[34] *Peterson v. Martinez*, 2017 WL 6418224, *passim* (Ct. App. Minn. Dec. 18, 2017).
[35] Dkt. 63-3 at 1, ¶ 4; id. at 3 ("…I am not signing [the PA] under fraud or duress.")

about Plaintiff reporting to PRC for an OMPE in order to satisfy HPFL, which held the keys to the kingdom of medical licensure, and in reality the entire process involving PRC was forced on Plaintiff and he was under duress from beginning to end.[36]

Contrary to PRC's assertion that Plaintiff signed the Participation Agreement voluntarily,[37] the facts alleged by Plaintiff show that his future depended on doing whatever he was told by PRC, including signing anything put in front of him. An OMPE is an "*occupationally mandated psychological evaluation,*" meaning an authority with power over the patient's occupation has ordered an evaluation. Once Plaintiff selected PRC from HPFL's list of three options, the full power of that authority transferred to PRC and there was nothing voluntary about anything Plaintiff did at its direction—including signing the Participation Agreement—because if he did not, he would lose his career (which is exactly what happened when he refused to pay PRC more than $50,000 for sham "treatment" of a non-existent problem).

Several other facts are relevant to PRC's instant motion, and supporting documentation is attached hereto. For example, the Amended Complaint identifies PRC and Williams and thereafter refers to them collectively as "PRC." Plaintiff asserts in his affidavit that much of his interaction with PRC involved Williams, and that she had a personal role in the misconduct alleged.[38] Additionally, Plaintiff was an employee of LSU and his position was that of a medical fellow.[39] That agreement was amended to reflect LSU's compulsory referral of Plaintiff to HPFL.[40] Plaintiff subsequently entered into a contract with HPFL for the OMPE and any other evaluation, treatment and monitoring it might dictate.

---

[36] AC ¶¶ 19-58.
[37] Def. Mem. 4-5, 9.
[38] Pltf. Ex. 3, Affidavit of Gregory J. Duhon, M.D.
[39] AC ¶ 19
[40] Pltf. Ex. 4, Amended Plaintiff's employment contract with LSU.

## II.    Legal Standards

A district court may transfer any civil action to any other district in the interest of justice. 28 U.S.C. § 1404(a). Where the movant relies on a forum-selection clause between the parties, the Supreme Court stated in *Atlantic Marine* that it "should control except in unusual cases."[41]

Accordingly, a properly formed forum-selection clause is presumptively enforceable in this circuit.[42] However, the plaintiff may overcome this presumption by demonstrating the clause "unreasonable under the circumstances" because:[43]

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

While movants frequently rely upon *Atlantic Marine,*[44] the Fifth Circuit in subsequent decisions explained that the *Atlantic Marine* analysis must be expanded in certain complicating circumstances, two of which exist here. First, *Atlantic Marine* "presupposes that the forum selection clause is valid and that the relevant dispute falls within its scope," but if either of those is not true the clause fails.[45] Second, *Atlantic Marine* did not involve severing and "the analysis differs when there are parties who have not entered into any forum-selection contract,"[46] so even

---

[41] *Atlantic Marine Contr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013).
[42] *Weber v. PACT XPP Techs., AG,* 811 F.3d 758, 773 (5th Cir. 2016).
[43] *Barnett v. DynCorp Int'l, L.L.C.* 831 F.3d 206, 301 (5th Cir. 2016).
[44] Dkt. 63 at 1 and Dkt. 63-2 at 1, 2, 7, 8, 9, 10, 11, 14.
[45] *Fintech Fund, F.L.P. v. Horne*, 2020 WL 6588619, at *4 (5th Cir. Nov. 10., 2020).
[46] *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014).

7

if a forum-selection clause is properly formed and enforceable, a court may decide not to apply it where outweighed by considerations of judicial economy.[47]

## III.   Argument

### A.   Lack of Mutual Obligation or "Bargain"

"Federal contract law is largely indistinguishable from general contract principles under state law," thus the Fifth Circuit authorizes courts to "rely not only on federal cases, but also on treatises and state contract law cases" in deciding whether a contract was properly formed.[48] Certain challenges to validity must challenge the specific forum-selection clause itself, not just the contract as whole, but lack of formation will be successful against the clause if successful against the whole.[49]

Where a contract lacks mutual obligation, also referred to as "bargain," its forum-selection clause is not properly formed. "Both parties must be bound in order for there to be a contract."[50]As stated in *Atlantic Marine* (quotations omitted, emphasis added):[51]

> The enforcement of valid forum-selection clauses, <u>bargained</u> for by the parties, protects their legitimate expectations and furthers vital interests of the justice system….[P]laintiff bears the burden of establishing that transfer to the forum for which the parties <u>bargained</u> is unwarranted. Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege." But when a plaintiff <u>agrees by contract</u> to bring suit only in a specified forum— <u>presumably in exchange for other binding promises by the defendant</u>—the plaintiff has effectively exercised its "venue

---

[47] *Id.* at 678.

[48] *In re Deepwater Horizon*, 786 F.3d 344, 354-55 (5th Cir. 2015).

[49] *Weber v. PACT XPP Techs., AG,* 811 F.3d 758, 773-74 (5th Cir. 2016) (distinguishing between formation and other challenges to validity).

[50] *Powers v. U.S.,* 783 F.3d 570, 578 (5th Cir. 2015) (citing *Leger v. Tyson Foods, Inc.,* 95-1055 (La. App. 3 Cir. 1/31/96); 670 So.2d 397, 401.

[51] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63 (2013).

> privilege" before a dispute arises….A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their <u>bargain</u>.

The Fifth Circuit even more recently confirmed that the prerequisite "bargaining" in the context of forming a forum selection clause means the standard concept of consideration or exchange of value.[52] As stated by one court in this district, a forum selection clause "represents a valid bargained for exchange: Plaintiff received benefits he was not otherwise entitled to, and in turn, agreed to limit himself regarding choice of forum."[53]

This fundamental justification for transferring under § 1404(a) in the context of a forum selection clause—that a defendant is entitled to the "benefit of his bargain"—runs deep in the law of this circuit.[54] Indeed, PRC's motion itself argues that "justice is served by holding parties to their bargain."[55] Another way to look at this is, where a contract completely excludes the

---

[52] *3D/International, Inc. v. Romano*, 811 Fed.Appx. 244, 249 (5th Cir. 2020) ("[plaintiff] argues there was no consideration for this contract—no bargain…").

[53] *Joost v. American Commercial Barge Line LLC*, 2019 WL 1517848, at *3 (E.D. La. Apr. 8, 2019) (quoting *Taylor v. Teco Barge Line, Inc.,* 2008 U.S. Dist. Lexis 10407, at *28 (E.D. La. 2008)).

[54] *See, e.g., Perry v. BergHOFF Int'l, Inc*., 806 Fed. Appx. 321, 322 (5th Cir. 2020) ("the parties had bargained and agreed on the venue, and therefore, were bound by their bargain"); *Barnett v. DynCorp International, LLC,* 831 F.3d 296, 309 (5th Cir. 2016) (affirming transfer under a "bargained-for" forum selection clause); *In re Rolls Royce Corp.,* 775 F.3d 671, *Supreme Rice, LLC v. Turn Services, LLC*, 2020 WL 4346770, at *2 (E.D. La. Jul. 29, 2020) (denying transfer under forum selection clause "would deprive [defendant] of a part of its contractual bargain"); *Royal Smit Transformers BV v. HC BEA-LUNA M/V*, 2017 WL 819243, at *5 (E.D. La. Mar. 2, 2017) (denying transfer under forum selection clause would deny "the benefit of their bargain").

[55] Def. Mem. at 10, quoting *Atlantic Marine*, 571 U.S. at 66.

9

possibility of one party being liable for breach, the contract lacks "cause" under Louisiana state law and no proper contract was formed.[56]

Here, there was no mutuality of exchange, consideration, cause, or bargain in the Participation Agreement between Plaintiff and PRC. Plaintiff had no choice but to submit to an OMPE, and PRC knew it and the Participation Agreement promised Plaintiff nothing in return. The exchange, consideration, cause and bargain for Plaintiff's OMPE occurred between PRC and HPFL in their "master contract." Plaintiff received a list of rules, obligations, deprivations, and an invoice for $6,500. Not only did the Participation Agreement give Plaintiff no enforceable rights, but for good measure included a bloated waiver and release to cover anything that might slip through the cracks. For all of those reasons, the Participation Agreement formed no valid forum-selection clause.

In short, the forum-selection clause here did not "figure centrally in the parties' negotiations" or "affect how they set monetary and other contract terms" and was not a "critical factor in their agreement to do business together in the first place."[57] Any negotiations about the OMPE occurred between PRC and HPFL, the contract terms were in their master contract, and Plaintiff did what he was told: sign documents, submit to an invasive psychological examination for three days, and pay an invoice.

---

[56] *Total exclusion—Invalidation of contract*, 6 La. Civ. L. Treatise, Law of Obligations § 11.7 (2d ed.) ("Where parties to a contract agree to perform certain acts, but one of them restricts the consequences of his promise so that no damages will be owed in the event of breach, the nature of that party's engagement strikes at the very roots of the principal of mutuality. There is no promise at all when no action will lie for its breach. If the contract contemplates an absolute exclusion of liability, then there is no mutuality of obligation and therefore no contract. The same results may be reached on grounds of lack of consideration . . . . Louisiana courts have found no difficulty in asserting that, because it gives a party the freedom to perform or not to perform as it sees it fit, without any risk, a stipulation to an absolute exclusion of liability is without a cause and destroys the contract.")
[57] Def. Mem. at 9.

B.       **Unenforceability**

As demonstrated below, PRC's forum-selection clause is also unenforceable under three of the four factors set forth by the Fifth Circuit in *Barnett*.[58]

1.       **Fraud and Overreaching**

As detailed above, Plaintiff was funneled into PRC's "diagnosing for dollars" scam and to this day is not out. He continues to suffer the consequences of PRC's false report,[59] and PRC should be held responsible for its actions—in this forum with the other parties involved so this Court and jurors will have the full picture of what occurred. The Participation Agreement appears to be a template signed by all OMPE patients directed to PRC, so getting to the bottom of its activities may never occur if in every case PRC is able to scurry back to Kansas by invoking the forum-selection clause and hide out because no one has the funds to go after it there.

Additionally, the Participation Agreement was the product of overreaching because the entire OMPE was overreaching. PRC should have declined to conduct any OMPE at all because it violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.[60] Plaintiff had not displayed any concerning behavior,[61] he tested negative for substance use at the time,[62] and his treatment several years earlier[63] was not a lawful basis to impose an OMPE. [64]

---

[58] *Barnett v. DynCorp Int'l, L.L.C.* 831 F.3d 206, 301 (5th Cir. 2016).
[59] AC ¶¶ 2, 56-57.
[60] AC ¶ 27.
[61] *Id.* ¶¶ 21-22.
[62] *Id.* ¶¶ 1, 25.
[63] *Id.* ¶ 20.
[64] *See, e.g.,* DOJ agreement with Louisiana Supreme Court, settling ADA Title II investigation into bar admission practices, by "require[ing] the court to refrain from . . . compulsory medical examinations" on the basis of diagnoses and treatment history rather than conduct. https://www.justice.gov/opa/pr/department-justice-reaches-agreement-louisiana-supreme-court-protect-bar-candidates.

### 2.    Grave Inconvenience

If PRC's motion to sever and transfer is granted, Plaintiff as a practical matter will be deprived of his day in court against PRC. His options for finding work in medicine these days are extremely restricted in light of the harm done by Defendants to his reputation and his employment and licensing records.[65] His attempt to become licensed and find work in Mississippi was prevented by the false record in Louisiana forwarded by HPFL and/or LSBME to its counterparts in that state.[66] Plaintiff has been making ends meet by doing short-term work around the country to help facilities through complications caused by the pandemic.[67] In short, he would be financially unable to pursue a separate lawsuit in the District of Kansas in addition to the case here.[68]

Moreover, if PRC's motion to sever and transfer is granted, Plaintiff as a practical matter may be deprived of his full day in court here against the other Defendants. Judging from PRC's pitched battle with a former OMPE patient over access to his records,[69] PRC is likely to be uncooperative with legitimate discovery and Plaintiff will have few remedies if it is an out-of-state non-party.

### 3.    Contravention of Louisiana Public Policy

A forum-selection clause may be rendered unenforceable by contravening a strong public policy of the forum state.[70] Louisiana has a strong public policy against including forum-selection clauses "in an employee's contract of employment," and against enforcing one "in any civil or

---

[65] AC ¶ 4; Pltf. Ex. 3, Affidavit of Gregory J. Duhon, M.D. ¶ 10.
[66] AC ¶ 56.
[67] Pltf. Ex. 3, Affidavit of Gregory J. Duhon, M.D. ¶ 10.
[68] *Id.*
[69] *Peterson v. Martinez*, 2017 WL 6418224 (Ct. App. Minn. Dec. 18, 2017).
[70] *Barnett,* 831 F.3d at 301.

12

administrative proceeding involving an employee."[71] This includes forum-selection clauses incorporated by reference in employment contracts.[72]

Here, the Participation Agreement arose from, and was incorporated in, Plaintiff's employment contract with LSU. Plaintiff's original employment agreement was explicitly amended to obligate him to "sign up with HPFL" and comply with its "treatment guidelines."[73] HPFL in turn directed Plaintiff to obtain an OMPE, and as a precondition of that PRC required Plaintiff to sign the Participation Agreement.[74] PRC is now attempting, contrary to Louisiana public policy, to enforce a forum-selection clause in this "civil… action involving an employee" who transacted with PRC only by the demand of his employer and in his capacity as an employee.[75] This should not be allowed.[76]

PRC in its brief anticipates this general argument, but in response only recites inaccurate and irrelevant facts and cites no statute, case law, or other legal authority in arguing its forum-selection clause is enforceable despite Louisiana public policy.[77]

---

[71] LA Rev Stat § 23:921(a)(2), "The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action in involving an employee, shall be null and void" (emphasis added).

[72] *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 602 (La. 2001) ("the CBA was incorporated by reference in Sawicki's contract").

[73] Pltf. Ex. 4, Amended Contract, at p. 2 ¶¶ 9, 11.

[74] AC ¶¶ 32-34.

[75] AC ¶ 34 ("Plaintiff was an inpatient at PRC and was subjected to the comprehensive examination ordered by HPFL").

[76] *Plunk v. LKQ Birmingham, Inc.*, 2013 WL 5913755, at *4 (W.D. La., Oct. 31, 2013) (applying statute to find a contract unenforceable where it "implicates rights under an employment relationship.")

[77] Def. Mem. at 14-15.

### C.      Judicial Economy

When severing is added to transfer in the context of a forum selection clause, the Fifth Circuit adds an analysis "collapsed into an inquiry into the relative merits of convenience versus judicial economy."[78] "While judicial economy is not the sole consideration for a district court facing a severance-and-transfer motion, it retains a cardinal role."[79]

In one instance, a district court declined to apply an otherwise properly formed and enforceable forum-selection clause because severing and transferring as requested "would undermine judicial economy, which retains a 'cardinal role'" by dividing allegations and claims into two forums that were "part and parcel of the same scam. Dividing the litigation would make it difficult for those claims to be effectively considered by a single court…[and] it would make little sense to divide the claims asserted by the small business owners from the claims asserted by the small businesses."[80]

Here, Plaintiff's allegations against PRC are intertwined with those against the other Defendants, most obviously PRC's principal Williams but also HPFL[81] and LSBME,[82] who orchestrated the OMPE, destroyed the good standing of his license, and attempted to coerce him to pay for the unnecessary "treatment" by PRC. Similarly, Plaintiff's claims against PRC are interdependent with his claims against the other Defendants, again most obviously Williams;

---

[78] *In re Rolls Royce Corp.,* 775 F.3d 671, 680 (5th Cir. 2014).
[79] *Id.* at 681.
[80] *Ha Thi Le v. Lease Finance Group, LLC*, 2017 WL 2915488, at *5 (E.D. La. May 9, 2017).
[81] AC ¶¶ 33-41, 43, 45, 48-51.
[82] *Id.* ¶¶ 45, 48, 48-51, 55.

indeed, any claim against PRC is also asserted against others involved with PRC, directly or through the false OMPE report.[83]

One brief pass through the Amended Complaint demonstrates that PRC is wildly inaccurate when it implies Plaintiff has somehow named improper parties as defendants to "escape his contractual obligations" under the forum-selection clause.[84] All of the parties played a role in preparing the boulder and rolling it down the hill. HPFL and LSBME are still pushing it—through Mississippi and beyond—with disparaging records rooted in PRC's scam. Getting to the bottom of PRC's "dollars for diagnosis" scam and how it fit into the misconduct of all the other parties should occur in a single forum, and PRC should not be let off the hook by clever use of a legal mechanism not intended for that purpose.

**Conclusion**

For the foregoing reasons, Plaintiff requests that PRC's motion to sever and transfer be denied in its entirety.

Respectfully submitted,

/s/ Edward R. Moor
Edward R. Moor, T.A. (admitted *pro hac vice*) (IL
    Bar No. 6205169)
Moor Law Office, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
(312) 726-6207
erm@moorlaw.net

Jeffrey Weisman (admitted *pro hac vice*)
(IL Bar No. 6295539; DC Bar No.
986696)

---

[83] *See Id.,* Count 3 (PRC and Williams, HPFL, Hammond, and Cresswell); Count 4 (PRC and LSU); Count 5 (PRC and Williams, HPFL, and Hammond); Count 6 (PRC and Williams, HPFL, Hammond, and Cresswell); and Count 7 (PRC and Williams, HPFL, Hammond, and Cresswell).
[84] Def. Mem. at 14.

Marek Weisman LLC
55 E Monroe Street, Suite 3800
Chicago, Illinois 60603
(312) 470-7662
jweisman@marekweisman.com

and

Kerry Murphy (La. Bar. No. 31382)
kmurphy@kerrymurphylaw.com
Kerry Murphy Law LLC
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
(504) 603-1500

**_Attorneys for Plaintiff_**


## CERTIFICATE OF SERVICE

I certify that on January 19, 2021 a copy of this filing was served contemporaneously on all attorneys of record via the court's CM/ECF system.

/s/ Edward R. Moor