## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------

GREGORY J. DUHON, M.D.,

        Plaintiff,

      v.

THE BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, *et al.*,

        Defendants.

---------------------------------------------------

CASE NO. 20-cv-2022-KTM-KWR

JUDGE MILAZZO

MAGISTRATE JUDGE ROBY

## PLAINTIFF'S CONSOLIDATED RESPONSE TO
## RULE 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS

Plaintiff's Amended Complaint ("Dkt. 55") satisfies Fed. R. Civ. P. 12(b)(1) by pleading

allegations that establish this Court's authority to adjudicate the case.[1] It also satisfies 12(b)(6) by

pleading sufficient facts to permit this Court to draw the reasonable inference that Defendants are

liable for all claims pleaded.[2] For those reasons, Defendants' motions to dismiss should be denied.[3]

## I.   BACKGROUND

Plaintiff was an employee in the LSU cardiology fellowship program who was suspended

on May 23, 2019 when his supervisor Jain accused him of being impaired in the workplace.[4] He

---

[1] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Dkt. 72, filed by Louisiana State Board of Medical Examiners ("LSBME"); Dkt. 77, filed by The
Board of Supervisors of Louisiana State University and Agricultural and Mechanical College
("LSU"), Thomas C. Galligan, Jr., and Neeraj Jain, M. (collectively "LSU Defendants"); Dkt.
70, filed by Healthcare Professionals Foundation of Louisiana ("HPFL"); and Dkt. 63, filed by
Defendant Professional Renewal Center, P.A. ("PRC").

[4] Dkt. 55, ¶¶ 1, 21.

was never allowed to return, despite negative drug and alcohol tests that day;[5] two occupationally mandated psychological evaluations ("OMPEs") ordered by LSU and HPFL that did not support Jain's accusation of impairment;[6] and two additional psychological evaluations he obtained from well-respected psychiatrists at LSU and Tulane that contradicted Jain's accusation and found Plaintiff entirely fit for duty.[7] At each step along the way, Plaintiff was discriminated against on the basis of a perceived disability and was denied any notice or hearing on the actions taken against him and their supposed justification.

Plaintiff lost not only his fellowship position and any chance to transfer or become board-certified in cardiology,[8] but also his reputation, the good standing of his Louisiana physicians license, and any ability to practice medicine normally for the rest of his life.[9] This resulted from refusing PRC's shakedown to pay more than $50,000 for unnecessary "treatment" pursuant to its sham OMPE,[10] which HPFL reported to LSBME even though it has never been previously involved with Plaintiff.[11] LSBME demanded that Plaintiff comply with "treatment" by PRC, and destroyed the good standing of his license by "opening an investigation" when he refused to do so or to submit to yet more OMPEs.[12] This false stain on Plaintiff's licensing records has already prevented him from becoming licensed in Mississippi,[13] with more harm inevitable.[14]

---

[5] Dkt. 55, ¶ 25.
[6] Dkt. 55, ¶¶ 31, 47 ("even the PRC report…had ruled out" a substance abuse problem).
[7] Dkt. 55, ¶¶ 43-44,
[8] Dkt. 55, ¶¶ 59(a), (b).
[9] Dkt. 55, ¶¶ 59(c), (d).
[10] Dkt. 55, ¶¶ 36-39.
[11] Dkt. 55, ¶¶ 40, 45.
[12] Dkt. 55, ¶¶ 47-55.
[13] Dkt. 55, ¶56.
[14] Dkt. 55, ¶ 60(d).

## II.   LEGAL STANDARDS UNDER FRCP RULE 12(b)

To prevail on a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the plaintiff must establish that the court has statutory or constitutional power to adjudicate the case.[15] In ruling on such a motion, the court may rely on (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[16] "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief."[17]

To prevail on a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the complaint must plead enough facts to state a claim for relief that is plausible on its face.[18] Claims are plausible on their face when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[19] A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.[20]

## III.   12(B)(1)—SUBJECT MATTER JURISDICTION

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331 and has original jurisdiction of civil rights actions pursuant to 28 U.S.C. § 1343. It also has supplemental jurisdiction over Plaintiff's

---

[15] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).
[16] *Den Norske Stats Oljesels kap As v. Heere MacVof*, 241 F.3d 420, 424 (5th Cir. 2001).
[17] *Sureshot Gold Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 235 (5th Cir. 2018).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[19] *Id.*
[20] *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009).

related state law claims under 28 U.S.C. § 1367. Thus, as pled in the Amended Complaint, [21] this Court has subject matter jurisdiction over the federal questions and civil rights claims raised by Plaintiff, including his procedural Due Process and substantive Due Process claims asserted under the Fourteenth Amendment of the United States Constitution (Counts 1 and 2); his deprivation of Due Process rights and ADA Title II rights claims asserted under 42 U.S.C. § 1983 (Counts 3 and 5); and his Section 504 disability discrimination claim asserted under 29 U.S.C. § 794.  This Court also has supplemental jurisdiction over Plaintiff's related claims for intentional infliction of emotional distress and defamation under Louisiana state law.

### a. Defendants' Rule 12(b)(1) Arguments Fail

Defendants make two general arguments in support of their Rule 12(b)(1) motions. First, LSBME argues for dismissal under the *Younger* doctrine.[22] Second, the state entity Defendants (LSBME and LSU), and the state employee Defendants (Jain, Bishop-Baier, and Cresswell), argue for dismissal on the basis of sovereign immunity.[23]

### 1. The Younger Doctrine Does Not Apply Here

LSBME is not entitled to dismissal under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 (1971). Under that doctrine, a court will not exercise federal jurisdiction if it would interfere with ongoing state quasi-criminal proceedings. Applying the doctrine requires: (1) that exercising jurisdiction will interfere with an ongoing state judicial proceeding; (2) the state proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges.[24]

---

[21] Dkt. 55, at ¶ 17.
[22] Dkt. 72-1, at 4-7.
[23] *Id.* at 2-4; Dkt. 77-2, at 8-11.
[24] *Bice v. La. Pub. Def. Bd.,* 677 F.3d 712, 716 (5th Cir. 2012).

"Abstention from the exercise of federal jurisdiction, it must be remembered, is the exception, not the rule."[25] The doctrine does not apply merely because the state has "initiated contact" with the plaintiff, or even that "a state investigation has begun."[26] The Fifth Circuit interprets Supreme Court decisions applying *Younger* to be at a stage where "the state had already investigated the allegations, made determinations that probable cause existed, and served formal charges."[27]

LSBME recently lost this issue in *Ford v. Louisiana State Board of Medical Examiners*, 2018 WL 5016220, (E.D. La. Oct. 16, 2018). There, a physician had a history of substantiated substance abuse and had entered into consent decrees with LSBME that included periods of testing and monitoring by HPFL. Then she was advised by HPFL that she had to enter into a "lifetime" monitoring contract or "Dr. Hammond would report her to [LSBME] and her license would be "taken away."[28] LSBME subsequently wrote her a letter directing her to cooperate with HPFL and sign the lifetime contract.[29] She instead sued under ADA Title II. The *Ford* court rejected LSMBE's Rule 12(b)(1) motion and ruled that while the plaintiff had been the subject of two prior disciplinary proceedings, namely those that led to consent orders, she "does not have any pending proceedings conducted by [LSBME. It] is merely seeking to regulate Dr. Ford in light of the prior proceedings."[30]

---

[25] *Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016) (quotations omitted).

[26] *Id*.

[27] *Id.* (citation omitted)

[28] *Ford,* 2018 WL 5016220, at *1. The "Dr. Hammond" who threatened to take away the physician's license in *Ford* is the same person who threatened to take away Plaintiff's license and was named a defendant in this action.

[29] *Id.,* 2018 WL 5016220, at *4.

[30] *Id.,* 2018 WL 5016220, at *5.

Here, there is even less basis for LSBME to contend it has a pending proceeding against Plaintiff for purposes of *Younger*. He has no history at all with LSBME; HPFL simply filed a complaint and LSBME told Plaintiff to submit to the 60-90 days of treatment or he would lose his license.[31] Unwilling to relinquish his civil rights, Plaintiff instead allowed his license to lapse and try to earn his living elsewhere.[32] If LSBME has any "pending" state proceedings against Plaintiff, it would only be post-hoc camouflage for the misconduct alleged in this action and thus irrelevant under *Younger's* bad faith exception.[33] Not only does LSBME have no "ongoing" proceedings against Plaintiff, any purported "investigation" by Cresswell prior to the lapse of Plaintiff's license was far less advanced than would be required by the Fifth Circuit to warrant *Younger* abstention.[34]

Lastly, LSBME has been recently shown to be deficient in its monitoring and enforcement responsibilities. Notably, a May 2019 report by the Louisiana Legislative Auditor found that LSBME:

> has not developed formal guidance, such as an enforcement guide, *to help ensure it follows a consistent, objective approach when making enforcement decisions and that these decisions are appropriate* and properly protect the public . . . In addition, unlike other states, LSBME *does not require that anyone review the Director of Investigation's recommendations to the Board regarding enforcement cases.* An enforcement guide that establishes a graduated and equitable system of sanctions and specifies the type and number of violations that should trigger each level of sanctions would also help make LSBME's enforcement process more transparent *and help ensure the Board does not over or under-discipline licensees.*[35]

---

[31] Dkt. 55 ¶¶ 45, 48-51.

[32] Dkt. 55 ¶ 57.

[33] *See Ramelli v. Zahn*, 2020 WL 3971279, at *7-9.

[34] *Google, supra*, 822 F.2d at 223-224.

[35] *Report Highlights—Louisiana State Board of Medical Examiners, Regulation of the Medical Profession*, LOUISIANA LEGISLATIVE AUDITOR, Audit Control # 40170012 (May 2019), https://www.lla.la.gov/PublicReports.nsf/211DABEFA6D0D19C862583FB007A2AE0/$FILE/summary0001CAF7.pdf (emphasis added).

This lack of consistency and enforcements guidance is not in line with the civil enforcement proceedings akin to criminal prosecutions deserving of *Younger* abstention.

### 2. *Sovereign Immunity and Ex parte Young*

LSBME and LSU have no blanket sovereign immunity under the Eleventh Amendment, for example it does not apply to Plaintiff's claim against LSU under Section 504 of the Rehabilitation Act because the federal government requires states to expressly waive such immunity as a condition of federal funding.[36] Here, Plaintiff alleges that LSU receives federal funding.[37] Additionally, as discussed below, whether sovereign immunity is available to LSBME and LSU as to Plaintiff's procedural and substantive Due Process claims (Counts 1 and 2) is affected by whether any other vehicle is available for constitutional claims. LSBME and LSU also argue that sovereign immunity applies to Section 1983 claims asserted against them,[38] but Plaintiff does not plead any such claims.

Similarly, the state employee Defendants (Jain, Bishop-Baier, and Cresswell) have no blanket sovereign immunity. First, Plaintiff's Section 1983 claims for damages asserted against them in their individual capacities are not subject to sovereign immunity.[39] Second, Plaintiff's Section 1983 claims for injunctive relief asserted against them in their official capacities are permitted under *Ex parte Young*. Defendants imply otherwise by citing extensively to court language on the general rule of sovereign immunity,[40] but stopping short of language on the *Ex parte Young* exception.[41]

---

[36] *Block v. Texas Board of Law Examiners*, 952 F.3d 613, 619 (5th Cir. 2020)
[37] Dkt. 55 ¶ 7.
[38] Dkt. 72-1, at 3.
[39] *Short v. Gusman*, 806 Fed.Appx. 264, 267 n.2 (5th Cir. 2020).
[40] Dkt. 72-1, at 3 (*citing Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).
[41] *Pennhurst*, 465 U.S. at 102.

The *Ex parte Young* exception applies if the plaintiff asserts a claim against a state official in their official capacity alleging an ongoing violation of federal law and seeking prospective relief.[42] Here, the state employee Defendants are all officials of either LSU (Jain and Bishop-Baier) or LSBME (Cresswell) and Plaintiff pleads two claims against them in their official capacities under Section 1983.[43] (Cresswell argues he is not a "person" under Sec. 1983,[44] but it cites a case that turned on failure to seek injunctive relief.[45]) Seeking reinstatement of an employment or educational position qualifies as prospective relief.[46] Plaintiff seeks injunctive relief compelling reinstatement of his fellowship position; reinstatement of his physicians' license in good standing; and expungement or sealing of the falsely disparaging training records at LSU and licensing records at LSBME.[47]

## IV.   SUFFICIENCY OF CLAIMS UNDER FRCP 12(B)(6)

The Amended Complaint pleads seven counts against Defendants. Counts 1 and 2 assert procedural and substantive Due Process claims directly under the Fourteenth Amendment. Count 3 asserts a § 1983 claim for deprivation of Due Process rights. Count 4 asserts a disability

---

[42] *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 416 (5th Cir. 2004) (*citing Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)).

[43] Dkt. 55, ¶ 11, 12, 16, Counts 3 and 5.

[44] Dkt. 72-1, at 8.

[45] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 (1989).

[46] *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 324 (5th Cir.2008). *See also, Mathai v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 959 F. Supp. 2d 951, 958 (E.D. La. 2013), aff'd, 551 Fed. Appx. 101 (5th Cir. 2013) ("Although in *Nelson* the Fifth Circuit addressed the employment context, the court's holding appears to apply when a plaintiff seeks reinstatement to an educational program. See, e.g., *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 Fed.Appx. 364, 367 (5th Cir.2012) (affirming dismissal of student's claims against school that expelled him, because although he sought injunctive relief, he named only the school as defendant, not state officials in their official capacities); *Dupree v. Belton*, No. 10–1592, 2013 WL 701068, at *3–4 (W.D.La. Feb. 26, 2013) (considering whether plaintiff's claim that school officials violated his rights in refusing to overturn his suspension entitled him to prospective injunctive relief)").

[47] Dkt. 55, Counts 3 and 5 Prayers for Relief.

discrimination claim under Section 504 of the Rehabilitation Act. Count 5 asserts a § 1983 claim for deprivation of disability discrimination rights under ADA Title II. Count 6 asserts a claim for intentional infliction of emotional distress under Louisiana state law. Count 7 asserts a claim for defamation under Louisiana state law. All claims pleaded meet the standard of Rule 12(b)(6).

### A.  Corrections to Defendants' Motions

As a threshold matter, certain mischaracterizations and omissions in Defendants' motions warrant correction. For example, the allegations in Plaintiff's Amended Complaint are sufficiently detailed and are not rendered "conclusory" by Defendants' sheer repetition of that term.[48] Allegations stating a legal or factual conclusion are not "conclusory" if there are allegations explaining why that conclusion is reached. Moreover, echoing the required standard does not on its own make allegations conclusory.[49] General allegations are not conclusory where specific examples are alleged.[50] Defendants also truncate Plaintiff's allegations and recite them in a conclusory manner, then contend in a circular fashion that the allegations pleaded are conclusory.[51]

Also, Plaintiff does not allege that Defendants' directives for invasive, expensive, and reputationally damaging mental health evaluations and treatment were optional ("suggestions," "recommendations," or "offers"), nor that his compliance was in any way voluntary.[52] As Plaintiff

---

[48] Dkt. 63-2, at 16; Dkt. 70-1, at 6, 8, 15; Dkt. 72-1, at 9; Dkt. 77-2, at 2, 19, 21, 23, 27, 28.

[49] *Richardson v. Famous Bourbon Mgmt. Group, Inc.*, 2018 WL 3012275, at * 2 (E.D. La. Jun. 15, 2018).

[50] *A Bar and Grill with a Bit, Inc. v. Howard Hughes Corp.*, 2016 WL 6695432, *3 (E.D. La. Nov. 15, 2016).

[51] Dkt. 72-1, at 9 (LSBME condenses Plaintiff's 31-page Complaint into a one-half page summary, then argues vigorously that Plaintiff presents "a textbook case of bare conclusory allegations without more.")

[52] *See, e.g.,* Dkt. 70-1, at 3 (*citing* Dkt. 55, at ¶ 31) (Plaintiff states that Whitfield's report indicated that Plaintiff would "require" an even more extensive evaluation and registration with HPFLA, not that it "suggested" Plaintiff do so); Dkt. 70-1, at 17; Dkt. 72-1, at 2 (*citing* Dkt. 55, ¶ 48)

alleges clearly, Defendants issued strict demands and coerced his cooperation via uninterrupted threats to fire him from his job, terminate his physicians' license, and ruin his career.[53]

Nor does Plaintiff allege that "multiple individuals and entities appeared to be concerned about [his] mental health" in some legitimate fashion.[54] To the contrary, he alleges that Jain's original accusation of "mental impairment" in May 2019 was vindictive, baseless and knowingly false;[55] that Defendants thereafter knowingly perpetuated the falsehood and acted on it in unlawfully discriminatory, unconstitutional, and tortious ways;[56] and that "no evidence existed, or was later discovered, to support" their collective impression (so they say) that Plaintiff was or might be mentally impaired.[57] Moreover, Plaintiff alleges that Defendants acted as "no questions asked" enforcers for LSU and HPFL,[58] never conducted any true fact-finding "investigation," refused to consider the fit-for-duty reports of two prominent Louisiana psychiatrists who evaluated Plaintiff,[59] and that the only "resolution" discussed by LSBME with Plaintiff and his attorneys was a non-negotiable insistence that he do whatever HPFL said or have his physicians license suspended on an emergency (not due process) basis.[60]

---

(Plaintiff was quoting language used by LSBME characterizing HPFLA's and PRC's directives as "recommendations," not characterizing them as "recommendations" himself); Dkt. 77-2, at 16; Dkt. 70-1, at 4 (*citing* Dkt. 55, at ¶ 46) (Plaintiff states that HPFLA "ordered," not "offered" for Plaintiff to report to TRC.).

[53] *See, e.g.* Dkt. 55, ¶¶ 29, 31-33, 37, 40, 46-47, 50-51, 66, 90(p) & (q).

[54] Dkt. 77-2, at 18.  *See, generally, id.,* at 1-6.

[55] Dkt. 55, at ¶¶ 4, 20, 45, 49, 56, 57, 67, 74, 82, 83, 90, 110, 111.

[56] Dkt. 55, at ¶¶ 11-16, 67, 73, 74, 80-82, 90, 91, 98-100.

[57] Dkt. 55, at ¶ 58.

[58] Dkt. 55, ¶¶ 29-40, 41, 45, 46, 49, 51, 52, 54, 58.

[59] *Id.* at ¶¶ 45-46, 51-54.

[60] Dkt. 55, at ¶¶ 48, 50, 51, 54.

Moreover, Defendants' motions fail to address Plaintiff's allegations that their misconduct has inflicted severe professional and financial harm on him,[61] and continues to do so, including the denial of his recent application for a medical license in the neighboring state of Mississippi.[62] And Defendants are not entitled to apply imaginary yardsticks of credibility to Plaintiff's allegations. For example, it is irrelevant that Defendants find it "inexplicable" that they could all "be wrong" and that multiple individuals were concerned about Plaintiff's mental health,[63] especially given the blatant lack of independent inquiry by each of Defendants into the basis and veracity of the allegations against Plaintiff.

## B. Defendants Are Not Entitled to Qualified Immunity

### 1. Test to Overcome Qualified Immunity

To demonstrate the inapplicability of qualified immunity defense, a plaintiff must satisfy a two-prong test: (1) plaintiff must claim that the defendants committed a constitutional violation under current law, and (2) plaintiff must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.[64] "The central concept is that of 'fair warning:' The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[65] As will be shown below, Defendants' had more than reasonable warning that their conduct violated Plaintiff's constitutional rights.

### 2. Defendants' Arguments Fail

---

[61] Dkt. 55, ¶¶ 4, 34, 59, 60, 67, 74, 82, 107, 112.
[62] Dkt. 55, at ¶¶ 3, 56.
[63] Dkt. 77-2, at 6.
[64] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).
[65] *Id.* (*citing Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)).

Cresswell argues that he is immune from suit in his individual capacity because the Amended Complaint doesn't state any facts that show he violated Plaintiff's rights, and misleadingly characterizes Plaintiff's objection to Cresswell's conduct as Plaintiff's desire "to not be subject to Louisiana medical licensing and enforcement laws and rule."[66] Plaintiff pleads that he has a liberty or property interest in being free from unnecessary and invasive psychological evaluations, in maintain his medical license, and preventing damage to his professional reputation. The Amended Complaint is unequivocal in its claims that Cresswell deprived Plaintiff of these constitutional rights.[67] The law is clear that Plaintiff should not be deprived of his constitutional rights without due process.[68] Therefore, Cresswell should not be entitled to qualified immunity.

Jain and Bishop-Baier's invocations of qualified immunity are equally unfounded. Plaintiff alleges that Jain falsely accused him of mental impairment,[69] did not disclose the basis of his accusations against him,[70] and summarily suspended Plaintiff from clinical duties without giving Plaintiff the opportunity to seek help independently prior to being referred to CAP.[71] LSU's failure to follow its own rules pertaining to disciplinary action is a strong indication that Plaintiff was not given adequate process, considering LSU itself deemed such process necessary by inclusion of such procedures in Plaintiff's employment contract. Plaintiff does not allege that "multiple individuals and entities appeared to be concerned about [his] mental health" in some legitimate fashion.[72] To the contrary, he alleges that Jain's original accusation of "mental impairment" in

---

[66] Dkt. 72-1, at 11.
[67] Dkt. 55, at ¶ 83(f).
[68] *See, infra.* sections IV.C and IV.D.
[69] *See, e.g.* Dkt. 55, at ¶ 57.
[70] Dkt. 55, at ¶¶ 21-26, 57.
[71] *Id. at* ¶ 23.
[72] Dkt. 77-2, at 18.  *See, generally, id.,* at  1-6.

May 2019 was vindictive, baseless and knowingly false;[73] that Jain, LSU, HPFL, PRC and LSBME thereafter knowingly perpetuated the falsehood and acted on it in unlawfully discriminatory, unconstitutional, and tortious ways;[74] and that "no evidence existed, or was later discovered, to support" their collective assertion that Plaintiff was or may be mentally impaired.[75] Bishop-Baier violated Plaintiff's due process rights by allowing Embley (Plaintiff's former therapist) to serve in a disciplinary role and use confidential information against Plaintiff.[76] This is a clear conflict of interest which Bishop-Baier either knew or should have known given his position. When taken as a whole, the conduct of Defendants was objectively unreasonable.

Lastly, to the extent that Defendants HPFL, Hammond, PRC, or Williams attempt to invoke qualified immunity with respect to the claims brough against them as private actors, the law is clear that such immunity only applies to government officials.[77] Therefore, the aforementioned private defendants are not entitled to qualified immunity.

### C. Plaintiff Pleads Proper Claims for Procedural and Substantive Due Process Violations (Counts 1 and 2)

In Counts 1 and 2, Plaintiff asserts procedural and substantive Due Process claims against Defendants LSU and LSBME directly under the Fourteenth Amendment to the United States Constitution.[78] These are pleaded in the alternative to Count 3 because, LSBME and LSU previously contended that Section 1983 is not a proper vehicle for Plaintiff's constitutional Due Process claims. Plaintiff rebuts those arguments below and demonstrates Section 1983 is in fact a

---

[73] Dkt. 55, ¶¶ 4, 20, 45, 49, 56, 57, 67, 74, 82, 83, 90, 110, 111.
[74] Dkt. 55, ¶¶ 11-16, 67, 73, 74, 80-82, 90, 91, 98-100.
[75] Dkt. 55, ¶ 58.
[76] Dkt. 55, ¶ 25.
[77] *Harlow v. Fitzgerald*, 457 US. 800, 818 (1982).
[78] Dkt. 55 AC Count 1, ¶¶ 62-68.

proper vehicle, but Plaintiff pleads these claims directly under the Fourteenth Amendment in the alternative.

Courts have allowed causes of action to be found arising directly from the constitution when "necessitated primarily by the absence of alternative remedies."[79] LSU cites this principle, arguing that this court should dismiss Plaintiff's claims arising directly out of the constitution since there is an alternative statutory mechanism available in section 1983.[80] However, LSU admits that it (and by extension LSBME, also a state agency) would be immune from a Sec. 1983 claim pursuant to 11th Amendment immunity.[81] Therefore, 1983 cannot fairly be considered an "alternative remedy" for the deprivation of Plaintiff's constitution rights. Thus, a direct action under the Fourteenth Amendment remains the only avenue for Plaintiff to pursue his claims against LSU and LSBME, as "there [is] simply . . . no other means of seeking redress for flagrant violations of [Plaintiff's] constitutional rights."[82]

### 1. Elements of Procedural and Substantive Due Process Under the 14th Amendment

To state a procedural due process claim, "a plaintiff must allege facts sufficient to show that (1) she was deprived of a liberty or property interest protected by the due process clause, and (2) that she was deprived of that interest without constitutionally adequate process."[83] To state a substantive due process claim, a plaintiff "must first establish the existence of a constitutionally protected property or liberty interest. Once that interest has been established, a violation of

---

[79] *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980).
[80] Dkt. 77-2, at 8.
[81] *Id.* at 8.
[82] *Hearth*, 617 F.2d at 382.
[83] *LaCroix v. Marshall County, Mississippi*, 409 Fed. Appx. 794, 803 (5th Cir. 2011).

substantive due process still requires arbitrary and capricious conduct by the governing authority."[84]

### 2. Protected Interests and Deprivations

Plaintiff in his argument below on the sufficiency of his Section 1983 claim for deprivation of Due Process rights explains in detail the protected interests he held and the manner in which Defendants deprived him of those interests. The arguments apply here with equal force.[85]

### 3. Plaintiff Sufficiently States a Claim for Procedural and Substantive Due Process Against LSBME

As established above, courts have found liberty and property interests implicated in being free from invasive psychological evaluations, maintain one's medical license, and preventing damage to one's professional reputation.

LSBME does not dispute that Plaintiff had a protectible property or liberty interest in being free from unjustified and coerced psychological evaluations,[86] maintaining his medical license, or

---

[84] *Boudreaux v. Larpenter*, 2011-0410 (La. App. 1 Cir. 6/1/12), 110 So. 3d 159, 170 (La. Ct. App. 2012).

[85] For a concise summary of the due process violations alleged against Defendants, *see* Dkt 55, at ¶¶ 72-74 ("Plaintiff had protectible property or liberty interest in continuing his training in the LSU cardiology fellowship program. . . . LSU deprived Plaintiff of this by summarily suspending him on May 23, 2020, which eventually turned into termination. LSU acted in an arbitrary and capricious manner that substantially departed from accepted norms in such situations. . . . Plaintiff had a protectible property or liberty interest in not being subjected to unjustified and coerced psychological examinations. LSU and LSBME deprived him of this by coercing him to submit to the OMPEs by Whitfield, and later PRC, in order to (he thought) save his career. LSU and LSBME acted in an arbitrary and capricious manner that substantially departed from accepted norms in such situations. . . . Plaintiff had a protectible property or liberty interest in his Louisiana physicians' license and its good standing, as well as his professional reputation. LSU and LSBME by their improper actions put his license at risk of emergency suspension on a daily basis, and falsely stigmatized Plaintiff and his professional reputation. LSU acted in an arbitrary and capricious manner that substantially departed from accepted norms in such situations.").

[86] Dkt. 55, at ¶ 66.

15

preserving his professional reputation.[87] However, LSBME inexplicably claims that the "Amended Complaint does not set forth any facts to show what process or notice was owed . . . Nor does the Amended Complaint state any facts to show that the LSBME has 'deprived' Plaintiff of anything."[88] In reference to the constitutionally protected interests outlined above, the Amended Complaint unequivocally states that Plaintiff was deprived of each without any reasonable notice, without opportunity to review or contest their supposed basis, nor was he given an opportunity to present his own fit-for-duty rebuttal reports and other evidence.[89]

Though LSBME may claim that it opened an investigation of Plaintiff, the facts pled in the Amended Complaint clearly reveal the LSBME commenced what was in practice an enforcement action, without any review of its own.[90] On several occasions LSBME "flatly threatened to abruptly suspend Plaintiff's license on an 'emergency' basis unless he complied with the fraudulent treatment and monitoring plan of HPFL and PRC to undergo 60-90 days of inpatient treatment costing more than $50,000."[91] LSBME presented Plaintiff with one option to "resolve" the complaint against him, and refused to consider two fit for duty evaluations or any other rebuttal evidence Plaintiff possessed.[92] By presenting Plaintiff with unacceptable options—waive his civil rights or lose his license[93]—LSBME effectively deprived Plaintiff of constitutionally protected interests without sufficient process.

Lastly, LSBME deprived Plaintiff of his protected liberty and property rights in an arbitrary and capricious manner by (1) Stating it could not conclude Plaintiff was fit-for-duty; (2) attempting

---

[87] *Id.* at ¶ 67.
[88] Dkt. 72-1, at 9.
[89] Dkt. 55, at ¶¶ 48, 49, 51, 54, 56, 66, 67, 68.
[90] *Id.*
[91] *Id.* at ¶ 51.
[92] Dkt. 55, at ¶¶ 53-54.
[93] *Id.* at ¶ 57.

to conceal Plaintiff's coerced activities as "voluntary;" (3) knowingly disregarding Plaintiff's legitimate fit-for-duty reports, and (4) knowingly accepting and endorsing the false and fraudulent PRC report.[94] Furthermore, LSBME has no threshold of "specific evidence necessary to warrant psychological evaluation,"[95] and merely took the recommendations of HPFL and PRC the Plaintiff was "non-compliant" at face value as grounds for suspending Plaintiff's license.[96] The fact that LSBME had no grounds other than Plaintiff's alleged non-compliance merely punishes Plaintiff for attempting to assert his constitutional rights, which is completely irrational, arbitrary, and capricious. LSBME has demonstrated its complete incompetence and lack of investigatory/adjudicatory competence which resulted it arbitrarily forcing Plaintiff into unnecessary treatment and suspending his license.[97]

### D. Section 1983 Deprivation of Due Process (Count 3)

Plaintiff asserts a private capacity deprivation of procedural and substantive Due Process claim against Defendants HPFL, Hammond, PRC, Williams, Jain, Bishop-Baier, Whitfield, and Cresswell under 42 U.S.C. § 1983.[98] Plaintiff additionally asserts an official capacity deprivation

---

[94] *Id.* at ¶ 82(f).

[95] Dkt. 55, at ¶ 2.

[96] Dkt. 55, at ¶ 48.

[97] *See Report Highlights—Louisiana State Board of Medical Examiners, Regulation of the Medical Profession*, LOUISIANA LEGISLATIVE AUDITOR, Audit Control # 40170012 (May 2019),https://www.lla.la.gov/PublicReports.nsf/211DABEFA6D0D19C862583FB007A2AE0/$FILE/summary0001CAF7.pdf (stating that LSBME "has not developed formal guidance, such as an enforcement guide, *to help ensure it follows a consistent, objective approach when making enforcement decisions and that these decisions are appropriate* and properly protect the public. . . .[U]nlike other states, LSBME *does not require that anyone review the Director of Investigation's recommendations to the Board regarding enforcement cases.* An enforcement guide that establishes a graduated and equitable system of sanctions and specifies the type and number of violations that should trigger each level of sanctions would also help make LSBME's enforcement process more transparent *and help ensure the Board does not over or under-discipline licensees.* (emphasis added).

[98] Dkt. 55 AC Count 1, ¶¶ 76-84.

of procedural and substantive Due Process claim against Defendants Jain, Bishop-Baier, Whitfield, and Cresswell, all of whom have official government capacities, under 42 U.S.C. § 1983 and the *Ex parte Young* doctrine.[99]

### 1. Elements of Section 1983 Deprivation – Procedural and Substantive Due Process

To state a claim for substantive due process under § 1983, a plaintiff "must demonstrate: 1) they were deprived of a cognizable constitutional right; 2) the State acted with "deliberate indifference" to the protected right; and 3) the policies or practices complained of were the direct cause of the constitutional deprivation."[100] To state a claim for procedural due process under Section 1983, Plaintiff must allege facts sufficient to show that (1) he was deprived of a liberty or property interest protected by the due process clause, and (2) that he was deprived of that interest without constitutionally adequate process.[101]

### 2. Plaintiff has Established Procedural and Substantive Due Process Claims Under Sec. 1983 by Alleging Protected Interests and Deprivations

Plaintiff has a protected liberty or property interest in: (1) being free from unnecessary and invasive psychological evaluations;[102] maintaining his medical license in good standing;[103] and

---

[99] Dkt. 55 AC Count 1, ¶¶ 76-84.

[100] *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 248 (5th Cir. 2018).

[101] *LaCroix v. Marshall Cty., Mississippi*, 409 F. App'x 794, 803 (5th Cir. 2011).

[102] *Taylor v. McDonald*, 978 F.3d 209, 212-13 (5th Cir. 2020) ("To be sure, in the typical case, the conditions of confinement at a psychiatric unit will be qualitatively different from those of prison, most often in the form of psychiatric treatment. That is why prisoners undoubtedly have a liberty interest in not being transferred to a psychiatric unit in the first instance.").

[103] *Boudreaux v. Larpenter*, 2011-0410 (La. App. 1 Cir. 6/1/12), 110 So. 3d 159, 170 (La. Ct. App. 2012); *See also Ensenat v. Louisiana State Bd. of Med. Examiners,* 593 So. 2d 929, 933 (La. Ct. App. 1992). (*holding* that "possession of a medical license gives [plaintiff] a vested property interest, which guarantees him a right to due process prior to revocation of that license."); *Scally v. Texas State Bd. of Med. Examiners*, 351 S.W.3d 434, 446 (Tex. App. 2011) (*holding* that a "[medical] license is a property right, but it is one that has been created by statute and is subject to the state's power to impose conditions upon the granting or revocation of the license for the protection of society.")

preventing damage to his professional reputation.[104] Plaintiff has alleged in detail how he was deprived of these interests by Defendants without adequate Due Process, including the following acts and omissions.[105]

By HPFL and Hammond: insisting Plaintiff required further evaluation despite negative drug tests;[106] ignoring the fact that Plaintiff had no material behaviors indicating impairment as laid out in HPFL's own list of 25 substance abuse disorder indicators;[107] referring Plaintiff for treatment immediately upon receipt of Whitfield's inconclusive report;[108] ignoring contradictory evidence in the form of negative drug tests and two evaluations indicating fitness to practice medicine; endorsing PRC's false and fraudulent report; attempting to conceal Plaintiff's coerced activities as voluntary; prolonging Plaintiff's unnecessary suspension from clinical duties; and reporting Plaintiff to LSBME as "non-compliant" in response to Plaintiff's valid concerns.[109]

By PRC and Williams: falsely stating they could not conclude Plaintiff was fit-for-duty; attempting to conceal Plaintiff's coerced activities as "voluntary;" knowingly published false statements to LSU, HPFL and LSBME; knowingly disregarding Plaintiff's legitimate fit-for-duty reports; knowingly creating and promoting the false and fraudulent PRC report; and in other respects not complying with applicable legal or professional standards.[110]

By Jain: failed to provide Plaintiff with adequate notice of his suspension which turned into termination;[111] failed to adhere to proper LSU due-process procedure as reflected in Plaintiff's

---

[104] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).
[105] For a concise summary of Sec. 1984 Due Process Violations, *see* Dkt. 55, at ¶¶ 83(a)-(f).
[106] *See, e.g.* Dkt. 55, at ¶¶ 1, 32, 41, 45.
[107] *Id.* at ¶ 28.
[108] *Id.* at ¶ 32.
[109] *Id.* at ¶ 45.
[110] *Id.* at ¶ 83(e).
[111] Dkt. 55, at ¶¶ 21-25.

employment contract by giving him the opportunity to seek assistance independently before CAP referral;[112] failed to provide Plaintiff with the substance of the accusations against him;[113] summarily suspended Plaintiff's clinical duties without citing concerns regarding patient safety;[114] and throughout this process attempted to conceal Plaintiff's coerced activities as voluntary.[115]

By Bishop-Baier: failed to provide Plaintiff adequate process and discriminated against him by allowing Embley, a CAP therapist whom Plaintiff had confided in previously for unrelated reasons, to serve in a disciplinary role with respect to Plaintiff.[116] Plaintiff's previous unrelated counseling sessions with Embley were non-coerced, and Plaintiff had been assured that they were "confidential." Nonetheless, Bishop-Baier allowed Embly to use information from these Confidential sessions against Plaintiff.[117] Bishop-Baier had no apparent policies or procedures for gathering evidence and making informed decisions as to whether to compel an OMPE.[118]

By Cresswell: stating he could not conclude Plaintiff was fit-for-duty; attempting to conceal Plaintiff's coerced activities as "voluntary;" and knowingly disregarding Plaintiff's legitimate fit-for-duty reports, knowingly accepting and endorsing the false and fraudulent PRC report.[119]

The foregoing misconduct demonstrates that Defendants denied Plaintiff, in many instances, any real notice of the allegations against him, provided no opportunity for a hearing, and acted in an "arbitrary and capricious" manner as required by substantive due process claims.[120]

---

[112] *Id.* at ¶ 23.
[113] *See, e.g. Id.* at ¶¶ 21, 22, 24.
[114] *Id.* at 22.
[115] *Id.* at ¶ 82(e).
[116] *Id.* at ¶ 25.
[117] *Id.* at ¶ 26-27.
[118] *Id.* at ¶ 28.
[119] *Id.* at ¶ 82(f).
[120] *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir.1997).

### 3. *PRC's, Jain's, and Bishop-Baier's Arguments Fail*

#### a. *Plaintiff's protected liberty or property interest in being free from unnecessary and invasive psychological evaluations*

As addressed above, Plaintiff has a protected liberty or property interest in being free from unnecessary and invasive psychological evaluations, in maintain his medical license, and preventing damage to his professional reputation. Jain and Bishop-Baier cite numerous inapposite cases in an attempt to diminish the amount of process Plaintiff is due.

Addressing Plaintiff's interests in continuing his training and not being subjected to psychological examinations, Jain and Bishop-Baier attempt to conflate the standards used by courts in evaluating academic dismissals with that of non-academic dismissals. Defendants argue that the Supreme Court "has found that a dismissal from medical school for poor clinical performance, based in part on unsatisfactory personal hygiene, interactions with patients, and attendance, should be considered academic and the individual need not be afforded due process."[121] What the Court in *Horowitz* actually held, however, is that "The record . . . leaves no doubt that respondent was dismissed *for purely academic reasons*, a fact assumed without discussion by the lower courts."[122] The law is clear that an individual facing dismissal for non-academic reasons, as was the case with Plaintiff, is entitled to a full-hearing.[123] Plaintiff was never provided full hearing.

Defendants then cite *Mathai* for the proposition that concerns with Plaintiff were academic in nature.[124] *Mathai* differs completely from the facts in this case in that Plaintiff has not been

---

[121] Dkt. 77-2, at 12 (*citing Bd. of Curators of the Univ. of Mo. v. Horowitz,* 435 US. 78, 84-85 (1978)).

[122] *Horowitz*, 435 U.S. 78; 98 (1978).

[123] *Id.* at 81.

[124] Dkt. 77-2, at 11-12.

diagnosed with an active mental disorder, has submitted numerous negative drug and alcohol tests, and has received two fit for duty evaluations indicating his fitness to practice medicine. In *Mathai,* the plaintiff had been formally diagnosed with polysubstance dependence and narcissistic personality traits, and there were indications that she had falsified her negative drug screens.[125] Since there were no indications of Plaintiff having an active substance abuse issue, the *Mathai* case is completely inapposite.

Similarly, the *Shaboon* case does not apply because unlike the plaintiff in *Shaboon,* Plaintiff has not refused to acknowledge and deal with his problems—Plaintiff has shown that the accusations against him are false by furnishing two fit for duty evaluations both indicating that he was fit to practice medicine.[126] The plaintiff in *Shaboon* was dismissed after "she exhibited signs of mental illness, refused to cooperate fully with psychiatrists, and stopped taking her medication.[127] To the extent that Plaintiff has a diagnosed mental disability, it has been in remission since 2011, which has been proven by numerous negative drug and alcohol tests as well as two fit for duty evaluations. Furthermore, the behaviors exhibited by the plaintiff in *Shaboon* clearly warranted concerns over her ability to effectively treat patients,[128] where this was never a cited concern about Plaintiff.[129] Lastly, though Plaintiff's contract with LSU allowed for suspension without notice, it also imposed a requirement that such a suspension be made in good faith. As explained below, all of the circumstances surrounding Plaintiff's suspension indicate that

---

[125] *Mathai v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 959 F. Supp. 2d 951, 955 (E.D. La. 2013), aff'd, 551 Fed. Appx. 101 (5th Cir. 2013).

[126] Dkt. 55, at ¶ 50.

[127] *Mathai*, 959 F.Supp.2d at 959 (*citing Shaboon,* 252 F.3d at 725–26).

[128] *Shaboon,* 252 F.3d at 725.

[129] Dkt. 55, at ¶ 58.

it was not conducted in good faith. Contrary to Jain and Bishop-Baier's assertions, the operative facts of *Mathai* and *Shaboon* are not present here.

> b. *Plaintiff's protected liberty or property interest in his Physician's license and it's good standing*

Though LSU correctly asserts that LSBME is the party responsible for issuing physician's licenses, the contention that LSU "LSU is unable to deprive Duhon of any property interest in his physicians' license without the power to issue or take away the license,"[130] is erroneous. In the context of the regime of blind acceptance by LSBME of the recommendations and accusations against physicians made by LSU and treatment centers such as PRC, the fact that LSU does not have the direct ability to deprive Plaintiff of his medical license is irrelevant.[131] Plaintiff cites numerous facts illuminating LSU's ability to deprive Plaintiff of his medical through the pattern of blind deference to LSU exhibited by the other defendants including LSBME,[132] and by LSBME's liberal use of suspension or revocation of Plaintiff's license as a means of coercing Plaintiff into doing its bidding.[133]

> c. *Plaintiff's protected liberty or property interest in maintaining his professional reputation*

LSU, Jain, and Bishop-Baier's argument that the Amended Complaint alleges nothing "more than . . . the stigma of discharge,"[134] and therefore fails to fails to allege a liberty interest, is false. Plaintiff was "discharged in a manner that create[d] a false and defamatory impression

---

[130] Dkt. 77-2, at 15.

[131] *See Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 580-81 (10th Cir.1996) (*holding* in a due process claim brought pursuant to Sec. 1983 that Medical Center violated plaintiff's clearly established liberty interest in her professional reputation and ability to obtain future employment by interfering in professional licensing agency's investigation to determine Plaintiff's job status, where Medical Center had agreed to leave the decision up to the professional licensing agency.).

[132] Dkt. 55, at ¶¶ 35, 39, 45, 46, 48-54, 58.

[133] Dkt. 55, at ¶ 51.

[134] Dkt. 77-2, at 15.

about him[,]" which has stigmatized him and "foreclose[d] him from other employment opportunities."[135] Plaintiff alleges that Jain suspended him from his clinical duties based on false accusations of mental impairment and substance abuse.[136] LSU, Jain, and Bishop-Baier relied on the false and defamatory accusations originating with Jain creating circumstances in which Plaintiff was effectively terminated.[137] Finally, Plaintiff was in fact foreclosed from a subsequent employment opportunity as a result of the stigma.[138] Plaintiff was terminated from his position at LSU, refused to cooperate with the unlawful mandates of HPFL, LSBME, and PRC, and allowed his medical license to lapse does not make Plaintiff himself was responsible for the damage to his professional reputation,[139] considering that he was forced to do so after being presented with two unacceptable options—waive his civil rights or lose his license.[140]

### 4. HPFL and PRC's Conduct was fairly attributable to the State

PRC and HPFL argue that Plaintiff's Section 1983 due process claim must fail since their conduct did not constitute "governmental"[141] or "state"[142] action. The actions of PRC and HPFL are "fairly attributable" to the state, and therefore satisfy this requirement. The exception to the general rule that Section 1983 excludes the conduct of private entities is when their conduct is "fairly attributable to the State."[143] To demonstrate this, a plaintiff must show that:

> (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom

---

[135] *Id.* at 16 (*citing Hughes v. City of Garland,* 204 F.3d 223, 226 (5th Cir. 2000).
[136] *See, e.g.* Dkt. 55, at ¶¶ 21, 22, 57.
[137] *See, e.g. Id.* at ¶¶ 34, 57, 58.
[138] *Id.* at ¶ 56.
[139] Dkt. 77-2, at 15.
[140] Dkt. 55, at ¶ 57.
[141] Dkt. 63-2, at 16.
[142] Dkt. 70-1, at 10.
[143] *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017).

the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor.[144]

Addressing the first element above, Plaintiff alleges that HPFL "was originated by LSBME to oversee the evaluation, treatment, and monitoring of impaired or potentially impaired physicians.[145] That LSBME, a state agency, originated HPFL and charged it a portion of its responsibility, namely overseeing the mental health and fitness of Louisiana physicians, shows that HPFL carries out it's duties pursuant to an important state interest. As proof of the fact that LSBME, despite its 501(c)(3) status, is a *de facto* state actor, HPFL provides the following insight into its relationship with LSBME on its own website:

> "1984 the LSMS House of Delegates passed a resolution mandating that the LSMS, " . . . seek official designation from the *Louisiana State Board of Medical Examiners (LSBME)* for the Subcommittee on Impaired Physicians . . . to act on behalf of the Board in matters of impaired physicians." *It was hoped that this designation would afford protection to participating physicians from liability under Section 1287 (A & B) of the Medical Practice Act of 1979.* The Memorandum of Understanding by and between the Louisiana State Board of Medical Examiners and the Louisiana State Medical Society grew out of this resolution. . . . The program became a nonprofit 501c3 and the name changed to the Physicians' Health Foundation of Louisiana, Physicians Health Program. *The Physicians' Health Foundation of Louisiana continues to operate under a Memorandum of Understanding with the LSBME.* . . .[146]

HPFL was  expressly authorized to act on behalf of a LSBME, a state agency. Finally, Plaintiff thoroughly alleged the determinative nature that reports from HPFL have over LSBME's licensing decisions.[147] HPFL's ability to compel action on behalf of LSBME, a state actor, establishes that HPFL's conduct can be "fairly attributed to the state."

---

[144] *Id.*
[145] Dkt. 55, at ¶ 9.
[146] *Our History,* HPFLA, http://www.hpfla.org/about-hpfl/our-history (Last accessed 1/15/2021).
[147] *See, e.g.* Dkt 55, at ¶ 35.

The same arguments above apply with equal force to PRC. In conducting it's duties through its relationship with LSBME above, HPFL designates part of its responsibility for this state purpose to PRC by entrusting it to evaluate Louisiana Physicians. Therefore, actions undertaken by PRC on behalf of HPFL are by extension taken on behalf of the state, and are "fairly attributable to the state." In fact, PRC routinely contracts directly with the medical boards of the states from which it receives referrals.[148] Lastly, the recommendations made by PRC (as outline in the Amended Complaint) are often acted upon by LSBME without question,[149] rending such recommendations and the evaluations precipitating them attributable to the state.

**E.  Section 504 Disability Discrimination (Count 4)**

*1.  Elements of a Section 504 Action*

Plaintiff asserts a disability discrimination claim against Defendants LSU and LSBME under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.[150] The elements of a claim under Section 504 are generally the same as those of a claim under Title II of the ADA.[151] To state a claim under ADA Title II, a plaintiff must allege: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.[152] There are two slight but important differences to claims under Section 504 compared to ADA Title II: (1) the discrimination must be due solely to

---

[148] For a description of PRC's business model, including its master contracts with state PHPs like HPFLA, *see Peterson v. Martinez*, 2017 WL 6418224 (Ct. App. Minn. Dec. 18, 2017).
[149] Dkt. 55, at ¶ 35.
[150] Dkt. 55 AC Count 1, ¶¶ 85-92.
[151] *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).
[152] *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

the plaintiff's disability, not just one of the reasons;[153] and (2) there is no sovereign immunity to Section 504 claims.[154]

Regarding the first element, Plaintiff alleged that he has an actual disability as defined by the ADA, namely substance use disorder ("SUD") though in remission since 2011. There was a record of that disability, including "supplemental entries to that record by LSU and PRC through their activities; and was "regarded" as having a disability by both LSU and PRC. 42 U.S.C. § 12102."[155] by LSU and its employees Jain and Bishop-Baier; by LSBME and its employee Cresswell; and by the LSU and LSBME agents HPFL, Hammond, PRC, and Williams.[156] For purposes of Section 504, being "regarded as" having a disability is no different than actually having it.[157] Plaintiff repeatedly states that LSU and PRC acted based on the knowledge of Plaintiff's disability.

Plaintiff had a record of a disabling mental impairment,[158] which for purposes of Section 504 is no different than actually having it.[159] This record included the substance use disorder treatment received by Plaintiff in 2011, as well as the many entries by LSU, Jain, Bishop-Baier, Whitfield, HPFL, Hammond, PRC, and Williams in the course of documenting their actions against Plaintiff (which is why he is requesting prospective relief to fix those records).[160] For example, Plaintiff's application for a physician's license was halted by the State of Mississippi

---

[153] Plaintiff pleads that his disability was the sole reason for Defendants' discrimination. Dkt. 55, at ¶ 91. *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 Fed.Appx. 215, 219 (5th Cir.2018).

[154] *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir.2005) ("Because Louisiana has waived its sovereign immunity from actions under § 504 of the Rehabilitation Act, we need not address that question today.").

[155] Dkt. 55, at ¶ 89.

[156] *Id.* at ¶¶ 1, 4, 20-42, 45-58.

[157] 42 U.S.C. § 12102(1)(C) and (3).

[158] Dkt. 55, ¶¶ 1-4, 20, 26-40.

[159] 42 U.S.C. § 12102(1)(B).

[160] Dkt. 55 AC Count 3 Prayer for Relief (B), at p. 22.

27

after it received records from LSBME and/or HPFL that contained disparaging information regarding his disability.[161]

Regarding the second element, Plaintiff was qualified for his employment as a Cardiology fellow, having graduated from medical school; completed several years of graduate medical education ("GME"); and already functioning successfully in the position.[162] LSU deprived Plaintiff of the benefit of his Cardiology fellowship position by suspending him (which evolved into termination) as well as clean training records, on the basis of his disability.[163] Finally, LSU "otherwise" discriminated against Plaintiff by coercing him to submit to an impermissibly broad OMPE by Whitfield,[164] persisting in its assertion that Plaintiff was impaired despite negative substance tests,[165] impermissibly using information regarding Plaintiff's disability obtained during an earlier confidential counseling session to justify suspending Plaintiff,[166] and coercing him to register with HPFL and comply with its dictates.[167]

Plaintiff was also denied benefits by LSBME including, but not limited to, the good standing of his physicians' license and his clean licensing records.[168] LSBME also discriminated against Plaintiff in several ways including, but not limited to, threatening him with emergency suspension of his license if he refused to submit to 60-90 days of inpatient treatment at PRC at his own expense, and disparaging him to the Mississippi medical board which on that basis stopped processing Plaintiff's application for a license in that state.[169] LSBME took all of these steps based

---

[161] Dkt. 55 at ¶ 56.
[162] *Id.* at ¶ 19.
[163] *Id.* at ¶¶ 3, 4, 59(a), (b), (d).
[164] *Id.* at  ¶¶ 29-31.
[165] *Id.* at ¶¶ 25, 28.
[166] *Id.* at ¶¶ 26-27.
[167] *Id.* at ¶¶ 31-32.
[168] *Id.* at ¶¶ 3, 4, 59(c), (d).
[169] *Id.* at ¶¶ 48-57.

on (false) reports from LSU, HPFL, and PRC of Plaintiff's disability, which cannot be justified by concerns over patient safety as none had been previously cited, Plaintiff's drug and alcohol tests were all clean, and Plaintiff had received two fit for duty evaluations from reputable psychiatrists.[170]

### 2. Defendants' Arguments Fail

According to Section 504, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an *actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity*.[171] Further, "[a]n impairment that is episodic or in remission is a disability *if it would substantially limit a major life activity when active*."[172] Plaintiff's allegations are not "conclusory" or "lacking specifics" on why he believes LSU personnel regarded him as disabled[173] and Plaintiff need not describe "how this disability falls under the definition of substantially limiting one or more major life activities."[174] LSU's implicitly asserts  that a substance abuse disorder, which Plaintiff clearly established a record of, would not substantially limit major life activity when active.  But LSU regarded Plaintiff as have a disability when Jain ordered  Plaintiff to report to the LSU mental health service for an evaluation; and in that department's directive to Plaintiff to report to the LSU psychiatrist and to HPFL; and in the LSU psychiatrist's evaluation report.[175]

### 3. The Illustrative Ford Case Against LSBME and HFPL

---

[170] For a complete summary of specific discriminatory act by Defendant's by reason of Plaintiff's disability, *See* Dkt. 55, at ¶¶ 90(a)-(f).

[171] 42 U.S.C. § 12102(3)(A).

[172] 42 U.S.C. § 12102(4)(D).

[173] Dkt. 77-2, at 19.

[174] *Id.*

[175] Dkt. 55, at ¶¶ 1-2, 33-37.

The  standard for disability discrimination claims was  recently stated by the court  in a case against LSBME and HPFL, specifically *Ford v. Louisiana State Board of Medical Examiners*, 2018 WL 5016220 (E.D. La. Oct. 16, 2018). In *Ford*, the plaintiff was a physician who had a history of mental health issues. As a condition of maintaining her license, she entered into a series of Consent Orders with LSBME spanning a number of years, as well as long-term "monitoring contracts" with HPFL to verify her compliance with certain obligations during that period.[176]

HPFL notified her in 2017 that she must enter into a new "lifetime" monitoring contract even though no problems had manifested since 2010.[177] HPFL told her that if she refused to sign, it "would report her to the Board and her license would be 'taken away.'"[178] Rather than complying, she filed claims under ADA Title II against LSBME and its President in her official capacity, alleging that Plaintiff was being discriminated against on the basis of her condition by being subject to unnecessary, burdensome restrictions on her license.[179]

The Board moved to dismiss under Rule 12(b)(1), arguing that abstention was warranted under the *Younger* doctrine.[180] The court rejected this, ruling the Board was not engaged in a "civil enforcement proceeding" against plaintiff as contemplated by the doctrine, which would be disciplinary in nature, but instead "an effort to regulate [her] practice of medicine."[181]The Board also argued it had sovereign immunity.[182] The court rejected this argument too, ruling that Title II of the ADA explicitly abrogates sovereign immunity with respect to ADA Title II claims.[183]

---

[176] *Ford,* at *1.
[177] *Id.*
[178] *Id.*
[179] *Ford,* at *1, 3.
[180] *Ford,* at *2-5.
[181] *Ford*, at *5.
[182] *Ford*, at *7.
[183] *Ford,* at *7 (*citing* 42 U.S.C. § 12202).

The Board also moved to dismiss under Rule 12(b)(6), arguing that plaintiff failed to satisfy the third element of an ADA Title II claim, namely alleging an adverse decision on the basis of her disability.[184] The Board argued that the ADA permitted monitoring under the circumstances, thus its action was not adverse. The court disagreed and denied the Board's motion, ruling that the new monitoring contract was being imposed "as a result of her diagnosis, not her conduct," and thus might be proven unreasonable, and in turn violative of ADA Title II, at a later stage of the case when the merits were decided.[185] In a similar vein, the Department of Justice in 2014 settled allegations of ADA Title II violations with the Louisiana Supreme Court, which agreed to abandon bar admission policies and procedures "based…on mental health diagnoses and treatment rather than conduct…."[186] DOJ's announcement stated that "the department found that diagnosis and treatment, without problematic conduct, did not effectively predict future misconduct as an attorney and did not justify restrictions on admission…."[187]

**F.  Sec. 1983 Deprivation – ADA Title II Disability Discrimination Rights (Count 5)**

Plaintiff asserts a Section 1983 claim against the State employee Defendants (Jain, Bishop-Baier, and Cresswell) in their individual and official capacities, and against the Non-state Defendants (HPFL, Hammond, PRC, and Williams) for deprivation of his ADA Title II rights against disability discrimination.[188] The elements of a claim under ADA Title II are effectively the

---

[184] *Ford*, at *6.
[185] *Ford*, at *6.
[186] *See* https://www.justice.gov/opa/pr/department-justice-reaches-agreement-louisiana-supreme-court-protect-bar-candidates.
[187] *Id.*
[188] Dkt. 55 AC Count 1, ¶¶ 93-101.

same as those of Section 504,[189] which are here satisfied by the allegations recited by Plaintiff above in his section on that subject.[190]

### 1. *Defendants' Arguments Fail*

To the extent that Defendants PRC, HPFL, and Hammond claim that they are not "public entities"[191] subject to the requirements of Sec. 1983, Plaintiff dispenses with this argument in his Section 504 argument above by demonstrating that the conduct of all of these Defendant's is "fairly attributable to the state." Plaintiff alleges that Defendants discriminated against him on the basis of his disability in ways that include, but are not limited to:

a.   PRC failing to conduct an adequate evaluation,[192] exploiting Plaintiff's past disclosures regarding substance abuse disorder that were in remission to justify further baseless evaluations nonetheless,[193] and failing to stay within the scope of its assignment from HPFL.[194]

b.   LSBME initiating an enforcement action against Plaintiff based on the unjustified accusations of the other defendants that he had a substance abuse problem and/or mental health problem, despite 2 contradictory fitness for duty evaluations conducted by reputable psychiatrists.[195] By threatening on several occasions to abruptly suspend Plaintiff's license on an "emergency" basis unless he complied with HPFL and PRC's baseless directives.[196] In reliance on it's false beliefs of Plaintiff's impairment, reporting Plaintiff to Mississippi Medical Board.[197]

---

[189] *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).
[190] For a summary of specific discriminatory act by Defendant's by reason of Plaintiff's disability, *See* Dkt. 55, at ¶¶ 90(a)-(f).
[191] *See, e.g* Dkt. 63-2, at 17, Dkt. 70-1, at 12.
[192] Dkt. 55, at ¶ 41.
[193] *Id.* at ¶¶ 26-27.
[194] *Id.* at ¶ 30.
[195] *Id.* at ¶ 48.
[196] *Id.* at ¶ 51
[197] *Id.* at ¶ 56.

c.      Cresswell falsely stating that he could not conclude Plaintiff was fit-for-duty, attempting to conceal Plaintiff's coerced activities as "voluntary," knowingly disregarding Plaintiff's legitimate fit-for-duty reports, knowingly accepting and endorsing the false and fraudulent PRC report, and in other respects failing to comply with applicable legal or professional standards.[198]

As discussed above in Plaintiff's argument on Section 504 above, the operative facts and holding in the *Ford* case apply with equal force here. All of the actions by the Defendants outlined above were undertaken or imposed "as a result of [Plaintiff's] diagnosis [or Defendant's belief in Plaintiff's disability], not [his] conduct," and thus might be proven unreasonable, and in turn violative of ADA Title II, at a later stage of the case when the merits are thoroughly explored in discovery and presented at trial.[199]

### G.  Intentional Infliction of Emotional Distress (Count 6)

Plaintiff asserts an intentional infliction of emotional distress claim against Defendants Jain, Bishop-Baier, Whitfield, HPFL, Hammond, PRC, Williams, and Cresswell under Article 2315 of the Louisiana Code.[200]

To state a claim for intentional infliction of emotional distress in Louisiana, "a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct.[201] Where a plaintiff reasonably alleges that wrongful conduct

---

[198] *Id.* at ¶ 83(f).
[199] *Ford*, at *6.
[200] Dkt. 55 AC Count 1, ¶¶ 102-107.
[201] *Quinlan v. Sugar-Gold*, 51,191, p. 15 (La.App. 2 Cir. 4/5/17); 219 So.3d 1173, 1185.

resulted not only in the loss of a job, but the loss of an entire career, "this could be deemed sufficiently severe and outrageous as to allow recovery for intentional infliction of emotional distress" and is best left to the jury as a question of fact.[202]

Here, Plaintiff alleges that Defendants' wrongful conduct falsely stained his permanent training records at LSU and his licensing records with LSBME in a manner that effectively prevents him from having any reasonable career in medicine.[203] This harm began with Jain's false accusation, and was compounded, amplified and broadcast by Bishop-Baier, Whitfield, HPFL, Hammond, PRC, Williams, and Cresswell.

Plaintiff also establishes a pattern deliberate, repeated harassment over a period of time[204] by Defendants Jain, Bishop-Baier, Whitfield, HPFL, Hammond, PRC, Williams, and Cresswell which under the circumstances of this case should be held to constitute "extreme and outrageous behavior." Jain, Bishop-Baier, and Whitfield knowingly made false accusations regarding Plaintiff's fitness to practice medicine,[205] unlawfully used private information divulged in confidence against Plaintiff to manufacture justification for Plaintiff's suspension, and adhered to their original accusations despite negative drug screens and what can at best be described as an "inconclusive" evaluation by Whitfield, who abdicated his responsibility to sufficiently evaluate Plaintiff.[206] HPFL, Hammond, LSBME, and Cresswell's conduct was equally outrageous in refusing to accept two fit for duty reports clearing him of any mental impairment that would

---

[202] *Currier v. Entergy Services, Inc.*, 73 F.Supp.3d 673, 679 (E.D. La. 2014).
[203] Dkt. 55, ¶¶ 59(a), (b); 56, 60(d).
[204] *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 742 (ED. La. 2019).
[205] Dkt. 55, at ¶¶ 21-35.
[206] *Id.* at ¶¶ 1, 26, 31.

implicate his fitness to practice medicine, and PRC participated in the pattern by insisting on

further evaluations despite its inconclusive, even fraudulent, report from its initial evaluation.[207]

Plaintiff suffered severe emotional distress by being subjected to: (1) repeated, invasive, emotionally painful, and adversarial psychological examination in an attempt to appease Defendants;[208] (2) through the loss of his Cardiology fellowship position, Louisiana medical license, and being prevented from obtaining a Mississippi Medical License;[209] and (3) the significant financial harms he suffered by being forced to pay for the aforementioned evaluations and loss of career opportunities.[210] Regarding the final element, Defendants knew their actions were certain to cause emotional distress. False accusations of mental illness, public disclosure of private facts, loss of one's career, medical license, and repeated invasive psychological evaluations could do nothing else. Indeed, the fact that all these interests have been shown to manifest in a protectible liberty or property interest[211] indicate their direct effect on the very core of Plaintiff's well-being. This court has held, as is the case here, that when a defendant's wrongful conduct "did not lead to [Plaintiff's] loss of only . . . one job; [but] destroyed [his] career . . . [it] creates genuine issues of material fact as to its outrageous nature."[212] Plaintiff has sufficiently pled his claim for intentional infliction of emotional distress.

### H.  Defamation (Count 7)

Plaintiff asserts a defamation claim against the State employee Defendants in their individual capacities (Jain, Bishop-Baier, and Cresswell) and the Non-state entities and employees

---

[207] *Id.* at ¶ at 37.
[208] *See, e.g., Id.* at ¶¶ 29, 31, 37, 41, 43, 46.
[209] *Id.* at ¶¶ 3, 37, 56.
[210] *Id.* at ¶¶ 4, 34, 60.
[211] *See supra* Section IV.D.3.a-c.
[212] *Currier*, 73 F.Supp.3d at 679.

(HPFL, Hammond, PRC, and Williams) under Article 2315 of the Louisiana Code.[213] To state a valid defamation claim, a plaintiff must allege: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.[214] Fault and injury are presumed where, as here, defamatory statements by their nature tend to injure one's professional reputation.[215] Injury includes harm to reputation, and is not limited to pecuniary harm.[216]

The Amended Complaint pleads these elements by alleging that Jain, Bishop-Baier, Whitfield, HPFL, Hammond, PRC, Williams, and Cresswell each made a false and defamatory statements concerning Plaintiff;[217] in unprivileged publications to third parties;[218] negligently and/or intentionally;[219] and with the result of injuring Plaintiff.[220]

Jain argues he did not "publish" any false statements because he made them only internally at LSU; that Plaintiff has not identified specific defamatory statements; and that his statements are privileged because they were made in "good faith."[221] But Jain ignores that Plaintiff identifies

---

[213] Dkt. 55 AC Count 1, ¶¶ 108-112.

[214] *Finnie v. LeBlanc*, 2003-1013, p. 10 (La.App. 3 Cir. 3/10/04); 875 So.2d 71, on reh'g (July 7, 2004)).

[215] *Quinlan v. Sugar-Gold*, 51,191, p. 13 (La.App. 2 Cir. 4/5/17); 219 So.3d 1173, 1184 (emphasis added).

[216] *See Id.* ("The injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish, even when no special damage, such as loss of income, is claimed.").

[217] *See* Dkt. 55, at ¶¶ 4, 20, 26, 37, 40, 41, 42, 45, 49, 56, 57, 58, 67, 74, 82, 83, 90, 110, 111.

[218] *See, e.g.* Dkt. 55, at ¶¶ 30, 40, 50, 56, 58. (Showing statements were made without any justification or concerns about patient care).

[219] *Id.* at ¶¶ 1, 21, 25, 28, 45, 46, 49, 50, 52, 54. (showing knowledge of falsity, through negative drug tests, failure to provide justification for accusations, and contradictory evaluations).

[220] *See, e.g. Id.* at ¶¶ 4, 56, 59, 67, 74. *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997) (pertaining to elements of defamation in the Fifth Circuit).

[221] Dkt. 77-2, at 26-27.

specific false statements,[222] including that he falsely accused Plaintiff of mental impairment,[223] and that suspending Plaintiff was itself a defamatory "statement" that would be reflected in Plaintiff's permanent educational record; [224]that he knew his false statements had been relayed to others outside LSU and triggered their OMPEs or other actions against Plaintiff, including  HPFL, Whitfield, PRC, and LSMBE; and that Plaintiff alleges his false statements were most certainly not made in good faith[225] (as demonstrated by his failure to lift Plaintiff's suspension after testing and OMPEs failed to corroborate Jain's allegation).

Jain's argument that his statements cannot be considered "publication" for purposes of stating a defamation claim is without merit. A key distinction between the cases cited by Jain for this position is that here, Jain's statements were not *made within the course and scope of [his] employment"* as required for the intra-corporate communications exception.[226] As alleged in the Amended Complaint, Jain had the authority to suspend Plaintiff "whenever *it is in good-faith determined* that the continued appointment of [Plaintiff] places the safety or health of patients or University personnel in jeopardy."[227] The fact that justification for suspension was ever provided to Plaintiff,[228] and the improper use of information regarding Plaintiff's disability which was privately disclosed to CAP,[229] indicate that his suspension was not in good faith. Jain's immediate referral to CAP was also outside the scope of his employment in that he was required to provide

---

[222] Dkt. 55, ¶¶ 1, 21, 30 83, and 90
[223] *See, e.g.* Dkt. 55, ¶¶ 20, 21, 30, 57.
[224] Dkt. 55, ¶¶ 4, 20, 45, 49, 56, 57, 67, 74, 82, 83, 90, 110, 111.
[225] Dkt. 55, ¶¶ 21, 25, 32, 47 and 58.
[226] *Doe v. Grant*, 2001-0175, p. 8 (La.App. 4 Cir. 1/29/03); 839 So.2d 408, 416, writ denied, 2003-0604 (La. 5/2/03); 842 So.2d 1102.
[227] Dkt. 55, at ¶ 22.
[228] *Id.* at ¶¶ 21-23, 58.
[229] *Id.* at ¶¶ 26-27.

Plaintiff with the opportunity to seek help independently prior to doing so.[230] In cases applying the intra-corporate communication exception to communications implicating concerns over patient safety, the otherwise defamatory statements were in response to clearly defined instances of conduct, and were subject to peer review.[231] Here, there was no peer review of the accusations against Plaintiff, and Plaintiff wasn't even aware of their substance. CAP took Jain's accusations at face value and adhered to them despite all evidence pointing to Plaintiff being fit to practice medicine, and the abject falsity of Plaintiff having relapsed.

HPFL contends, incorrectly, that the Complaint fails to state a defamation claim because (1) its knowingly false and injurious statements were "mere opinions,"[232] and (2) Jain and HPFL contend their knowingly false and injurious statements were "entitled to qualified privilege."[233]

False statements are mere "opinions" only if they are so "purely subjective [that they] can be neither true nor false."[234] HPFL's statements about physicians it is monitoring are not only <u>capable</u> of being objective and true, they are <u>expected</u> to be accurate. Here, the false statements made by Jain and HPFL to LSU, PRC and LSMBE could not be reasonably considered "purely subjective," for example statements alleging mental impairment and HPFL's statements that Plaintiff was mentally unstable; constituted a threat to patients, co-workers and/or himself; was unfit for duty as a physician; was a substance abuser; and required not one but many psychological evaluations.[235] Given HPFL's position as a lieutenant to LSBME, "ordinary persons" hearing its statements about Plaintiff "would be likely to understand it…as a statement of existing fact."[236]

---

[230] *Id.* at ¶ 23.
[231] *See, e.g. Doe*, 839 So.2d at 416; *Ioppolo v. Rumana*, 581 Fed.Appx. 321, 329 (5th Cir. 2014).
[232] Dkt. 70-1 at 17.
[233] Dkt. 70-1 at 18; Dkt. 77-2 at 17.
[234] *Purcell v. Tulane Univ. of Louisiana*, 2017 WL 2311735, at *3-4 (E.D. La. May 26, 2017).
[235] *See, e.g.,* Dkt. 55, at ¶¶ 29, 31, 37, 41, 43, 46.
[236] *Sanders v. Dillard Univ.*, 2014 WL 7342440, *8 (E.D. La. Dec. 23, 2014).

HPFL's statements are actionable because, at very least, they defame Plaintiff by implying the existence of false and damaging underlying facts.[237] The above principles also disqualify statements made by Jain as being his subjective opinion for the very same reasons. Finally, it has been held that statements calling to question one's fitness to practice medicine as defamatory per se, irrespective of defamatory intent.[238]

Additionally, Jain and HPFL are not entitled to qualified privilege for their false statements about Plaintiff for one simple reason: their statements were not uttered in good faith. Even the case law cited in HPFL's motion acknowledges this fundamental requirement to invoke qualified privilege.[239] "Good faith" is defined as "having reasonable grounds for believing that the statement is correct."[240] Here, Plaintiff alleges the exact opposite. Among other things, HPFL ignored evaluation reports by two prominent psychiatrists who thoroughly evaluated and cleared him.[241] Indeed, HPFL not only lacked good faith, but acted in bad faith by making its false statements about Plaintiff to further its effort to force Plaintiff to comply with PRC's 60-90 day inpatient sentence by complaining to the Board and recruiting it as the new coercive enforcer after Plaintiff resigned from LSU and that enforcer was lost.[242] As usual, HPFL expected to receive its share of the pie when Plaintiff emerged from PRC's "treatment" and signed the standard five-year monitoring contract with HPFL that would permit it to charge tens of thousands of dollars to

---

[237] *Id.*

[238] *Doe*, 839 So.2d at 415 ("Each of the above statements qualifies as defamatory per se. Each call[] into question Dr. Zamanian's practice as a doctor and whether he had used the appropriate standard of care in the *Mearis* case. It doesn't matter as the defendants suggest, that there was no defamatory intent . . ."). *Quinlan v. Sugar-Gold*, 51,191, p. 13 (La.App. 2 Cir. 4/5/17); 219 So.3d 1173, 1184.

[239] *See, e.g.*, 77-2 at 22 (*citing Hines v. Arkansas Louisiana Gas C0.*, 613 So. 2d 646, 656 (La. Ct. App.), writ denied, 617 So. 2d 932 (La. 1993).

[240] *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730, 749.

[241] Dkt. 55, at ¶ 45.

[242] Dkt. 55, at ¶¶ 34, 35.

Plaintiff for HPFL's monitoring services. In short, HPFL did not make false statements against Plaintiff in good faith.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) be denied in their entirety.

Respectfully submitted,

/s/ Edward R. Moor
Edward R. Moor, T.A. (admitted *pro hac vice*)
(IL Bar No. 6205169)
Moor Law Office, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
(312) 726-6207
erm@moorlaw.net

Jeffrey Weisman (admitted *pro hac vice*)
(IL Bar No. 6295539; DC Bar No. 986696)
Marek Weisman LLC
55 E Monroe Street, Suite 3800
Chicago, Illinois 60603
(312) 470-7662
jweisman@marekweisman.com

and

Kerry Murphy (La. Bar. No. 31382)
kmurphy@kerrymurphylaw.com
Kerry Murphy Law LLC
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
(504) 603-1500

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 19, 2021 a copy of this filing was served contemporaneously on all attorneys of record via the court's CM/ECF system.

<u>/s/ Edward R. Moor</u>