UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

| | |
|---|---|
| GREGORY J. DUHON, M.D., | |
| Plaintiff, | CASE NO. 20-cv-2022-KTM-KWR |
| v. | JUDGE MILAZZO |
| THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, LOUISIANA STATE BOARD OF MEDICAL EXAMINERS, HEALTHCARE PROFESSIONALS FOUNDATION OF LOUISIANA, PROFESSIONAL RENEWAL CENTER, P.A., NEERAJ JAIN, M.D., MARGARET BISHOP-BAIER, M.D., ERIK A. WHITFIELD, M.D., JAMES DAVID HAMMOND, M.D., BETSY WHITE WILLIAMS, M.D., and LAWRENCE H. CRESSWELL, M.D., | MAGISTRATE JUDGE ROBY |
| | JURY TRIAL DEMANDED |
| Defendants. | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WHITFIELD'S RULE 12(b)(6) and 12(b)(1) MOTION TO DISMISS**

Plaintiff, GREGORY J. DUHON, by counsel, respectfully submits this memorandum in opposition to the Motion to Dismiss filed by Defendant Dr. Erik Whitfield ("Whitfield") (Dkt. 115).

## I. INTRODUCTION

Leaving out key allegations, Whitfield recasts the complaint to place himself far outside the events at issue. Arguing as a lone medical practitioner, Whitfield claims that Plaintiff should have alleged medical malpractice and then argues that had Plaintiff done so his claims would be

barred for a failure to exhaust administrative remedies under the Louisiana Medical Malpractice Act. Though this argument ignores both the Supremacy Clause and the federal nature of Plaintiff's primary claims, and their ongoing nature, Whitfield does eventually argue, in an abbreviated and conclusory fashion, that he was not a state actor and is thus not subject to the federal claims. Whitfield then concludes, based upon what he claims is a total absence of valid federal claims, that the Plaintiff has "manufactured" diversity to avoid state court by adding Professional Renewal Center ("PRC") and Dr. Betsy White Williams ("Williams"), even though Plaintiff invoked supplemental jurisdiction under 28 U.S.C. § 1367 and not diversity jurisdiction under 28 U.S.C. § 1332. These arguments are no stronger than his first, which is that all the claims are time barred. For the reasons set forth below, Plaintiff respectfully suggests that Dr. Whitfield's motion should be denied.

## II.    ARGUMENT

### A.    The Claims Are Not Time Barred

Whitfield first argues, at page 5 of his Memorandum (Dkt. 115-1), that all four counts asserted against him are time barred. They are not.

Whitfield argues that the claims against him are time barred because he sent Plaintiff an email on July 1, 2019 that suggested a report would issue on July 9, 2019, but suit was only filed on July 15, 2020. While La. Civ Code art. 3492 provides that the statute of limitations is one year for torts, and while that statute does also apply to Plaintiff's federal claims, the determination of when the claims accrued is a matter of federal, not state, law. *Moreau v. St. Landry Par. Fire Dist. No. 3*, 413 F. Supp. 3d 550, 564 (W.D. La. 2019), aff'd, 808 Fed. Appx. 225 (5th Cir. 2020).

As a preliminary matter, Whitfield's argument that the statute of limitation has run is based on material outside the pleadings. Whitfield attaches a July 1, 2019 email to his Rule 12(b)(6)

motion, to which Plaintiff objects. Plaintiff does not allege that he received an email on July 1, 2019 much less the Whitfield report on July 9 as promised in the email. On a Rule 12(b)(6) motion the Court may not look beyond the pleadings without converting the motion to a Rule 56 motion and giving an opportunity to present evidence. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

However, the July 1, 2019 email promising to forward a report after July 9, 2019 is not a clear enough demarcation to trigger the clock on the statute of limitation given that Whitfield's argument is that Plaintiff missed the statute by six days, and given that neither the complaint nor Whitfield's email sheds light on precisely when a) Plaintiff received Whitfield's report; or b) on precisely *when* Plaintiff learned that Whitfield's report was a basis for Louisiana State University School of Medicine's ("LSU") demand that he submit to another inpatient occupationally mandated psychological evaluation ("OPME") and register with the Healthcare Professionals Foundation of Louisiana ("HPFL"); or c) on when Plaintiff learned that Whitfield and Bishop-Baier had coordinated in Whitfield's assessment of Plaintiff.[1]  A court must "'accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff.' *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n. 44 (5th Cir. 2011) (citations omitted), and the allegations of the Amended Complaint do not show that any statute started running on July 9, 2019.

More importantly, however, even if Plaintiff "knew" or should have known on July 9, 2010 that Whitfield, in working with LSU's Bishop-Baier, had violated his due process rights, had defamed him and had discriminated against him in violation of Title II of the ADA, the claims against Whitfield would still not be barred because of the continuing violation doctrine. The due process violations (Count 3) and disability discrimination (Count 5) that resulted in emotional

---

[1] Dkt. 55 at ¶ 31.

3

distress (Count 6) and which was accompanied by defamation (Count 7) were continuing violations.

The continuing violation theory has been recognized in the Fifth Circuit, *Downey v. S. Nat. Gas Co.*, 649 F.2d 302, 304 (5th Cir. 1981), and has been applied to § 1983 actions. *Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 924 (E.D. La. 2017). The ongoing violations and discrimination were not discrete acts like a promotion or demotion, but were part of a continuing unlawful practice. In "order to support a finding of a continuous violation, [plaintiff] must do more than show a series of unrelated and isolated instances of discrimination. She must prove a series of continuous violations constituting an organized scheme leading to a present violation." *Berry v. Bd. of Sup'rs of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983) (quoting *Nelson v. Williams*, 25 F.E.P. 1214, 1215 (D.D.C.1981)). Nor does the Amended Complaint allege a single violation with a continuing impact, a claim that would not be a continuing violation. *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020 (W.D. Tex. 2013). Rather, the complaint alleges a series of violations that are continuing until today.

As alleged in Plaintiff's Amended Complaint, Plaintiff's improper and unlawful suspension and referral to LSU's Campus Assistance Program ("CAP") by Jain in May 2019[2] was compounded by the subsequent unlawful and discriminatory conduct of LSU's Bishop-Baier (and Embry) in compelling Plaintiff, without a hearing, to submit to an OMPE by Whitfield for "relapsing" even though the Plaintiff passed a urinalysis test and had been sober and substance free since 2011.[3] Then Whitfield, who was chosen by, counseled, and who reported to LSU,[4] compounded the violation of Plaintiff's due process rights and unlawfully discriminated against

---

[2] Dkt. 55 at ¶¶ 21-24.
[3] *Id.* at ¶¶ 25-29.
[4] *Id.* at ¶¶ 29, 30.

him on the basis of a perceived disability by falsely stating that he "could not conclude" that Plaintiff was fit for duty,[5] by performing an unlawful OMPE,[6] by requiring a second unjustified OMPE[7] which was later used against Plaintiff, and by requiring Plaintiff to register and comply HPFL for long term monitoring and comply with its recommendations.[8] Whitfield is alleged to have acted as an agent of LSU,[9] and he clearly reported to LSU.[10] Whitfield, however, was not the end of the ongoing due process violations, discrimination and defamation that the Plaintiff was subjected to as a result of Jain's initiation of the offenses. Neither was July 9, 2019 the end. As alleged, the HPFL, based on LSU's CAP and Bishop-Baier's use of Whitfield's report, continued the due process violations and unlawful discrimination by requiring, without a hearing, yet a second OMPE, inpatient and out of state,[11] which was performed by PRC and Williams, who issued a sham evaluation that lacked a clear diagnosis (other than a substance abuse disorder described as in sustain remission) and which required further lengthy inpatient out of state "treatment."[12] When the Plaintiff refused this recommendation and tendered two "fit for duty" reports from respected Louisiana psychiatrists, HPFL reported Plaintiff as "noncompliant" to the Louisiana State Board of Medical Examiners ("LSBME"),[13] which then commenced an enforcement action while calling it an investigation, and which repeated demands, including in July 2020, that the Plaintiff submit to the HPFL recommend OMPE.[14] HPFL and the LSBME's

---

[5] *Id.* at ¶¶ 31, 83(j), 90(h), (i) and (j), 98-99, 109-110.
[6] *Id.* at 90(h), 98
[7] *Id.* at ¶¶ 31-32, 90(i), 98.
[8] *Id.* at ¶¶ 31, 32, 90(j), 98.
[9] *Id.* at ¶ 90(h), (i) and (j).
[10] *Id.* at ¶ 31-32
[11] *Id.* at ¶¶ 32-33.
[12] *Id.* at ¶¶ 34, 37-39.
[13] *Id.* at ¶¶ 43-45, 46, 48.
[14] *Id.* at ¶¶ 48-51, 55, 56.

conduct resulted in *Mississippi* suspended his license in that state in March 2020, which led the Plaintiff not renew his Louisiana license to try to avoid the ongoing harassment and discrimination.[15]

These events are all related and constitute an organized scheme to deprive Plaintiff of his chosen medical specialty and even his license. The "continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993) (quoting *Curry v. United States Postal Serv.*, 583 F.Supp. 334, 342 (S.D. Ohio 1984)). Here, the due process violations, disability harassment and defamation that are part of the common pattern and scheme are alleged to have occurred as late as July 2020,[16] and in fact are continuing now. Therefore, because the complaint was filed July 15, 2020, it was timely filed and the allegations concerning earlier due process, disability harassment and defamation are not time barred.

### B. The Claims Are Sufficiently Pled

Whitfield next argues, briefly, that Plaintiff merely pled conclusions. Whitfield fails to identify any specific allegation that he believes is merely conclusory and merely asserts that the allegations against him "amount to no more than mere conclusory statements."[17] This argument is not correct given the allegations in the complaint discussed above.

Whitfield does makes one specific claim, that Plaintiff "fails to apply his broad conclusory statements to his allegations that Whitfield intended to inflict grievous emotional distress upon

---

[15] Dkt. at ¶¶ 56-57.
[16] *Id.* at ¶ 54.
[17] Dkt. 115-1 at p. 7.

him or defame him."[18]  Count 6, however, incorporates the allegations that preceded it, including that Whitfield falsely stated that he could not conclude that Plaintiff was fit-for-duty, knowingly published that false statement to HPFL, attempted to conceal Plaintiff's coerced activities as 'voluntary,' and in other respects did not comply with applicable legal or professional standards."[19] The complaint clearly alleges that the result of these acts, in the context of the acts of the other Defendants, led to Plaintiff to lose both his cardiology fellowship and his Louisiana medical license.[20] A plan to destroy a career has been held to "sufficiently severe and outrageous as to allow recovery for intentional infliction of emotional distress." *Currier v. Entergy Services, Inc.*, 73 F.Supp.3d 673, 679 (E.D. La. 2014). Whitfield, like the other defendants, has been put on notice of Plaintiff's claim which is plausible on its face and, if proven, would result in liability of the named defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

      **C.**    **The Louisiana Medical Malpractice Act Does Not Apply**

Whitfield next argues that medical practice claims must be submitted to a medical review panel under the Louisiana Medical Malpractice Act before civil suit may be filed.  Whitfield argues that Plaintiff "creatively" *omitted* allegations that Whitfield shared information without consent; that Whitfield's treatment fell below the standard of care; that LSU paid Whitfield; that "the general negligence claims alleged against Whitfield we not related to this treatment or caused by a dereliction of professional skill"; that Whitfield assessed Plaintiff's condition and that Whitfield's' treatment was not medical care. As discussed below, Whitfield's argument is misplaced.

---

[18] *Id.*
[19] Dkt. 55 at ¶ 83(j).
[20] *Id.* at ¶¶ 56-60.

Plaintiff did not being a general negligence claim against Whitfield, much less a medical malpractice case. As such, the allegations that Whitfield claims are "missing" are not necessary to the claims that the Plaintiff did bring. Plaintiff brought federal claims asserting due process violations under §1983 and § 1983 ADA Title II Discrimination.  Exhaustion of state administrative remedies is not a prerequisite to an action under § 1983. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 102 S. Ct. 2557 (1982). Further, these claims, even if they were intertwined with "medical malpractice," preempt state law:

> Irrespective of whether Plaintiff's federal claims include a medical malpractice allegation, the law is clear that Plaintiff's federal claims are not subject to the LMMA's medical review panel requirement. District courts in Louisiana have concluded that, under the Supremacy Clause of the United States Constitution, a plaintiff seeking relief under the Rehabilitation Act against a federal grantee need not meet the LMMA's medical review panel requirement.  *Bernius v. Ochsner Medical Center-North Shore, L.L.C.*, No. 16-14730, 2016 WL 10586188, at *7 (E.D. La. Dec. 15, 2016) (*citing Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015)) (holding that a plaintiff need not exhaust administrative remedies before pursuing a claim against a federal grantee under the Rehabilitation Act).
>
> Courts have similarly applied the Supremacy clause to find that plaintiffs bringing claims under the ACA and ADA also need not meet the medical review panel requirement. *E.g., Lockwood v. Our Lady of the Lake Hosp., Inc.*, No. CV 17-00509-SDD-EWD, 2018 WL 3451514, at *6 (M.D. La. July 17, 2018).

*Chevallier v. Our Lady of the Lake Hosp., Inc.*, CV 18-0997-BAJ-EWD, 2019 WL 3381766, at *2 (M.D. La. July 26, 2019).

Whitfield asks the Court to apply *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), which held, *inter alia*, that there is no "federal common law" to be applied in a diversity suit involving state law claims. The cases cited by Whitfield were all cases in which medical malpractice was alleged and no federal claims were brought—in sharp contrast to this case. In *Aston v. Lazarus,* 439 So.2d 1240 (La. Ct. App. 5th Cir. 1983), the plaintiff brought a medical malpractice action and when confronted with the failure to exhaust remedies under the LMMA, argued that that entire act was unconstitutional, an argument that was rejected. In *Rogers*

*v. Synthes, Ltd.*, 626 So.2d 775 (La. Ct. App. 2nd Cir. 1993), the plaintiff brought a medical malpractice and product liability claim for a surgical implant against a hospital, which was held to be covered by the LMMA. In *Huffaker v. ABC Ins. Co.*, 659 So.2d 544 (La. Ct. App. 4th Cir. 1995), the court also held that a negligence claim against a hospital for the implantation of a defective hip prosthesis was covered by the LMMA. In *Benedict v. Kearby*, 537 So.2d 870 (La. Ct. App. 5th Cir. 1989), the court held that a medical malpractice action had to be presented to a medical review panel prior to suit that this requirement was not unconstitutional. In *Fitzgerald v. Hurwitz*, 517 So.2d 412 (La. Ct. App. 4th Cir. 1987), the court held that a medical malpractice action had to be presented to medical review panel and that the plaintiff's arguments that the caps were unconstitutional were inapposite. In *Arceneaux v. Marler*, 542 So.2d 203 (La. Ct. App. 3rd Cir. 1989), the court held that a medical malpractice action had to be presented to a medical review panel before suit could be maintained and held that the Act was not unconstitutional. *Derrick Phillips, et al v. Hospira Worldwide Inc. d/b/a Hospira, Inc. et al*, No. 09-3117, (E.D. La. Mar. 23, 2009), was, as also described by Whitfield, a mere medical malpractice action. *Jahmal Tillman, et al v. Woldenberg Village, Inc., et al.*, Docket No. 13-4731 (E.D. La. Jun. 6, 2013), was also a mere medical malpractice case. In contrast to the cases cited by Whitfield, because this is neither a diversity case nor a case that is primarily rooted in state law, the federal claims are not subject to exhaustion under the LMMA.

Further, the IIED (Count 6) and Defamation (Count 7) claims do not sound in general medical negligence. Even if they did, in part, these claims are not subject to the LMMA because they are intentional torts, which are not subject to the LMMA. *Coleman v. Deno*, 813 So. 2d 303 (La. 2002). Defamation requires a showing of malice and is an intentional tort. *Arledge v. Hendricks*, 715 So. 2d 135, 138 (La. Ct. App. 2nd Cir. 1998) *writ denied,* 98-2015 (La. 11/20/98),

9

728 So. 2d 1287. Intentional infliction of emotional distress is also an intentional tort. *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991).

Therefore, Whitfield's prematurity claims under the LMMA should be rejected and Plaintiff's claims against Whitfield should proceed in this Court.

### D. Plaintiff States a Claim for Intentional Infliction of Emotional Distress and Defamation

Whitfield next argues, at page 13 of his Memorandum, that Plaintiff does not state a cause of action for intentional infliction of emotion distress. In making the argument, Whitfield invents facts, and omit others clearly alleged in the complaint. Plaintiff did not allege that he terminated Whitfield, and Plaintiff did not merely allege that Whitfield concluded that he could not determine whether Plaintiff was fit for duty. Plaintiff also alleged that Whitfield's statement that he could not make a determination was false.[21] Plaintiff also alleged that there was no reason for Whitfield's exam,[22] that Whitfield ordered a second and inpatient unjustified OMPE anyway,[23] and that Whitfield published a false statement to HPFL and discriminated against Plaintiff by ordering that Plaintiff register with HPFL and follow its determinations regarding monitoring and treatment.[24] These acts and defamatory statements were instrumental in the ongoing denial of due process (there was no hearing before or after Whitfield) and in the destruction of Plaintiff's career, which is extremely outrageous conduct that goes beyond all possible bounds of decency. *Currier v. Entergy Services, Inc.*, 73 F.Supp.3d 673, 679 (E.D. La. 2014).

---

[21] Dkt. 55 at ¶ 83(j).
[22] *Id.* at ¶¶ 90(h), 31.
[23] *Id.* at ¶¶ 90(i), 31, 83(j).
[24] *Id.* at ¶¶ 83(j), 90(j).

### E. Whitfield is Liable under § 1983

Whitfield argues that he is a private psychiatrist and not a state actor. Plaintiff, however, alleges that Whitfield was an agent of Defendant LSU.[25] The Amended Complaint alleges that LSU instructed the Plaintiff to appear before Whitfield.[26] There was nothing voluntary about Plaintiff's sessions with Whitfield. The Amended Complaint alleges that LSU and Whitfield worked together, in violation of the Due Process Clause and the ADA, to generate a report that falsely assumed that the Plaintiff had relapsed and which wrongfully required an extensive OMPE, required that Plaintiff be monitored in the future, and required the Plaintiff to register with the HPFL.[27] There was no hearing provided before, during or after Whitfield, and Plaintiff's own fit-for duty reports from two well respected Louisiana psychiatrists, one a faculty member of LSU itself, were not considered at any time.[28]

"Anyone whose conduct is "fairly attributable to the State" can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383, 132 S. Ct. 1657, 1661 (2012). Here, Whitfield was called by the state to report to the state in a matter that was not routine medical treatment but was essentially discipline without due process. The state used Whitfield's work to press on with the harassment and discipline of Plaintiff. To act "'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents'" *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1606, 26 L. Ed. 2d 142 (1970) (*citations omitted*). There is no allegation in the Amended Complaint to suggest that that Whitfield was not aware before his examination that a state actor believed,

---

[25] *Id.* at ¶¶ 90(h), 90(i), 90(j).
[26] *Id.* at ¶¶ 29 and 32.
[27] *Id.* at ¶ 31.
[28] *Id.* at ¶¶ 43-45,52-54.

improperly, that the Plaintiff has "relapsed," and there is no question but that Whitfield's report was written for and used by state actors.[29] As a willing participant in the alleged due process violations and disability harassment, Whitfield's conduct is fairly attributable to the state and he is potentially liable under § 1983.

### F. The Court has Subject Matter Jurisdiction over this Case

Returning to his baseless claim that the application of the LMMA is mandatory, Whitfield concludes by arguing that Plaintiff has manufactured diversity jurisdiction by adding Williams and PRC to what would otherwise be a state law claim. This argument, addressed above, incorrectly ignores the federal claims, incorrectly ignores the supremacy clause, ignores that the IIED and defamation claims are not subject to the LMMA, and ignores that the Plaintiff specifically invoked the jurisdiction of this Court under 28 U.S.C. 1331.

## III. CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court deny the Motion to Dismiss brought by Dr. Erik Whitfield.

Respectfully submitted,

/s/ Edward R. Moor
Edward R. Moor, T.A. (admitted *pro hac vice*)
(IL Bar No. 6205169)
Moor Law Office, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602
(312) 726-6207
erm@moorlaw.net

Jeffrey Weisman (admitted *pro hac vice*)
(IL Bar No. 6295539; DC Bar No. 986696)
Marek Weisman LLC
55 E Monroe Street, Suite 3800

---

[29] Dkt. 55 at ¶¶ 31, 90(j), 32.

       Chicago, Illinois 60603
       (312) 470-7662
       jweisman@marekweisman.com

       and

       Kerry Murphy (La. Bar. No. 31382)
       kmurphy@kerrymurphylaw.com
       Kerry Murphy Law LLC
       715 Girod Street, Suite 250
       New Orleans, Louisiana 70130
       (504) 603-1500

       ***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

  I certify that on May 11, 2021 a copy of this filing was served contemporaneously on all attorneys of record via the court's CM/ECF system.

       /s/ Edward R. Moor