UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREGORY DUHON, M.D.                          CIVIL ACTION

VERSUS                                       NO: 20-2022

THE BOARD OF SUPERVISORS                     SECTION "H"
OF LOUISIANA STATE UNIVERSITY
& AGRICULTURAL & MECHANICAL
COLLEGE, et al.

ORDER AND REASONS

Before the Court is Professional Renewal Center, P.A.'s Motion to Sever and Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 21 or in the Alternative Motion to Dismiss (Doc. 63). For the following reasons, the Motion is **DENIED IN PART and GRANTED IN PART.**

BACKGROUND

Plaintiff Gregory Duhon, M.D. ("Duhon"), brings this action against multiple defendants for damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at Louisiana State University ("LSU") and the subsequent loss of his Louisiana medical license. Below are the facts relevant only to the instant Motion.

Plaintiff was enrolled in the 2018–2019 cardiology fellowship program at Louisiana State University. On May 23, 2019, Plaintiff was advised by its

Program Director, Neeraj Jain, M.D. ("Dr. Jain"), that he was being suspended effective immediately on suspicion of being mentally impaired and that he must obtain a fit-for-duty clearance from LSU's Campus Assistance Program ("CAP"). After conducting an occupationally mandated psychological evaluation ("OMPE"), CAP directed Plaintiff to register with the Health Care Professionals Foundation of Louisiana ("HPFLA"), a "private not-for-profit corporation that offers assistance to health care professionals who may be suffering from mental health issues" by referring the professionals for evaluations and monitoring their treatment plans where appropriate.[1] Plaintiff registered with HPFLA as instructed and HPFLA, in turn, directed Plaintiff to submit to a three-day comprehensive psychological exam at one of three HPFLA-approved facilities.

Plaintiff chose to undergo the required evaluation at Professional Renewal Center ("PRC") in Lawrence, Kansas, which ultimately concluded that Plaintiff required 60–90 days of inpatient treatment. To counter PRC's findings, Plaintiff obtained evaluations from two independent psychiatrists who found that the PRC report was flawed and that Plaintiff was indeed fit for duty. Plaintiff alleges that HPFLA acknowledged that the PRC report was inaccurate but nevertheless required that Plaintiff comply with PRC's recommendation and seek additional, costly inpatient treatment. When Plaintiff refused, the HPFLA reported Plaintiff to the Louisiana State Board of Medical Examiners ("LSBME") as noncompliant and otherwise impaired in his ability to practice medicine.

On October 4, 2019, Plaintiff received a notice from the LSBME informing him that his license was under investigation and directing him to

---

[1] Doc. 70-1 at 3.

cooperate with HPFLA and PRC's recommendations. Plaintiff, through his attorneys, petitioned HPFLA and the LSBME to allow him to forego the additional inpatient treatment but to no avail. Plaintiff ultimately allowed his license to lapse in July of 2020.

In this action, Plaintiff brings claims against a long list of defendants— including LSU, the LSBME, and the organizations and providers to which and to whom he was referred—for violations of procedural and substantive due process, § 504 of the Rehabilitation Act,[2] and Title II of the Americans with Disabilities Act.[3] Plaintiff also brings state tort claims for intentional infliction of emotional distress and defamation under Louisiana Civil Code article 2315. Plaintiff contends that, at each step of the way, he was discriminated against "on the basis of a perceived disability and denied any notice or hearing on the actions taken against him and their supposed justification."[4] Specifically, Plaintiff alleges that the named defendants perceived him as having a substance abuse disorder.[5] Plaintiff contends that the alleged discrimination cost him his fellowship position, his chance to transfer or become board-certified in cardiology, his reputation, the good standing of his Louisiana medical license, and more than $50,000 in unnecessary treatment.

Now before the Court is Defendant PRC's Motion to Sever and Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 21, or in the alternative, Motion to Dismiss. In the Motion, PRC first asks the Court to enforce the forum selection clause found in PRC's Participation Agreement, to sever Plaintiff's claims against it, and to transfer Plaintiff's

---

[2] 29 U.S.C. § 794.
[3] 42 U.S.C. § 12131, *et seq.*
[4] Doc. 89 at 2.
[5] Plaintiff alleges that he received treatment for substance abuse disorder in 2011 and has since been in remission.

3

action against PRC to the United States District Court for the Southern District of Kansas. Alternatively, should this Court decline to transfer the PRC-related claims, PRC argues that Plaintiff has failed to state a viable claim against it and that Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes.

## LEGAL STANDARD

### I.    Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[6] District courts possess broad discretion when deciding whether to order a transfer of venue.[7] The Fifth Circuit has held that in the interest of respecting forum choices by plaintiffs, a party moving for transfer must show "good cause."[8] "When the movant demonstrates that the transferee venue is clearly more convenient . . . it has shown good cause and the district court should therefore grant the transfer."[9]

### II.   Motion to Sever

Federal Rule of Civil Procedure 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "Severance under Rule 21 . . . occasionally is appropriate in action in which venue is improper to some but

---

[6] 28 U.S.C. § 1404(a).

[7] *In re* Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) ("There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" (quoting Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998))).

[8] *Id.* at 315.

[9] *Id.*

4

not all defendants. If the claims are separable, the court may cure the venue defect by severing the claims against those parties who raise valid venue defenses."[10] The court may refuse severance, however, where it "only will result in delay, inconvenience, or added expense."[11] In all cases, the court "has wide discretion to sever a claim."[12]

## III.   Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[13] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[15] The court need not, however, accept as true legal conclusions couched as factual allegations.[16] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[17] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[18] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[19]

---

[10] 7 FED. PRAC. & PROC. § 1689, Westlaw (database updated April 2021). *See also* In re Rolls Royce Corp., 775 F.3d 671, 680 n.40 (5th Cir. 2014).

[11] 7 FED. PRAC. & PROC. § 1689, Westlaw (database updated April 2021).

[12] In re Rolls Royce Corp., 775 F.3d 671, 680 (5th Cir. 2014).

[13] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[14] *Id.*

[15] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[16] *Iqbal*, 556 U.S. at 678.

[17] *Id.*

[18] *Lormand*, 565 F.3d at 255–57.

[19] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

## LAW AND ANALYSIS

### I.    Motion to Sever and Transfer

In its Motion, PRC requests that this Court sever Plaintiff's claims against it and transfer the matter to the United States District Court for the Southern District of Kansas. PRC argues that such action is proper pursuant to a forum selection clause found within the Participation Agreement that Plaintiff signed prior to his evaluation with PRC on July 23, 2019.[20] The relevant provision of the Participation Agreement states:

> I agree that any dispute arising between Professional Renewal Center® and me shall be determined solely by the District Court of Douglas County, Kansas or the United States District Court for the District of Kansas, and shall be construed in accordance with the law of the State of Kansas.

Plaintiff signed the Participation Agreement and wrote his initials next to the forum selection clause.

In *Atlantic Marine Cons. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, the Supreme Court held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[21] As § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system[,]" § 1404(a) is the appropriate provision to enforce a clause like the one at issue directing transfer to a different federal district court.[22] Ordinarily, a court weighing transfer considers a variety of private and public-interest factors and gives deference to the plaintiff's choice of forum.[23] The Supreme Court in *Atlantic Marine*, however, held that the

---

[20] *See* Doc. 63-3 (the Participation Agreement).
[21] Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 60 (2013).
[22] *Id.* at 580–81.
[23] Barnett v. DynCorp Int'l, L.L.C., 831 F.3d 296, 300 (5th Cir. 2016).

presence of a forum selection clause alters the balancing test in two ways. "'First, the plaintiff's choice of forum merits no weight' because, by contracting for a specific forum, 'the plaintiff has effectively exercised its 'venue privilege' before a dispute arises.'"[24] Second, because the parties to the forum selection clause have waived the right to challenge the preselected forum as inconvenient, "the private-interest factors weigh entirely in favor of the preselected forum."[25] Thus, the "district court may consider arguments about public-interest factors only."[26]

Under the *Atlantic Marine* balancing test, a valid forum selection clause will warrant transfer or dismissal "absent unusual circumstances."[27] In cases where not all parties are bound by the forum selection clause, however, "the need—rooted in in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause."[28] To govern such situations, the Fifth Circuit in *In re Rolls Royce Corporation*, provided the following test:

> First, pursuant to *Atlantic Marine,* the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum. Second, the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis. Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit. In so determining, the

---

[24] *Id.* (quoting *Atl. Marine*, 571 U.S. at 63).
[25] *Atl. Marine*, 571 U.S. at 64.
[26] *Id.*
[27] *Barnett*, 831 F.3d at 302.
[28] *In re Rolls Royce Corp.*, 775 F.3d at 679.

district court should consider whether there are procedural
mechanisms that can reduce the costs of severance . . .[29]

The Fifth Circuit further explained that "this is a fact-sensitive analysis, and
while we agree that *Atlantic Marine* informs the analysis, we cannot conclude
that it categorically requires severance-and-transfer in all situations."[30]

As a preliminary matter, the Court notes that the *Atlantic Marine*
transfer analysis presupposes the existence of a valid and enforceable forum
selection clause, and Plaintiff has argued extensively against the clause's
validity and enforceability.[31] Even assuming that the clause is valid and
enforceable, however, this Court still finds that the weighing of relevant
interests requires denying transfer in this case. Accordingly, the Court declines
to analyze the clause's validity and enforceability at this time and instead
proceeds to the *In re Rolls Royce* balancing test.

1.    *Private Interest Factors*

In analyzing a § 1404(a) motion to transfer, the court is to consider the
private interests of the litigants as it pertains to the costs and ease of
litigation.[32] Such considerations or factors include:

relative ease of access to sources of proof; availability of
compulsory process for attendance of unwilling, and the cost of
obtaining attendance of willing, witnesses; possibility of view of
premises, if view would be appropriate to the action; and all other
practical problems that make trial of a case easy, expeditious and
inexpensive.[33]

---

[29] *Id.* at 681.

[30] *Id.*

[31] *Barnett*, 831 F.3d at 301.

[32] *See id.* at 678 (citing *Atl. Marine*, 571 U.S. at 62 n.6).

[33] *Atl. Marine*, 571 U.S. at 62 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (internal quotation marks omitted)).

8

The Court first finds that these factors necessarily weigh in favor of transfer as it pertains to Plaintiff and PRC as the parties to the forum selection clause. As to the remaining parties, however, the private interest factors weigh in favor of denying PRC's Motion to Sever and Transfer. Most of the defendants in this action are Louisiana entities or affiliated with Louisiana entities; thus, those defendants have a strong interest in having this matter litigated in this forum. Further, as explained more fully below, the validity of PRC's report is a significant issue in this matter and an issue that will likely be highly relevant to Plaintiff's claims against many of the other defendants as well. The Court thus finds that the private interest factors, as they pertain to the non-PRC defendants, weigh in favor of litigating Plaintiff's case in this forum.

2.  *Public Interest Factors and Judicial Economy*

The public interest factors to be considered by the Court include (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized controversies decided at home"; (3) "[and] the interest in having the trial of a diversity case in a forum that is at home with the law."[34] Although these factors will rarely defeat a transfer motion, in a case such as this where enforcement of the forum selection clause would result in the transfer of only some of Plaintiff's claims, the interests of judicial economy play a "cardinal role" in the analysis.[35]

In applying the public interest factors to this case and considering the impact upon judicial economy, the Court finds that this is not a "usual case" in which the forum selection clause should control. In so finding, the Court notes that Plaintiff's claims against PRC are highly connected to Plaintiff's claims against the other defendants. Plaintiff's claims against HPFLA, in part,

---

[34] *Id.*
[35] *Id.* at 582.

concern HPFLA's reliance upon the PRC report. In the PRC report, the report's authors indicate that at least three other defendants in this matter were used as "collateral sources" to inform their evaluation of Plaintiff. The success of Plaintiff's claims against PRC and many of the named defendants will thus likely require litigating the same issues surrounding the legitimacy of the PRC report. Moreover, Plaintiff has separately alleged claims against PRC's Clinical Director, Betsy Williams, PhD ("Williams"), in both her individual and official capacities. To reach the validity of Plaintiff's claims against Williams, the Court will likely need to reach the merits of Plaintiff's claims against PRC in many respects.[36]

In sum, the Court finds that severance and transfer in this case will undoubtedly result in parallel litigation and consequently result in a significant waste of judicial resources. Further, because of Plaintiff's existing claims against Williams, the difficulties associated with transfer are more than "the run-of-the-mill difficulties which will always exist in such scenarios."[37] For these reasons, the Court denies PRC's Motion to Sever and Transfer.

## II.    Motion to Dismiss

In the alternative, PRC asks this Court to dismiss Plaintiff's claims against it under Federal Rule of Civil Procedure 12(b)(6). In Plaintiff's Amended Complaint, he asserts claims against PRC for deprivation of

---

[36] The Court notes that there is currently a pending Motion to Dismiss filed by Williams in this case. This Court, however, issued an Order requiring the parties to conduct discovery on the issue of whether this Court has personal jurisdiction over Williams. Until the matter is again before this Court, the Court must assume that it has jurisdiction over Williams for the purposes of this Motion.

[37] Ha Thi Le v. Lease Fin. Grp., LLC, No. CV 16-14867, 2017 WL 2915488, at *8 (E.D. La. May 9, 2017) (Africk, J.) (quoting Royal Smit Transformers BV v. HC BEA-LUNA M/V, No. 16-14647, 2017 WL 819243, at *8 (E.D. La. Mar. 2, 2017)) (denying severance and transfer where the plaintiffs "allege[d] that the several defendants collectively formed a single fraudulent enterprise, the purpose of which was to work together to defraud small businesses").

substantive and procedural due process under 28 U.S.C. § 1983, discrimination in violation of Title II of the Americans with Disabilities Act, discrimination in violation of § 504 of the Rehabilitation Act, and for intentional infliction of emotional distress and defamation in violation of Louisiana Civil Code article 2315. The Court will discuss the validity of each of these claims in turn.

### A.   Deprivation of Substantive and Procedural Due Process Under 28 U.S.C. § 1983

"To state a claim under § 1983, plaintiffs must allege two elements: first that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second that the deprivation occurred under color of state law."[38] Here, Plaintiff alleges that the constitutional right of which he was deprived is his right to procedural and substantive due process under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law."[39] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[40] "To prevail on a [procedural] due process claim, plaintiffs must [therefore] show that: (1) they possess a property interest that is protected by the due process clause, and (2) [the defendant's] procedures are constitutionally inadequate."[41]

Substantive due process, on the other hand "ensures that, regardless of the fairness of the procedures used, the government does not use its power for

---

[38] Doe v. Rains County Ind. School Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).
[39] U.S. Const. amend. XIV.
[40] Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis in original).
[41] Ridgely v. Fed. Emergency Mgmt. Agency, 512 F.3d 727, 734 (5th Cir. 2008).

oppressive purposes."[42] Thus, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest."[43] In substantive due process cases concerning a plaintiff's alleged constitutional right to continued enrollment, the Supreme Court has held that, assuming such a right exists, there is only a "narrow avenue for judicial review" and that the plaintiff must show a "substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."[44]

In PRC's Motion to Dismiss, PRC first asserts that Plaintiff has failed to sufficiently allege that PRC deprived Plaintiff of a constitutional right. Alternatively, PRC argues that it is a private entity and thus not a state actor as required under § 1983. As the Court finds that Plaintiff has not sufficiently alleged the deprivation of a constitutional right, the Court does not address whether PRC's actions are fairly attributable to the state.

In his Amended Complaint, Plaintiff contends that the Defendants deprived him of his protectable property or liberty interest in: (1) continuing his training in the LSU cardiology fellowship program; (2) not being subjected to unjustified and coerced psychological examinations; (3) his Louisiana physicians' license and its good standing; and (4) his professional reputation. In its Motion to Dismiss, PRC argues that Plaintiff has not sufficiently alleged that PRC is responsible for any of these alleged deprivations.

---

[42] Patterson v. Def. POW/MIA Acct. Agency, 343 F. Supp. 3d 637, 646 (W.D. Tex. 2018) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

[43] Lewis v. Univ. of Texas Med. Branch at Galveston, 665 F.3d 625, 631 (5th Cir. 2011) (citing Texas v. Walker, 142 F.3d 813, 819 (5th Cir. 1998)).

[44] Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985).

As to Plaintiff's alleged interests in his fellowship, his freedom from coerced examination, and his physician's license, Plaintiff has not sufficiently alleged that it was PRC who deprived him of these interests. Regarding his enrollment, Plaintiff alleges that he was "forced to resign from his fellowship" by the time of his inpatient stay with PRC.[45] PRC's actions, therefore, cannot have contributed to the loss of Plaintiff's right to his fellowship. Similarly, as to Plaintiff's freedom from coerced examination, Plaintiff alleges that it was HPFLA, not PRC, that compelled Plaintiff to undergo various psychological examinations. Finally, regarding Plaintiff's license, Plaintiff does not allege that any actor other the LSBME and its members had the authority to deprive Plaintiff of his physician's license. The Court thus finds that Plaintiff has failed to state a claim against PRC for deprivation of his alleged property or liberty interests in his fellowship, freedom from examination, and physician's license. Plaintiff's related procedural and substantive due process claims are accordingly dismissed.

The only due process claim Plaintiff alleges against PRC is that related to his alleged interest in his professional reputation. "The Supreme Court has recognized a constitutionally protected interest in 'a person's good name, reputation, honor, or integrity.'"[46] To demonstrate the deprivation of this interest, however, plaintiffs must show that: "(1) they suffered a stigma from governmental action; plus (2) they experienced an alteration or extinguishment of 'a right or status previously recognized by state law.'"[47]

Although Plaintiff alleges that PRC falsely stated that he was not fit-for-

---

[45] Doc. 55 at 9.

[46] *Kovac v. Wray*, 363 F. Supp. 3d 721, 753 (N.D. Tex. 2019) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)).

[47] *Id.* (quoting *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991) (internal quotations omitted)).

13

duty and knowingly published this false statement to LSU, HPFLA, and the LSBME, Plaintiff does not specifically plead that this action stigmatized him or altered a previously recognized status. Rather, in both his Amended Complaint and his Opposition, Plaintiff alleges that it was LSU and the LSBME that "falsely stigmatized Plaintiff and his professional reputation."[48] Even assuming that Plaintiff had pleaded facts sufficient to meet the "stigma plus" standard, Plaintiff does not state what process he was due from PRC—a critical flaw in his due process claims. The Fifth Circuit has stated that "the fourteenth amendment provides only procedural protection against injury inflicted by state officers to the interest state employees have in their reputation."[49] Thus, "reputation per se is not a property interest protected against state infringement; what is protected is the maligned employee's right to a procedure that will afford him a chance to refute unfounded charges."[50] Plaintiff alleges that any opportunity to refute PRC's report was owed to him by HPFLA and the LSBME—not PRC. Accordingly, Plaintiff's substantive and procedural due process claims against PRC must fail.

**B.**    **Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.**

Plaintiff brings his claims under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("the RA") pursuant to § 1983. As previously stated, a plaintiff may bring a claim under § 1983 when he has been deprived of federal rights under the color of state

---

[48] Doc. 55 at 20.

[49] In re Selcraig, 705 F.2d 789, 797 (5th Cir. 1983).

[50] *Id. See also* Cooper v. Benavides, No. 416CV00860ALMCAN, 2017 WL 9285512, at *9 (E.D. Tex. July 3, 2017), *report and recommendation adopted in part*, No. 4:16-CV-860, 2017 WL 4968643 (E.D. Tex. Nov. 2, 2017).

law.[51] "However where a statutory regime already provides a comprehensive set of remedies for its enforcement, there is a presumption against the availability of the more general remedial measures of § 1983. This principle renders further discussion of the intricacies of § 1983 unnecessary."[52] Accordingly, the Court will not consider Plaintiff's claims under § 1983 but will rather proceed to an analysis of Plaintiff's claims under Title II of the ADA and § 504 of the RA.

### 1.  *Title II of the ADA*

"The ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."[53] Here, Plaintiff brings suit against PRC under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities *of a public entity*, or be subjected to discrimination by any such entity."[54] The ADA defines a "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority."[55]

At the outset, PRC argues that, as an alleged "private professional association," it is not a public entity subject to claims under Title II. In response, Plaintiff argues that PRC is subject to Title II as its actions are

---

[51] *See* D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist., 629 F.3d 450, 456 (5th Cir. 2010).

[52] *See id.* (citing Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999)).

[53] PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001) (citing 42 U.S.C. §§ 12111–12117; 12131–12165; 12181–12189).

[54] 42 U.S.C. § 12132 (emphasis added).

[55] 42 U.S.C. § 12131.

"fairly attributable to the state" under § 1983. Plaintiff, however, provides no legal support for this assertion. Indeed, the Fifth Circuit has differentiated between liability under § 1983 and under the ADA and RA in certain respects, emphasizing the comprehensiveness of the remedial framework under both statutes.[56] Thus, while the actions of a private entity may be fairly attributable to the state under § 1983, it does not necessarily follow that the same entity may be considered public under the ADA.[57] PRC therefore cannot be found to be a public entity under Title II.[58]

Even assuming *arguendo* that PRC was subject to suit under Title II, however, for the reasons more fully discussed below in relation to Plaintiff's RA claim, the Court does not find that Plaintiff has sufficiently stated a claim for discrimination.[59]

---

[56] *See Loller*, 196 F.3d at 608–610 ("In sum, because the Rehabilitation Act by its express terms provides comprehensive enforcement and remedial measures for violations of its provisions, we hold that section 1983 cannot be used as an alternative method for the enforcement of those rights."); Cole v. Velasquez, 67 F. App'x 252 n.11 (5th Cir. 2003); Pena v. Bexar Cty., Texas, 726 F. Supp. 2d 675, 689 (W.D. Tex. 2010) (collecting cases) ("Based on the weight of authority and holdings of the Fifth Circuit, the Court concludes that Pena's § 1983 claims against the Individual Defendants in their individual capacities for violations of Title II are not permitted.").

[57] The Court also notes that the ADA itself provides a remedy for suits against private entities under Title III, which prohibits discrimination by places of "public accommodation." *See* 42 U.S.C. § 12182 ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.").

[58] *See* Esparza v. Univ. Med. Ctr. Mgmt. Corp., No. CV 17-4803, 2017 WL 4791185, at *11 (E.D. La. Oct. 24, 2017) (Africk, J.) (explaining the relationship between Title II and Title III).

[59] As "[t]he language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973[,] . . . [j]urisprudence interpreting either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000).

2.    *The Rehabilitation Act*

Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance* or under any program or activity conducted by any Executive agency or by the United States Postal Service.[60]

To state a claim under § 504 of the RA, a plaintiff must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."[61] Under § 504, the plaintiff must also "allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance."[62]

A qualifying disability includes: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"[63] A person is regarded as having a qualified disability "if the individual establishes that he or she has been subjected to an action prohibited under [the ADA or RA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[64] Here, Plaintiff alleges that he has the disability of

---

[60] 29 U.S.C. § 794.

[61] Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011).

[62] Block v. Texas Bd. of L. Examiners, 952 F.3d 613, 619 (5th Cir. 2020) (quoting Miller v. Tex. Tech Univ. Health Scis. Ctr., 421 F.3d 342, 345 (5th Cir. 2005) (en banc) (internal quotations omitted)).

[63] 42 U.S.C. § 12102(1)(A–C).

[64] 42 U.S.C. § 12102(3)(A).

substance abuse disorder in remission, that PRC regarded him as being currently impaired by his substance abuse disorder, and that PRC discriminated against him because of this perceived disability. The Court thus finds that he has sufficiently alleged a qualifying disability.

At issue is whether Plaintiff sufficiently alleged that PRC did in fact discriminate against him. Plaintiff alleges that HPFLA and LSU referred him to PRC because of his perceived disability of substance abuse disorder and that PRC thereafter issued a "sham evaluation that resulted in a meandering and incomprehensible 'diagnosis.'"[65] These facts, however, do not identify how PRC allegedly discriminated against him because of that disability. In Plaintiff's Complaint, he alleges that he later declined treatment from a local substance abuse treatment center, noting that "even the PRC report (in addition to the two independent psychiatrists) had ruled out such an issue."[66] Thus, Plaintiff alleges vaguely that PRC discriminated against him because of his perceived disability of substance abuse disorder but later alleges that PRC concluded that he had no such disability.[67] The Court therefore finds that Plaintiff has failed to sufficiently allege facts supporting a claim for disability discrimination under Title II or § 504 against PRC. For these reasons, the claim is dismissed.

## C.   Tort Claims under Louisiana Civil Code article 2315

Lastly, Plaintiff brings claims against PRC for intentional infliction of emotional distress and defamation under Louisiana Civil Code article 2315. As a threshold matter, PRC argues that the choice of law clause in the

---

[65] Doc. 55 at 9–11.

[66] *Id.* at 12.

[67] Indeed, the PRC report concludes that Plaintiff is in "sustained remission" from severe alcohol and tobacco use disorder. Doc. 96-1 at 25. The report also finds that Plaintiff is in sustained remission from mild to moderate cannabis use disorder. *Id.*

Participation Agreement, requiring application of Kansas law, necessitates dismissal of Plaintiff's Louisiana tort claims. First, the Court notes that PRC has not presented this Court with a choice of law analysis separate and apart from its forum selection clause analysis; thus, this Court does not at this time decide the applicability of the at-issue clause. Second, even if Kansas law were to apply, PRC has not cited to any law demonstrating that the clause necessarily requires the dismissal of Plaintiff's Louisiana claims. Accordingly, the Court will consider whether Plaintiff has sufficiently stated a claim against PRC under Louisiana law.

## 1.  *Intentional Infliction of Emotional Distress*

A plaintiff seeking recovery for intentional infliction of emotional distress under Louisiana law must show that: "(1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[68] To succeed, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[69] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[70]

Plaintiff alleges that Defendants are liable for the tort of intentional infliction of emotional distress because of their dissemination of false information about him, which allegedly "establishes a pattern [of] deliberate, repeated harassment over a period of time."[71] As to PRC, Plaintiff contends

---

[68] White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991).
[69] *Id.*
[70] *Id.*
[71] Doc. 89 at 34.

that "PRC participated in the pattern by insisting on evaluations despite its inconclusive, even fraudulent, report from its initial evaluation."[72]

The alleged actions of PRC do not amount to intentional infliction of emotional distress under Louisiana law. Plaintiff alleges in a conclusory fashion that PRC's report was a "sham" and "meandering and incomprehensible." At no point, however, does Plaintiff provide facts explaining how or why he believes the report is a "sham" or allege that the flaws in the report were intentional. Rather, the alleged actions of PRC are more aptly characterized as malpractice or negligence—not outrageous and extreme behavior intended or likely to inflict severe emotional distress.[73] Plaintiff's claim for intentional infliction of emotional distress is accordingly dismissed.

>    2.   *Defamation*

Under Louisiana law, the elements of a defamation claim include: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[74]

In his Amended Compliant, Plaintiff alleges that "PRC and Williams falsely stated that they could not conclude Plaintiff was fit-for-duty . . . knowingly published false statements to LSU, HPFLA, and LSBME, and knowingly created the false and fraudulent PRC report."[75] Plaintiff alleges that

---

[72] *Id.* at 35.

[73] *See Shaboon*, 252 F.3d at 734 (applying Texas law) ("[The defendant's] alleged efforts 'to obtain and keep information to himself' about Shaboon's illness, 'manufacture a diagnosis[,]' and 'seclude' Shaboon suggest at most a propensity to terminate her residency unfairly. Such ill-motivated actions do not constitute legally actionable infliction of emotional distress.").

[74] Lewis v. M7 Prods., LLC, 427 F. Supp. 3d 705, 723–24 (M.D. La. 2019) (internal quotations and citations omitted).

[75] Doc. 55 at 21–22.

the report itself was negligently or "fraudulently" created and that impacted his ability to retain his Louisiana physician's license.

The Court finds that Plaintiff has failed to sufficiently allege facts indicating that PRC made an unprivileged publication to a third party. In his Amended Complaint, Plaintiff alleges that he consented to PRC's disclosure of the report to HPFLA. Plaintiff also alleges, in a conclusory fashion, that PRC published false statements to LSU and the LSBME but includes no supporting facts that would make this publication plausible. Plaintiff has thus failed to state a claim against PRC for defamation.

When granting a motion to dismiss, a district court should freely grant leave to amend the complaint unless amendment would be futile.[76] Here, the Court finds that amendment may cure the deficiencies in Plaintiff's claims against PRC for intentional infliction of emotional distress and defamation. Accordingly, Plaintiff's claims against PRC for intentional infliction of emotional distress are dismissed without prejudice. All other claims are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, PRC's Motion is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

**IT IS ORDERED** that PRC's request to sever and transfer the case is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against PRC for deprivation of substantive and procedural due process, violations of Title II of the ADA, and § 504 of the RA are hereby **DISMISSED WITH PREJUDICE**.

---

[76] *See, e.g.*, United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010).

**IT IS FURTHER ORDERED** that Plaintiff's claim against PRC for intentional infliction of emotional distress and defamation are **DISMISSED WITHOUT PREJUDICE.**   Plaintiff is hereby granted leave to amend his Complaint within 15 days of this Order.

New Orleans, Louisiana this 20th day of August, 2021.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**