## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GREGORY DUHON, M.D.**                                      **CIVIL ACTION**

**VERSUS**                                                               **NO: 20-2022**

**THE BOARD OF SUPERVISORS**                    **SECTION "H"**
**OF LOUISIANA STATE UNIVERSITY**
**& AGRICULTURAL & MECHANICAL**
**COLLEGE, ET AL.**

## ORDER AND REASONS

Before the Court is Defendants James David Hammond, M.D., and Healthcare Professionals of Louisiana's Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 70). The Court heard oral argument on this Motion on February 18, 2021 and took the matter under advisement. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Gregory Duhon, M.D. ("Duhon"), brings this action against multiple defendants for damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at Louisiana State University ("LSU") and the subsequent loss of his Louisiana medical license. Below are the facts relevant only to the instant Motion.

Plaintiff was enrolled in the 2018–2019 cardiology fellowship program at Louisiana State University. On May 23, 2019, Plaintiff was advised by its Program Director, Neeraj Jain, M.D., that he was being suspended effective immediately on suspicion of being mentally impaired and that he must obtain a fit-for-duty clearance from LSU's Campus Assistance Program ("CAP"). After conducting an occupationally mandated psychological evaluation ("OMPE"), CAP directed Plaintiff to register with the Health Care Professionals Foundation of Louisiana ("HPFLA"), a "private not-for-profit corporation that offers assistance to health care professionals who may be suffering from mental health issues" by referring the professionals for evaluations and monitoring their treatment plans where appropriate.[1] Plaintiff registered with HPFLA as instructed and HPFLA, in turn, directed Plaintiff to submit to a three-day comprehensive psychological exam at one of three HPFLA-approved facilities.

Plaintiff chose to undergo the required evaluation at Professional Renewal Center ("PRC") in Lawrence, Kansas, which ultimately concluded that Plaintiff required 60–90 days of inpatient treatment. To counter PRC's findings, Plaintiff obtained evaluations from two independent psychiatrists who found that the PRC report was flawed and that Plaintiff was indeed fit for duty. Plaintiff alleges that HPFLA acknowledged that the PRC report was inaccurate but nevertheless required that Plaintiff comply with PRC's recommendation and seek additional, costly inpatient treatment. When Plaintiff refused, the HPFLA reported Plaintiff to the Louisiana State Board of Medical Examiners ("LSBME") as noncompliant and otherwise impaired in his ability to practice medicine.

---

[1] Doc. 70-1 at 3.

On October 4, 2019, Plaintiff received a notice from the LSBME informing him that his license was under investigation and directing him to cooperate with HPFLA and PRC's recommendations. Plaintiff, through his attorneys, petitioned HPFLA and the LSBME to allow him to forego the additional inpatient treatment but to no avail. Plaintiff ultimately allowed his license to lapse in July of 2020.

In this action, Plaintiff brings claims against a long list of defendants—including LSU, the LSBME, and the organizations and providers to which and to whom he was referred—for violations of procedural and substantive due process, § 504 of the Rehabilitation Act,[2] and Title II of the Americans with Disabilities Act.[3] Plaintiff also brings state tort claims for intentional infliction of emotional distress and defamation under Louisiana Civil Code article 2315. Plaintiff contends that, at each step of the way, he was discriminated against "on the basis of a perceived disability and denied any notice or hearing on the actions taken against him and their supposed justification."[4] Specifically, Plaintiff alleges that the named defendants perceived him as having substance abuse disorder.[5] Plaintiff contends that the alleged discrimination cost him his fellowship position, his chance to transfer or become board-certified in cardiology, his reputation, the good standing of his Louisiana physicians license, and more than $50,000 in unnecessary treatment.

Now before the Court is a Motion to Dismiss filed by HPFLA and HPFLA's Medical Director, James David Hammond, M.D. ("Dr. Hammond") (collectively, "Defendants"), wherein they ask the Court to dismiss Plaintiff's

---

[2] 29 U.S.C. § 794.
[3] 42 U.S.C. § 12131, *et seq.*
[4] Doc. 89 at 2.
[5] Plaintiff alleges that he received treatment for substance abuse disorder in 2011 and has since been in remission.

claims against them under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[6] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[8] The court need not, however, accept as true legal conclusions couched as factual allegations.[9] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[10] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[11] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[12]

## LAW AND ANALYSIS

Plaintiff brings four causes of action against Defendants: (1) deprivation of procedural and substantive due process under § 1983; (2) discrimination in

---

[6] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[7] *Id.*

[8] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Id.*

[11] *Lormand*, 565 F.3d at 255–57.

[12] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

violation of Title II of the Americans with Disabilities Act ("ADA") pursuant to § 1983; (3) intentional infliction of emotional distress, and (4) defamation. Plaintiff brings the first two claims against both HPFLA and Dr. Hammond and brings the third and fourth claims against HPFLA alone. In their Motion to Dismiss, Defendants ask the Court to dismiss all four causes of action for failure to state a claim. The Court will thus address the sufficiency of each claim in turn.

## I.    Louisiana Revised Statutes § 37:1287

As a preliminary matter, Defendants argue that, because of HPFLA's relationship with the LSBME, HPFLA and Dr. Hammond are immune from suit under Louisiana Revised Statutes § 37:1287, which provides:

> D. There shall be no liability on the part of and no action for damages against any nonprofit corporation, foundation, or organization that enters into any agreement with the [LSBME] related to the operation of any committee or program to identify, investigate, counsel, monitor, or assist any licensed physician who suffers or may suffer from alcohol or substance abuse or a physical or mental condition which could compromise such physician's fitness and ability to practice medicine with reasonable skill and safety to patients, for any investigation, action, report, recommendation, decision, or opinion undertaken, performed, or made in connection with or on behalf of such committee or program, without malice and in the reasonable belief that such investigation, action, report, recommendation, decision, or opinion was warranted.[13]

Louisiana Revised Statutes § 37:1287(E) also provides immunity from liability for "any person who serves as a director, trustee, officer, employee, consultant, or attorney" who works for or is affiliated with an organization described in Subsection (D).

---

[13] LA. REV. STAT. § 37:1287(D).

5

Although the Court acknowledges the potential applicability of this statute, Defendants argued the statute's applicability for the first time in their Reply. "Reply briefs cannot be used to raise new arguments."[14] The Court therefore declines to address the statute's applicability at this time.

## II.   Claims Against Dr. Hammond

Additionally, Defendants argue that all claims against Dr. Hammond should be summarily dismissed as Plaintiff has not sufficiently alleged facts supporting any claims against him. Indeed, the only factual reference to Dr. Hammond in Plaintiff's Amended Complaint is found in paragraph 83(d), which states:

> HPFL[A] and Hammond attempted to conceal Plaintiff's coerced activities as "voluntary," knowingly published false statements to LSU, PRC, and LSBME, knowingly disregarded Plaintiff's legitimate fit-for-duty reports, knowingly accepted and endorsed the false and fraudulent PRC report, and in other respects did not comply with applicable legal or professional standards[.][15]

Defendants argue that the allegations in this paragraph are "self-serving, conclusory, and devoid of any factual support."[16] At oral argument, Plaintiff's counsel argued that the allegations in paragraph 83(d) are sufficient to state a claim against Dr. Hammond individually and that the alleged facts pertaining to HPFLA also pertain to Dr. Hammond as the person through whom HPFLA acts.

Plaintiff brings claims against Dr. Hammond individually.[17] Plaintiff's factual allegations regarding HPFLA are not, therefore, imputed to

---

[14] Hollis v. Lynch, 827 F.3d 436, 451 (5th Cir. 2016).

[15] Doc. 55 at 21.

[16] Doc. 70-1 at 6.

[17] The Court notes that, as to other defendants, Plaintiff has asserted claims against alleged state representatives in their official capacities; however, Plaintiff has not done so with respect to Dr. Hammond. *See* Doc. 55 at 19, 31.

Dr. Hammond individually. The Court finds that the allegations in paragraph 83(d) of Plaintiff's Amended Complaint are too conclusory and speculative to independently support a claim against him. Accordingly, as Plaintiff has not alleged any facts pertaining specifically to Dr. Hammond, Plaintiff's claims against Dr. Hammond are dismissed.

## III.   Deprivation of Procedural and Substantive Due Process Under 28 U.S.C. § 1983

"To state a claim under § 1983, plaintiffs must allege two elements: first that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second that the deprivation occurred under color of state law."[18] Here, Plaintiff alleges that he was deprived of his constitutional right to procedural and substantive due process under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law."[19] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[20] "To prevail on a [procedural] due process claim, plaintiffs must [therefore] show that: (1) they possess a property interest that is protected by the due process clause, and (2) [the defendant's] procedures are constitutionally inadequate."[21]

Substantive due process, on the other hand "ensures that, regardless of the fairness of the procedures used, the government does not use its power for

---

[18] Doe v. Rains County Ind. School Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).
[19] U.S. Const. amend. XIV.
[20] Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis in original).
[21] Ridgely v. Fed. Emergency Mgmt. Agency, 512 F.3d 727, 734 (5th Cir. 2008).

oppressive purposes."[22] Thus, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest."[23] In substantive due process cases concerning a plaintiff's alleged constitutional right to continued enrollment, the Supreme Court has held that, assuming such a right exists, there is only a "narrow avenue for judicial review" and that the plaintiff must show a "substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."[24]

As a result, a plaintiff alleging procedural or substantive due process violations must first demonstrate the existence of a protectable property interest. Here, Plaintiff contends that he was deprived of his protectable property or liberty interest in: (1) continuing his training in the LSU cardiology fellowship program; (2) not being subjected to unjustified and coerced psychological examinations; (3) his Louisiana physician's license and its good standing; and (4) his professional reputation. Defendants now argue that Plaintiff's due process claims must fail because he has not alleged sufficiently alleged: (1) facts indicating that HPFLA violated a constitutional right; or (2) that HPFLA "acted under color of state law."

### 1.   Violation of a Constitutional Right

Plaintiff first alleges that HPFLA deprived him of his protectable property interest in continuing his training in the LSU cardiology fellowship

---

[22] Patterson v. Def. POW/MIA Acct. Agency, 343 F. Supp. 3d 637, 646 (W.D. Tex. 2018) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

[23] Lewis v. Univ. of Texas Med. Branch at Galveston, 665 F.3d 625, 631 (5th Cir. 2011) (citing Texas v. Walker, 142 F.3d 813, 819 (5th Cir. 1998)).

[24] Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985).

program. He alleges that it did so by:

> Attempt[ing] to conceal Plaintiff's coerced activities 'voluntary,' knowingly publish[ing] false statements to LSU, PRC and LSBME, knowingly disregard[ing] Plaintiff's legitimate fit-for-duty reports, knowingly accept[ing] and endors[ing] the false and fraudulent PRC report, and in other respects did not comply with applicable legal or professional standards[.][25]

Defendants contend that, even taking Plaintiff's allegations as true,  HPFLA cannot be found to have deprived Plaintiff of his alleged right in his fellowship program as there is no allegation that it had any authority to make suspension or termination decisions.

The Court agrees. At the time that Plaintiff was allegedly "forced to resign" from LSU, the only alleged action by HPFLA was its referral of Plaintiff to PRC. Plaintiff does not allege that this action affected his enrollment. Further, Plaintiff does not allege that HPFLA was involved in the decision to suspend or terminate him or otherwise had such authority over LSU. Accordingly, since it was LSU that allegedly deprived Plaintiff of his right to his fellowship, it is LSU's procedures and actions that are the subject of Plaintiff's related due process claims—not HPFLA's. Plaintiff's substantive and procedural due process claims against HPFLA for deprivation of his interest in his fellowship are therefore dismissed.

Defendants do not address Plaintiff's claims for deprivation of his interest in his license, reputation, or freedom from coerced psychological examinations. Rather, in a footnote, Defendants explain that, because "Plaintiff does not identify HPFLA or Dr. Hammond in connection with these allegations[,]" they have omitted related arguments from their Motion.[26] The

---

[25] *Id.* at 21.
[26] Doc. 70 at 7 n.4.

Court acknowledges that Plaintiff's Amended Complaint does not specifically identify HPFLA in the paragraphs in which he identifies these three additional property interests. Nevertheless, the Court finds that Plaintiff's due process allegations, which are generally asserted against all the defendants, are sufficient to place HPFLA on notice that Plaintiff's claims against it include claims for the deprivation of these three interests without due process. Plaintiff's due process claims against HPFLA related to the interests in his license, reputation, and freedom from coerced psychological examinations therefore survive HPFLA's Motion to Dismiss so long as this Court finds that HPFLA acted "under color of state law" pursuant to § 1983.

   2.   *Under Color of State Law*

   For a defendant to act "under color of state law" for the purposes of § 1983, his conduct must be fairly attributable to the state.[27] To determine whether the actions of a private entity are fairly attributable to the state, the "inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."[28] To aid in this inquiry, the Supreme Court has articulated three tests: (1) the nexus or joint-action test, (2) the public function test, and (3) the state coercion or encouragement test.[29] "[T]he nexus or state action test finds state action where the state has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise.'"[30] Under the public function test,

---

[27] Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).

[28] Daigle v. Opelousas Health Care, Inc., 774 F.2d 1344, 1348–49 (5th Cir. 1985) (internal quotation marks omitted).

[29] *See* Gordon v. Neugebauer, 57 F. Supp. 3d 766, 774 (N.D. Tex. 2014) (citations omitted).

[30] Richard v. Hoechst Celanese Chem. Grp., Inc., 355 F.3d 345, 352 (5th Cir. 2003) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 357–58 (1974)).

10

"a private entity acts under color of state law when the entity performs a function which is 'exclusively reserved to the state.'"[31] Finally, the state coercion or encouragement test "holds the state responsible 'for a private decision only when [the state] has exercised coercive power or has provided significant encouragement, either overt or cover, that the choice must in law be deemed to be that of the State."[32]

The Court finds that Plaintiff has sufficiently alleged that HPFLA is fairly attributable to the state under either the nexus test or the public function test. Plaintiff alleges that "HPFL[A] was originated by the LSBME to oversee the evaluation, treatment, and monitoring of impaired or potentially impaired physicians."[33] Plaintiff also contends that HPFLA threatened Plaintiff with LSBME action if he failed to comply with HPFLA directives. When HPFLA did report Plaintiff to the LSBME, the LSBME required that Plaintiff cooperate with HPFLA's directives in order to maintain his license, allegedly without conducting an independent investigation. Plaintiff also states at various places in his Amended Complaint that HPFLA acted as the "agent" of the LSBME. Plaintiff has thus plausibly alleged that the LSBME has delegated to HPFLA some of its oversight over medical practitioners, that the LSBME and HPFLA continue to work together in this function, and that HPFLA's actions as to Plaintiff were within the scope of HPFLA's directive from the LSBME.

In finding Plaintiff's allegations sufficient, this Court does not conclusively decide that HPFLA acted under color state law. Indeed, the "fairly

---

[31] *Id.* (quoting Flagg Bros. v. Brooks, 436 U.S. 149, 157–58 (1978)).

[32] *Id.* (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

[33] Doc. 55 at 3. In his Opposition, Plaintiff also cites an excerpt from HPFLA's website wherein it states that it continues to operate under a "Memorandum of Understanding" with the LSBME.

attributable" inquiry is highly fact-based, and additional discovery may reveal that HPFLA's actions are more divorced from LSBME's than Plaintiff has alleged.[34] However, at this early stage, the Court finds that Plaintiff has sufficiently alleged that HPFLA's alleged due process failures are so closely connected to the function and actions of LSBME as to be fairly attributable to the state.

## IV.   Title II of the ADA

Plaintiff brings his claims under Title II of the Americans with Disabilities Act ("ADA") pursuant to § 1983. As explained previously in this matter,[35] "where a statutory regime already provides a comprehensive set of remedies for its enforcement, there is a presumption against the availability of the more general remedial measures of § 1983. This principle renders further discussion of the intricacies of § 1983 unnecessary."[36] Accordingly, the Court will not consider Plaintiff's claims under § 1983 but will rather proceed to an analysis of Plaintiff's claim against HPFLA under Title II of the ADA.

"The ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."[37] Here, Plaintiff brings suit against HPFLA under Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities

---

[34] Frazier v. Bd. of Trustees of Nw. Mississippi Reg'l Med. Ctr., 765 F.2d 1278, 1284 (5th Cir.), *amended*, 777 F.2d 329 (5th Cir. 1985) ("Imbued with an identity all its own, every state action inquiry partakes only slightly of the factual stuff of other cases.").

[35] *See* Doc. 122 at 14–15.

[36] *See id.* (citing Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999)).

[37] PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001) (citing 42 U.S.C. §§ 12111–12117; 12131–12165; 12181–12189).

*of a public entity*, or be subjected to discrimination by any such entity."[38] The ADA defines a "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority."[39]

Defendants argue that Plaintiff's Title II claim against HPFLA is improper as HPFLA is a private entity. In response, Plaintiff argues that the actions of HPFLA are "fairly attributable" to the state under § 1983. This Court has previously found, however, that Plaintiff cannot use § 1983 to bring suit against private entities under Title II.[40] Accordingly, Plaintiff's Title II claim against HPFLA is dismissed with prejudice.

## V.   Intentional Infliction of Emotional Distress

"[T]o recover for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[41] To succeed on this claim, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[42] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[43]

---

[38] 42 U.S.C. § 12132 (emphasis added).
[39] 42 U.S.C. § 12131.
[40] *See* Doc. 122 at 15–16.
[41] White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991).
[42] *Id.*
[43] *Id.*

Plaintiff alleges that Defendants in this case are liable for the tort of intentional infliction of emotional distress because of their dissemination of false information about him, which allegedly "establishes a pattern [of] deliberate, repeated harassment over a period of time."[44] As to HPFLA, Plaintiff contends that it engaged in "outrageous conduct" in "refusing to accept two fit for duty reports clearing him of any mental impairment that would implicate his fitness to practice medicine."[45]

As support for his claim, Plaintiff quotes the opinion in *Currier v. Entergy Services, Inc.*, wherein another section of this Court denied summary judgment on an emotional distress claim after finding evidence that the defendant's conduct "did not lead to her loss of only that one job; it destroyed her career."[46] In *Currier*, however, the Court found a genuine issue of material fact as to whether the defendant "concocted a plan to destroy Currier's career."[47] Here, Plaintiff does not allege that HPFLA's actions were made with an intent to destroy his career or allege that HPFLA engaged in any similarly outrageous conduct. This Court thus finds that HPFLA's failure to accept Plaintiff's commissioned examinations fails to meet the high bar for intentional infliction of emotional distress claims in Louisiana.[48] Plaintiff's intentional infliction of emotional distress claim is therefore dismissed.

## VI.  Defamation

Under Louisiana law, the elements of a defamation claim include: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of

---

[44] Doc. 89 at 34.
[45] *Id.* at 35.
[46] *Id.* at 679.
[47] *Id.*
[48] *See* Currier v. Entergy Servs., Inc., 73 F. Supp. 3d 673, 678 (E.D. La. 2014).

the publisher; and (4) resulting injury."[49] In his Amended Complaint, Plaintiff contends that HPFLA defamed him when it reported to the LSBME that Plaintiff was noncompliant and that Plaintiff had a potential substance abuse problem or mental health condition that impaired his ability to practice medicine. Plaintiff also alleges HPFLA made these statements after acknowledging that PRC's conclusions regarding his fitness for duty were false and that HPFLA's report to the LSBME essentially cost him his license.

Defendants contend that HPFLA's statements to the LSBME were "opinions" protected by the First Amendment. "The First Amendment provides 'a defense against defamation actions for expressions of opinion about matters of public concern made without knowing or reckless falsity.'"[50] Without the benefit of the actual statement, however, this Court cannot determine whether it was truly an expression of opinion as opposed to fact or that it was made without knowing or reckless falsity.[51] Rather, this Court must accept as true Plaintiff's allegations that the LSBME essentially accepted HPFLA's statements as fact.

Defendants also assert that HPFLA's statements are entitled to the defense of qualified privilege. "In Louisiana, privilege is a defense to a defamation action."[52] "The practical effect of the assertion of the conditional or qualified privilege is to rebut the plaintiff's allegation of fault and to place the burden of proof on the plaintiff to establish abuse of the privilege."[53]

---

[49] Lewis v. M7 Prods., LLC, 427 F. Supp. 3d 705, 723–24 (M.D. La. 2019) (internal quotations and citations omitted).

[50] Ioppolo v. Rumana, 581 F. App'x 321, 330 (5th Cir. 2014).

[51] *See id.* (explaining that the report was rendered after the committee carefully considered evidence and that the report is "littered with phrases and statements which clearly indicate it is a statement of opinion").

[52] *Id.* at 331.

[53] *Id.* at 332 (quoting Dyas v. Shreveport Police Dep't, 136 So.3d 897, 904 (La. App. 2 Cir. 2014)).

Establishing whether a conditional privilege exists is a two-step process. "First, it must be determined whether 'the attending circumstances of communication occasion a qualified privilege,' which means that a determination must be made of whether the requirements for invoking the privilege are satisfied."[54] Second, it must be determined "whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be defined."[55]

Applying this framework to the matter at hand, the Court first finds that the circumstances do support a qualified privilege as "Louisiana courts have held that a qualified privilege is generally necessary for statements made when reviewing the fitness of medical doctors to practice their profession."[56] Thus, to sufficiently plead defamation, Plaintiff must allege that HPFLA abused this privilege—"that [it] made the alleged defamatory statements knowing they were false or 'with reckless disregard as to [their] truth or falsity.'"[57] Here, Plaintiff alleges that HPFLA reported to LSBME that Plaintiff was not fit to practice after acknowledging the fraudulence of the PRC report and refusing to consider contrary evaluations. Although such allegations could potentially amount to a finding of recklessness, Plaintiff's claims are conclusory in nature and unsupported by facts to make HPFLA's alleged "acknowledgment" and "refusal" plausible.  For this reason, Plaintiff's defamation claim is hereby dismissed.

---

[54] Smith v. Our Lady of the Lake Hosp., Inc., 639 So. 2d 730, 745 (La. 1994).

[55] *Id.*

[56] *Ioppolo*, 581 F. App'x at 332.

[57] Russell v. Chevron U.S.A., Inc., No. CV 18-4157, 2018 WL 4816151, at *5 (E.D. La. Oct. 4, 2018) (quoting Kennedy v. Sheriff of E. Baton Rouge, 935 So. 2d 669, 674 (La. 2006)).

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS ORDERED** that Plaintiff's claims against Dr. Hammond are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claim against HPFLA for violation of Title II of the ADA is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against HPFLA for intentional infliction of emotional distress and defamation are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff is granted 15 days from the date of this Order in which to amend his Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's claims against HPFLA for violations of substantive and procedural due process are **DISMISSED WITH PREJUDICE** only insofar as they relate to Plaintiff's alleged property interest in his fellowship. Plaintiff's due process claims related to his alleged interests in his license, reputation, and freedom from coerced examination remain.

New Orleans, Louisiana this 20th day of August, 2021.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**