UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREGORY DUHON, M.D.                          CIVIL ACTION

VERSUS                                       NO: 20-2022

THE BOARD OF SUPERVISORS                     SECTION "H"
OF LOUISIANA STATE UNIVERSITY
& AGRICULTURAL & MECHANICAL
COLLEGE, et al.

## ORDER AND REASONS

Before the Court is the Motion to Dismiss Plaintiff's Amended Complaint Under Rules 12(b)(1) and 12(b)(6) field by Defendants Neeraj Jain, M.D., Margaret Bishop-Baier, M.D., and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (Doc. 77). The Court heard oral argument on this Motion on February 17, 2021 and took the matter under advisement. For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Gregory Duhon, M.D. ("Duhon"), brings this action against multiple defendants for damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at Louisiana State University ("LSU") and the subsequent loss of his Louisiana medical license. Below are the facts relevant only to the instant Motion.

Plaintiff was enrolled in the 2018–2019 cardiology fellowship program at LSU. On May 23, 2019, Plaintiff was advised by his Program Director, Neeraj Jain, M.D. ("Dr. Jain"), that he was being suspended effective immediately on suspicion of being mentally impaired and that he must obtain a fit-for-duty clearance from LSU's Campus Assistance Program ("CAP"). Plaintiff alleges that this action violated the terms of his contract with LSU as the contract only allowed the Program Director to summarily suspend a fellow without prior notice "whenever it is in good faith determined that the continued appointment of [Plaintiff] places the safety or health of patients or University personnel in jeopardy or to prevent imminent disruption of University Operations."[1] The contract also provided that, in the event of a suspension, LSU would provide Plaintiff with written reasons for the action taken and that Plaintiff would have five days to respond in writing. Plaintiff contends that Dr. Jain's actions were not in good faith so as to warrant his immediate suspension and that neither Dr. Jain nor LSU ever provided him with written reasons.

As part of Plaintiff's initial evaluation by CAP, Plaintiff was required to submit to drug-testing and undergo a mental health evaluation. Scott Embley, the Assistant Director of CAP, was assigned to oversee Plaintiff's treatment. Embley, however, had also previously served as Plaintiff's therapist in several counseling sessions, wherein Plaintiff divulged that he was treated for substance abuse disorder in 2011. Plaintiff alleges that, despite Plaintiff's negative drug screening and the lack of evidence of relapse, Embley "merged his sources of data and became fixated on the idea that [he] had relapsed but was concealing it."[2] Plaintiff contends that it was the Medical Director of CAP,

---

[1] Doc. 55 at 6.
[2] Id. at 7.

2

Dr. Margaret Bishop-Baier, M.D. ("Dr. Bishop-Baier"), who improperly allowed Embley to serve in this "disciplinary role."

CAP thereafter instructed Plaintiff to submit to an occupationally mandated psychological evaluation ("OMPE") with Dr. Erik Whitfield ("Dr. Whitfield"), who was ultimately "unable to decide" whether Plaintiff was fit-for-duty. Plaintiff contends that the scope of Dr. Whitfield's report was "boundless," even though professional standards required him to remain narrowly focused on the "referral questions" and Plaintiff's "essential job functions." Nevertheless, "CAP and Dr. Bishop-Baier" relied upon Dr. Whitfield's report and required that he register with Health Care Professionals Foundation of Louisiana ("HPFLA"), a "private not-for-profit corporation that offers assistance to health care professionals who may be suffering from mental health issues" by referring the professionals for evaluations and monitoring their treatment plans where appropriate.[3] After registering with HPFLA, Plaintiff was instructed to seek inpatient evaluation and treatment, which Plaintiff did at Professional Renewal Center ("PRC") in Lawrence, Kansas. By the time of this inpatient stay, however, Plaintiff was allegedly "forced to resign from his fellowship position at LSU in order to evade that coercive force."[4]

Following Plaintiff's time at PRC, HPFLA required that Plaintiff seek additional, costly inpatient treatment. As further detailed in this Court's previous Orders and Reasons, Plaintiff refused to comply with HPFLA's directives and HPFLA eventually reported Plaintiff as noncompliant with the Louisiana State Board of Medical Examiners ("LSBME"). Plaintiff ultimately allowed his Louisiana medical license to lapse.

---

[3] Doc. 70-1 at 3.
[4] Doc. 55 at 9.

3

In this action, Plaintiff brings claims against a long list of defendants—including LSU, the LSBME, and the organizations and providers to which and to whom he was referred—for violations of procedural and substantive due process, § 504 of the Rehabilitation Act,[5] and Title II of the Americans with Disabilities Act.[6] Plaintiff also brings state tort claims for intentional infliction of emotional distress and defamation under Louisiana Civil Code article 2315. Plaintiff contends that, at each step of the way, he was discriminated against "on the basis of a perceived disability and denied any notice or hearing on the actions taken against him and their supposed justification."[7] Specifically, Plaintiff alleges that the named defendants perceived him as having substance abuse disorder.[8] Plaintiff contends that the alleged discrimination cost him his fellowship position, his chance to transfer or become board-certified in cardiology, his reputation, the good standing of his Louisiana physicians license, and more than $50,000 in unnecessary treatment.

Now before the Court is a Motion to Dismiss filed by Defendants Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (hereinafter "LSU"), Dr. Jain, and Dr. Bishop-Baier (collectively, "Defendants"), wherein they ask the Court to dismiss all of Plaintiff's claims against them. Plaintiff opposes.

---

[5] 29 U.S.C. § 794.

[6] 42 U.S.C. § 12131, *et seq.*

[7] Doc. 89 at 2.

[8] Plaintiff alleges that he received treatment for substance abuse disorder in 2011 and has since been in remission.

4

## LEGAL STANDARD

### I.        Rule 12(b)(1) Motion to Dismiss

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[9] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[10] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[11]

### II.       Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[12] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[14] The court need not, however, accept as true legal conclusions couched as factual allegations.[15] To be legally sufficient, a complaint must establish more than a "sheer possibility"

---

[9] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

[10] Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).

[11] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

[12] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[13] *Id.*

[14] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[15] *Iqbal*, 556 U.S. at 678.

5

that the plaintiff's claims are true.[16] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[17] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[18]

## LAW AND ANALYSIS

In their Motion to Dismiss, Defendants LSU, Dr. Jain, and Dr. Bishop-Baier ask that this Court dismiss Plaintiff's claims against them. Specifically, LSU asks that the Court dismiss Plaintiff's claims against it for substantive and procedural due process violations under the Fourteenth Amendment and for violation of § 504 of the Rehabilitation Act. Dr. Jain and Dr. Bishop-Baier (collectively, "the Individual Defendants") also ask that the Court dismiss Plaintiff's claims against them for violations of procedural and substantive due process under 28 U.S.C. § 1983, disability discrimination under Title II of the Americans with Disabilities Act, intentional infliction of emotional distress, and defamation. The Court will discuss the sufficiency of each claim in turn.

## I.   Claims Brought Directly Under the Fourteenth Amendment

Counts One and Two of Plaintiff's Amended Complaint assert claims against LSU and the LSBME directly under the Due Process Clause of the Fourteenth Amendment, alleging violations of procedural and substantive due process. At oral argument, however, counsel for Plaintiff asked that these claims be voluntarily dismissed. Accordingly, these claims are hereby dismissed with prejudice.

---

[16] *Id.*
[17] *Lormand*, 565 F.3d at 255–57.
[18] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

## II.   Deprivation of Substantive and Procedural Due Process Under 28 U.S.C. § 1983 and *Ex parte Young*

Counts Three and Four of Plaintiff's Amended Complaint assert claims against the Individual Defendants in their individual and official capacities for deprivation of procedural and substantive due process under § 1983 and under the *Ex Parte Young* exception. "The Eleventh Amendment generally precludes actions against state officers in their official capacities."[19] There are, however, two exceptions relevant to the § 1983 claims here. First, the *Ex parte Young* doctrine allows a plaintiff to sue a state officer in his official capacity for prospective injunctive or declaratory relief.[20] Second, a plaintiff may sue a state officer in his individual capacity for damages resulting from a deprivation of the plaintiff's constitutional rights under color of law.[21]

As an initial matter, Defendants argue that Plaintiff's claims against the Individual Defendants, as pleaded, run afoul of these two exceptions. Indeed, Plaintiff's Amended Complaint can be read as seeking monetary damages against the Individual Defendants in their official capacities and also bringing individual capacity claims against them under *Ex parte Young*. At oral argument, however, counsel for Plaintiff clarified that the only intended claims are those allowed under the two sovereign immunity exceptions explained above. Accordingly, the Court will examine Plaintiff's claims against the Individual Defendants as those seeking only prospective injunctive relief under *Ex parte Young* and monetary damages under § 1983.

---

[19] Cantu Servs., Inc. v. Roberie, 535 F. App'x. 342, 344 (5th Cir. 2013) (internal quotations omitted).
[20] *See* Fontenot v. McCraw, 777 F.3d 741, 752 (5th Cir. 2015).
[21] *See* Hafer v. Melo, 502 U.S. 21, 30–31 (1991).

A. **Official Capacity Claims under *Ex Parte Young***

Plaintiff alleges that Defendants deprived him of his constitutional rights to procedural and substantive due process under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law."[22] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[23] "To prevail on a [procedural] due process claim, plaintiffs must [therefore] show that: (1) they possess a property interest that is protected by the due process clause, and (2) [the defendant's] procedures are constitutionally inadequate.[24]

Substantive due process, on the other hand "ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes."[25] Thus, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest."[26] In substantive due process cases concerning a plaintiff's alleged constitutional right to continued enrollment, the Supreme Court has held that, assuming such a right exists, there is only a "narrow avenue for judicial review" and that the plaintiff must show a "substantial departure from

---

[22] U.S. Const. amend. XIV.

[23] Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis in original).

[24] Ridgely v. Fed. Emergency Mgmt. Agency, 512 F.3d 727, 734 (5th Cir. 2008).

[25] Patterson v. Def. POW/MIA Acct. Agency, 343 F. Supp. 3d 637, 646 (W.D. Tex. 2018) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

[26] Lewis v. Univ. of Texas Med. Branch at Galveston, 665 F.3d 625, 631 (5th Cir. 2011) (citing Texas v. Walker, 142 F.3d 813, 819 (5th Cir. 1998)).

8

accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."[27]

As described above, a plaintiff asserting violations of his procedural or substantive due process rights must first demonstrate the existence of a protectable property interest. In his Amended Complaint, Plaintiff contends that Defendants deprived him of his protectable property or liberty interests in: (1) continuing his training in the LSU cardiology fellowship program; (2) not being subjected to unjustified and coerced psychological examinations; (3) his Louisiana physicians' license and its good standing; and (4) his professional reputation. In their Motion to Dismiss, Defendants argue that Plaintiff has insufficiently alleged that they deprived him of each of the alleged interests. The Court will discuss each in turn.

1.   *Plaintiff's Alleged Interest in His Continued Training and Not Being Subjected to Coerced Psychological Examinations*

Defendants argue that Plaintiff has not sufficiently alleged a protectable interest in his continued training and right to be free from coerced psychological examinations.[28] Defendants explain that, under Supreme Court and Fifth Circuit precedent, LSU's suspension and alleged termination of Plaintiff was academic, not disciplinary, in nature and therefore only minimal process was due to Plaintiff. Defendants also dispute that Plaintiff has sufficiently alleged that he was constructively terminated.

---

[27] Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985).

[28] Defendants address Plaintiff's interest in his continued training and right to be free from examination together as a single liberty or property interest. Plaintiff also does not differentiate these interests in his Opposition. Thus, for the limited purpose of this Order and Reasons, this Court too will address these interests together.

A "student['s] due process rights are evaluated on a scale commensurate with the nature of their academic program and the type of discipline involved."[29] As to medical residency programs, the Fifth Circuit has found that the program's "primary purpose . . . is not employment or a stipend, but the academic training and academic certification for successful completion of the program."[30] Plaintiff's claims are therefore governed by Supreme Court and Fifth Circuit precedent concerning academic dismissals.

When a student is dismissed from an academic program, the dismissal is characterized as either academic or disciplinary. In *Goss v. Lopez*, the Supreme Court held that "due process requires, in connection with the suspension of a student from public school for disciplinary reasons, 'that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.'"[31] Thus, under *Goss*, a disciplinary dismissal requires only an "'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'"[32] In *Board of Curators of University of Missouri v. Horowitz*, the Supreme Court found that academic dismissals, unlike disciplinary dismissals, rest upon the "academic judgment of school officials," and such judgment is "by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision."[33] In light of

---

[29] Shaboon v. Duncan, 252 F.3d 722, 729 (5th Cir. 2001).

[30] *Id.* (quoting Davis v. Mann, 882 F.2d 967, 974 (5th Cir. 1989)).

[31] Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 85 (1978) (quoting Goss v. Lopez, 419 U.S. 565, 581 (1975)).

[32] *Id.* at 86 (quoting *Goss*, 419 U.S. at 584).

[33] *Id.* at 89–90.

the "historic judgment of educators" and the non-adversarial nature of the educational process, the Supreme Court declined to "formalize the academic dismissal process by requiring a hearing."[34] Instead, the Supreme Court found that, assuming the existence of a liberty or property interest, the medical student was provided all process due to her under the Fourteenth Amendment where she was "fully informed . . . of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment."[35]

Defendants argue that, like in *Horowitz*, LSU's suspension of Plaintiff was academic in nature and Plaintiff was provided all process owed to him under the Fourteenth Amendment. As support, Defendants cite to *Shaboon v. Duncan* and *Mathai v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*.[36] In *Shaboon*, the Fifth Circuit found that a medical resident's dismissal was academic where the student was "dismissed for reasons related to her fitness to perform as a doctor."[37] Specifically, *Shaboon* was dismissed after she received negative mental health evaluations, departed from the recommendations of her doctor, was not cleared to come to work, and missed clinical rotations as a result.[38] The Fifth Circuit thus found that, as a matter of law, Shaboon was not entitled to a hearing and could not claim that her supervisor violated a liberty interest in her residency.[39]

---

[34] *Id.* at 89.
[35] *Id.* at 85.
[36] Shaboon, 252 F.3d 722; Mathai v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll., 551 F. App'x 101, 102 (5th Cir. 2013).
[37] *Shaboon*, 252 F.3d at 731.
[38] *Id.* at 731.
[39] *Id.*

Similarly, in *Mathai*, another section of this Court found that a medical student's dismissal for failure to abide by the university-mandated treatment program was academic in nature.[40] Closely tracking the matter at hand, the medical student in *Mathai* was referred to CAP on suspicion of substance abuse and subsequently referred for inpatient treatment.[41] Following a three-day evaluation, the inpatient facility diagnosed Mathai with "polysubstance dependence and narcissistic traits" and recommended that Mathai enroll in an additional three-month treatment program.[42] Mathai refused, and she was dismissed from the school for failure to abide by LSU's "Fitness for Duty Policy."[43] In evaluating whether *Mathai* had sufficiently stated an official capacity claim for procedural due process, Judge Vance found that *Shaboon* "compel[led] a conclusion that plaintiff's dismissal was academic."[44] Further "[b]ecause plaintiff's dismissal was academic, rather than disciplinary, the only procedural safeguards required were 'ample notice' of the conditions upon which her continued enrollment was predicated and 'warning of the consequences that would follow h[er] failure to' abide by those conditions."[45] The court concluded that, between Mathai's two written warnings and the terms of the Fitness for Duty contract, Mathai had received all process owed to her.[46]

In light of this precedent, this Court too now finds that Plaintiff's dismissal was academic in nature. Like the plaintiffs in *Shaboon* and *Mathai*, Plaintiff alleges that he was suspended on suspicion of "mental impairment."

---

[40] *Mathai*, 959 F. Supp. 2d at 951.

[41] *Id.* at 934–35.

[42] *Id.* at 955.

[43] *Id.*

[44] *Id.* at 959.

[45] *Id.* (quoting *Shaboon*, 252 F.3d at 730).

[46] *Id.* at 971.

Plaintiff also alleges that he was forced to resign because of his inability to obtain a fit-for-duty recommendation. Plaintiff's suspension and alleged termination can therefore be characterized as academic "since it implicated [his] fitness to perform as a doctor."[47] Thus, Plaintiff was entitled only to notice of the conditions upon which his continued enrollment was predicated and a warning of the consequences from his failure to abide by those conditions.

Both conditions are satisfied here. Plaintiff's contract with LSU gave him notice that he could be suspended immediately whenever his supervisor, in good faith, believed that his continued appointment risked the safety and health of patients or the imminent disruption of the normal operations.[48] Dr. Jain also notified Plaintiff that his continued enrollment was contingent upon his obtaining a fit-for-duty clearance from CAP. Although Plaintiff argues that his suspension was not "in good faith" as required by his contract, Plaintiff has not provided this Court with any facts that call Dr. Jain's actions into question. Plaintiff has therefore failed to allege that Defendants' actions deprived him of due process.[49]

As to Plaintiff's substantive due process claim, assuming that such an interest exists,[50] Plaintiff must demonstrate that Defendants' actions

---

[47] *Mathai*, 959 F. Supp. 2d at 959.

[48] *See* Doc. 55 at 6.

[49] The Court also notes that, although Plaintiff's contract provided that he receive an opportunity to respond to the reason for his suspension, the mere breach of contract does not itself create a valid procedural due process claim. *See* Burnett v. Coll. of the Mainland, 994 F. Supp. 2d 823, 830 (S.D. Tex. 2014) ("The Court rejected the procedural due process claim because COM's informal and formal grade appeal process amounted to more than sufficient process, and that is the case even if a contractual right required more procedural protections than merely an interest in public higher education. . . . The possible existence of a contract therefore does nothing to change the determination that adequate procedure was afforded.").

[50] *See* Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 223 (1985) (noting that a court should not "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied" and assuming "the existence of a constitutionally protectible property right in [Ewing's] continued enrollment").

regarding his fellowship were arbitrary and capricious or otherwise devoid of professional judgment.[51] Plaintiff, however, has failed to plead any such facts. Plaintiff alleges that Dr. Jain suspended him on suspicion of "mental impairment" and contends that his suspicion was based on Plaintiff's history of substance abuse disorder. Yet, Plaintiff has not alleged facts that would allow this Court to conclude that Dr. Jain's decision to suspend Plaintiff was not carefully considered or otherwise devoid of professional judgment. Thus, without facts explaining the circumstances of his dismissal, Plaintiff's allegations are speculative and conclusory. Similarly, Plaintiff's allegations against Dr. Bishop-Baier—that she erroneously permitted Embley to counsel Plaintiff despite their history and referred him for an OMPE—sound in negligence and do not qualify as arbitrary and capricious conduct. Plaintiff's substantive due process claims are accordingly dismissed.

Further, the Court also agrees with Defendants that Plaintiff has failed to allege that he was "constructively discharged." "Establishing constructive discharge generally requires a plaintiff to show that [his] employer made [his] 'working conditions so intolerable that a reasonable employee would feel compelled to resign.'"[52] Plaintiff's Amended Complaint states that, "[b]y the time of his inpatient stay [with PRC], [he] had been forced to resign from his fellowship position at LSU in order to evade that coercive force."[53] This statement, unaccompanied by supporting facts, is insufficient to establish a forced resignation. At the time Plaintiff resigned, he had already committed to an evaluation by PRC and thus had the possibility of obtaining a fit-for-duty clearance in the near future. Therefore, without allegations explaining why

---

[51] *See id.* at 225.

[52] LeBeouf v. Manning, 575 F. App'x 374, 376 (5th Cir. 2014) (quoting Finch v. Fort Bend Indep. Sch. Dist., 333 F.3d 555, 562 (5th Cir. 2003)).

[53] Doc. 55 at 9.

Plaintiff would feel "compelled to resign," Plaintiff's Amended Complaint fails to demonstrate that his resignation was anything less than voluntary.

2.      *Plaintiff's Alleged Interest in His Medical License and its Good Standing*

Defendants argue that LSU cannot have deprived Plaintiff of his right in his license as it has no control over the licensure decision. In response, Plaintiff contends that LSU's inability to deprive Plaintiff of his license is irrelevant as the LSBME exhibited "blind deference" to LSU. Plaintiff's Amended Complaint, however, demonstrates that the LSBME relied upon the conclusions of HPFLA, not the LSU-affiliated Defendants. As Plaintiff has not demonstrated that Defendants' actions deprived him of his license, Plaintiff's related procedural and substantive due process claims are dismissed.[54]

3.      *Plaintiff's Alleged Interest in His Professional Reputation*

Plaintiff's only remaining due process claim against Defendants is for deprivation of his alleged interest in his professional reputation. "The Supreme Court has recognized a constitutionally protected interest in 'a person's good name, reputation, honor, or integrity.'"[55] Where an individual is deprived of this interest because of government action, "due process requires that the

---

[54] Plaintiff argues that Defendants need not have the authority to deprive him of his license in order to interfere in his right to his license. As support, Plaintiff cites to *Watson v. Univ. of Utah Med. Ctr.,* wherein the Tenth Circuit found a genuine issue of material fact as to whether the defendants' interference with the Division of Professional Licensing's ("DOPL") investigation violated the plaintiff's liberty interests in her reputation and freedom to take advantage of other employment. 75 F.3d 569, 580–81 (10th Cir. 1996). Unlike in *Watson*, however, Plaintiff has not alleged that Defendants interfered in the LSBME's investigation. Further, the *Watson* court also found that the defendants could not deprive the plaintiff of her alleged due process right in her nursing license as the "DOPL took no action to revoke or suspend her license." The Court therefore does not find that *Watson* supports Plaintiff's position.

[55] Kovac v. Wray, 363 F. Supp. 3d 721, 753 (N.D. Tex. 2019) (Paul v. Davis, 424 U.S. 693, 711 (1976)).

affected employee be given notice of the charges and an opportunity to clear his or her name."[56] Plaintiff cites *Hughes v. City of Garland* for the proposition that his liberty interest is implicated here because he was "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other opportunities."[57]  Specifically, Plaintiff contends that Dr. Jain suspended him based on false accusations of mental impairment, that LSU and Dr. Bishop-Baier relied on these accusations, "creating circumstances in which Plaintiff was effectively terminated," and that Plaintiff was denied an employment opportunity as a result.

As an initial matter, however, *Hughes* and related Fifth Circuit precedent address reputational injuries only within the context of public employment.[58] In *Shaboon*, the Fifth Circuit remarked in a footnote that this line of cases did not apply as the plaintiff was not a public employee and, "in any event, [the plaintiff] never requested a name-clearing hearing."[59] Accordingly, the Court does not find that Plaintiff's alleged injury to his reputation entitles him to any procedures separate and apart from those discussed in relation to his academic dismissal.[60] Regardless, like in *Shaboon*,

---

[56] Hughes v. City of Garland, 204 F.3d 223, 226 (5th Cir. 2000).

[57] *Id.*

[58] *See generally, id*; Rosenstein v. City of Dallas, Tex., 876 F.2d 392, 395 (5th Cir. 1989), *opinion reinstated in part*, 901 F.2d 61 (5th Cir. 1990).

[59] *Shaboon*, 252 F.3d at 730 n. 3.

[60] *See Horowitz*, 435 U.S. at 98 (discussing the plaintiff's alleged injury to her reputation and finding that the plaintiff was provided all  due process owed to her even assuming that such an interest exists); Smith v. Davis, 507 F. App'x 359, 362 (5th Cir. 2013) (addressing simultaneously the plaintiff's alleged interest in his continued education and reputation); Swift v. Siesel, No. CIV.A. 01-2691, 2002 WL 1585617, at *8 (E.D. La. July 15, 2002) ("Just as in the employment context, the liberty interest arising from the State's establishment of a public education system is a liberty interest in one's reputation." (citing *Goss*, 419 U.S. at 576)).

Plaintiff did not request a name-clearing hearing and therefore could not recover under *Hughes* even if it applied.

### B.   Personal Capacity Claims Against the Individual Defendants

As to Plaintiff's claims against the Individual Defendants in their personal capacities, Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[61] "To overcome the immunity defense, the complaint must allege facts that, if proven, would demonstrate that [the Individual Defendants] violated clearly established statutory or constitutional rights."[62] "Heightened pleading demands more than bald allegations and conclusionary statements."[63] Instead, Plaintiff "must allege facts specifically focusing on the conduct of [the Individual Defendants] which caused his injury."[64]

As explained above, Plaintiff has failed to allege a constitutional violation; thus, the Individual Defendants are entitled to qualified immunity. Nevertheless, assuming that Plaintiff is able to sufficiently amend his Complaint to state a claim for deprivation of his interest in his continued enrollment, the Court does not find that this right is clearly established.

In all binding precedent addressing the existence of this right, courts have adhered to the practice of "constitutional avoidance, comporting with the

---

[61] Griggs v. Brewer, 841 F.3d 308, 312 (5th Cir. 2016) (internal quotation omitted).
[62] Wicks v. Mississippi State Employment Servs., 41 F.3d 991, 995 (5th Cir. 1995).
[63] *Id.*
[64] *Id.*

'usual reluctance to decide constitutional questions unnecessarily.'"[65] The Supreme Court and the Fifth Circuit have thus addressed due process claims concerning academic suspensions and dismissals by assuming the existence of such a right without holding that such a right exists.[66] Moreover, neither Court has yet been forced to address whether such a right exists, as each Court has repeatedly found that, in light of the deference owed to academic decisionmakers, no violation was found. This Court thus cannot conclude that, in light of the minimal case law, a reasonable government agent would know that the alleged actions of the Individual Defendants would violate constitutional due process rights.[67] As Plaintiff's substantive due process right in his continued enrollment at LSU was not established "beyond debate," the Individual Defendants are entitled to qualified immunity.[68]

## III. Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act.

Plaintiff brings his claims under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") pursuant to § 1983. "[W]here a statutory regime already provides a comprehensive set of

---

[65] *Smith*, 507 F. App'x at 363 (quoting Reichle v. Howards, 566 U.S. 658 at 664 (2012)) (citing *Ewing,* 474 U.S. 214, 223 (1985); Davis v. Mann, 882 F.2d 967, 973 (5th Cir. 1989); Mahavongsanan v. Hall, 529 F.2d 448, 449–50 (5th Cir. 1976)).

[66] *See Horowitz*, 435 U.S. at 91–92 (assuming without deciding that courts can review academic decisions under a substantive due process standard); *Ewing*, 474 U.S. at 512 ("We therefore accept the University's invitation to 'assume the existence of a constitutionally protectible property right in [Ewing's] continued enrollment,' and hold that even if Ewing's assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of record disclose no such action."); Davis v. Mann, 882 F.2d 967, 973 (5th Cir. 1989) ("Like the Supreme Court in *Board of Curators of Missouri v. Horowitz,* we need not decide what type of interest Davis had in the GPR program, because even 'assuming the existence of a liberty or property interest,' Davis received all the process he was entitled to under the Fourteenth Amendment in respect to his interest in the GPR program.").

[67] *See Smith*, 507 F. App'x at 363 (5th Cir. 2013).

[68] *See id.*

18

remedies for its enforcement, there is a presumption against the availability of the more general remedial measures of § 1983. This principle renders further discussion of the intricacies of § 1983 unnecessary."[69] Accordingly, the Court will not consider Plaintiff's claims under § 1983 but will rather proceed to an analysis of Plaintiff's claim against the Defendants under the ADA and the RA. Moreover, "The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973. . . . Jurisprudence interpreting either section is applicable to both."[70] The Court will therefore refer to the standards under each Act interchangeably.

## A.   The Rehabilitation Act

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.[71]

To state a claim under § 504, a plaintiff must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."[72] Additionally, under § 504, the plaintiff must also

---

[69] *See id.* (citing Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999)).
[70] Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000).
[71] 29 U.S.C. § 794.
[72] Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011).

"allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance."[73]

Plaintiff alleges that LSU violated § 504 when Dr. Jain suspended him based on his "perceived disability" of substance abuse disorder and when Embley, with the permission of Dr. Bishop-Baier, used Plaintiff's old treatment records to support a diagnosis of substance abuse disorder. Plaintiff also argues that the actions of several other defendants can be imputed to LSU as its "agents." As Plaintiff has not presented any facts or law to support this alleged agency relationship, however, the Court considers only the sufficiency of Plaintiff's allegations concerning Dr. Jain, Dr. Bishop-Baier, and Embley in relation to his § 504 claim.

Defendants first argue that Plaintiff's § 504 claim must fail because Plaintiff has not sufficiently alleged that he has a qualifying disability that substantially limits one or more life activities. A qualifying disability under the ADA or § 504 includes: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"[74] A person is regarded as having a qualified disability "if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity."[75] Here, Plaintiff alleges that he has a qualifying disability of substance abuse disorder in remission, was regarded by Dr. Jain, Dr. Bishop-

---

[73] Block v. Texas Bd. of L. Examiners, 952 F.3d 613, 619 (5th Cir. 2020) (quoting Miller v. Tex. Tech Univ. Health Scis. Ctr., 421 F.3d 342, 345 (5th Cir. 2005) (en banc) (internal quotations omitted)).

[74] 42 U.S.C. § 12102(1)(A–C) (emphasis added).

[75] 42 U.S.C. § 12102(3)(A).

Baier, and Embley as being currently impaired by his substance abuse disorder, and discriminated against by them because of his disability. The Court thus finds that he has sufficiently alleged a qualifying disability.

Next, Defendants argue that Plaintiff has failed to demonstrate that he was denied the benefits, services, programs, or activities for which LSU is responsible because of the alleged discrimination. The Court agrees. Plaintiff alleges that Dr. Jain suspended him from LSU on suspicion of mental impairment and that the suspected mental impairment was substance abuse disorder. Other than the alleged fact that Dr. Jain had access to his medical records, however, Plaintiff has not alleged any facts indicating that Dr. Jain's actions were taken because of Plaintiff's "perceived disability." Plaintiff also alleges that Dr. Bishop-Baier and Embley, because of Plaintiff's history, improperly regarded Plaintiff as having substance abuse disorder and consequently referred him to seek further psychological treatment without evidence to support their suspicion that he was presently mentally impaired. Like the allegations against Dr. Jain, however, the only alleged evidence of discrimination is the fact that CAP had access to his file.  The Court thus finds that Plaintiff has failed to allege discrimination under § 504.

### B.    Title II of the ADA

"The ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."[76] Like § 504 of the RA, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

[76] PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001) (citing 42 U.S.C. §§ 12111–12117; 12131–12165; 12181–12189).

subjected to discrimination by any such entity."[77] Here, Plaintiff brings suit against the Individual Defendants under Title II of the ADA in their official and personal capacities.

As explained above, "[t]he remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA."[78] Thus, for the same reasons addressed above in relation to Plaintiff's § 504 claims, the Court finds that Plaintiff has failed to state a claim against the Individual Defendants for ADA violations in their official capacities.[79]

Plaintiff's individual capacity claims against the Individual Defendants also cannot stand. In *Lollar v. Baker*, the Fifth Circuit held that § 1983 did not provide a remedy for the plaintiff's alleged violations of the Rehabilitation Act against state officials in their individual capacities.[80] Following *Lollar*, courts within the Fifth Circuit have found individual capacity claims under Title II improper.[81] This Court too now finds that Plaintiff cannot utilize § 1983 to establish individual liability under Title II.  Plaintiff's Title II claims against the Individual Defendants in their individual capacities are accordingly dismissed.

---

[77] 42 U.S.C. § 12132 (emphasis added).

[78] Cadena v. El Paso Cty., 946 F.3d 717, 723 (5th Cir. 2020) (citing Delano-Pyle v. Victoria Cty., 302 F.3d 567, 574 (5th Cir. 2002)).

[79] The Fifth Circuit has not yet "had the occasion" to determine whether a plaintiff may bring a § 1983 suit against a state official in his official capacity "in order to vindicate or enforce rights guaranteed to him by Title II of the ADA." Cooper v. Hung, 485 Fed. App'x 680, 685 (5th Cir. 2012).

[80] *See Lollar*, 196 F.3d at 608–610 ("In sum, because the Rehabilitation Act by its express terms provides comprehensive enforcement and remedial measures for violations of its provisions, we hold that section 1983 cannot be used as an alternative method for the enforcement of those rights."); Cole v. Velasquez, 67 F. App'x 252 n.11 (5th Cir. 2003).

[81] *See* Pena v. Bexar Cty., Texas, 726 F. Supp. 2d 675, 689–90 (W.D. Tex. 2010) (collecting cases) ("Based on the weight of authority and holdings of the Fifth Circuit, the Court concludes that Pena's § 1983 claims against the Individual Defendants in their individual capacities for violations of Title II are not permitted.").

## IV.   Intentional Infliction of Emotional Distress

"[T]o recover for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[82] To succeed on this claim, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[83] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[84]

Plaintiff alleges that the defendants in this case are liable for the tort of intentional infliction of emotional distress by their dissemination of false information about him, which allegedly "establishes a pattern [of] deliberate, repeated harassment over a period of time."[85] As to the Individual Defendants, Plaintiff contends that they engaged in "outrageous conduct" when they "knowingly made false accusations regarding Plaintiff's fitness to practice medicine, unlawfully used private information divulged in confidence against Plaintiff to manufacture justification for Plaintiff's suspension, and adhered to their original accusations despite negative drug screens."[86] This conduct, however, fails to meet the high standard for intentional infliction of emotional distress claims in Louisiana.[87] Additionally, Plaintiff has not alleged any facts

---

[82] White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991).
[83] *Id.*
[84] *Id.*
[85] Doc. 89 at 34.
[86] *Id.*
[87] *See* Currier v. Entergy Servs., Inc., 73 F. Supp. 3d 673, 678 (E.D. La. 2014); *Shaboon*, 252 F.3d at 734 (finding that, under Texas law, the defendant's "alleged efforts 'to obtain and

to support his assertion that the Individual Defendants "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result."[88] Plaintiff's claims for intentional infliction of emotional distress are thus dismissed.

## V.    Defamation

Plaintiff also brings claims against the Individual Defendants for defamation. Under Louisiana law, the elements of a defamation claim include: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[89] Plaintiff alleges that Dr. Jain defamed him when he "accused Plaintiff of impairment falsely, [and] knowingly published that false statement to HPFL[A] and PRC."[90] Plaintiff similarly alleges Dr. Bishop-Baier that is liable for defamation as she "knowingly published false statements to HPFL[A], PRC, and LSBME."[91]

Defendants argue that Plaintiff's defamation claims must fail as Plaintiff has not alleged that either Defendant published the alleged false statement— that Plaintiff was mentally impaired—to any third party. Indeed, although Plaintiff alleges in a conclusory fashion that Drs. Jain and Bishop-Baier disseminated these false statements to various codefendants, he does not allege any facts that would make this assertion plausible. Indeed, Plaintiff does not include any facts demonstrating that communication between Drs. Jain

---

keep information to himself" about Shaboon's illness, 'manufacture a diagnosis[,'] and 'seclude' Shaboon suggest at most a propensity to terminate her residency unfairly. Such ill-motivated actions do not constitute legally actionable infliction of emotional distress.").

[88] *White*, 585 So.2d at 1209.

[89] Lewis v. M7 Prods., LLC, 427 F. Supp. 3d 705, 723–24 (M.D. La. 2019) (internal quotations and citations omitted).

[90] Doc. 55 at 21.

[91] *Id.*

and Bishop-Baier and any of the codefendants took place. Plaintiff alleges that the Individual Defendants referred Plaintiff to various entities, and the Amended Complaint is devoid of facts that would allow this Court to conclude that there were false statements in those referrals.

Even if this Court were to assume that Plaintiff had sufficiently alleged that Dr. Jain communicated false statements to CAP, the Court finds that these statements would not constitute a publication to a third party. Under Louisiana law, statements made by employees acting within the course and scope of their employment to others within the same organization are not "'publicized' statements to third persons so as to constitute publication in a defamation claim."[92] Plaintiff contends that Dr. Jain's actions were not in the course and scope of his employment because he did not follow LSU's procedures in suspending Plaintiff or referring him to CAP. Plaintiff, however, has not alleged any facts suggesting that Dr. Jain acted in bad faith so as to remove his actions from the course and scope of his employment. Further, Plaintiff has not provided this Court with any legal support for his assertion that Dr. Jain's failure to follow internal procedures renders the "intra-corporate communication" doctrine inapplicable.[93] Plaintiff has thus failed to state a claim for defamation.

---

[92] Ioppolo v. Rumana, 581 F. App'x 321, 329 (5th Cir. 2014) (citing *See, e.g.*, Bell v. Rogers, 698 So.2d 749 (La. App. 2 Cir. 1997)).

[93] The one case Plaintiff cites in support is actually contrary to his position. Doe v. Grant, 839 So. 2d 408, 416 (La. App. 4 Cir. 2003), *writ denied*, 842 So. 2d 1102 (La. 2003). ("Clearly, what Dr. Zamanian cites as incidences of publication, are in actuality communications between employees of the hospital during the course and scope of their employment. The disclosures regarding the summary suspension were the direct outcome of the peer review process, and necessary to ensure not only the safety of patients at the hospital, but to ensure that the doctors and nurses on Mercy's staff were aware that Dr. Zamanian's privileges had been suspended.").

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**.

**IT IS ORDERED** that Plaintiff's claims against LSU for violations of substantive and procedural due process are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's claim against LSU under § 504 of the RA is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's official capacity claims against Drs. Jain and Bishop-Baier for violations of his substantive due process rights related to his continued enrollment are **DISMISSED WITHOUT PREJUDICE.** All other official capacity due process claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's individual capacity claims against Drs. Jain and Bishop-Baier for violations of procedural and substantive due process and Title II of the ADA are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Drs. Jain and Bishop-Baier in their official capacities under Title II of the ADA are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Drs. Jain and Bishop-Baier for intentional infliction of emotional distress and defamation are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff has 15 days from the date of this Order to amend his Complaint and remedy all claims dismissed without prejudice.

New Orleans, Louisiana this 20th day of August, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**