**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

-------------------------------------------------------

**GREGORY J. DUHON, M.D.,**                    **CASE NO. 20-cv-2022-KTM-KWR**

      **Plaintiff,**                    **JUDGE MILAZZO**

      **v.**                    **MAGISTRATE JUDGE ROBY**

**ERIK A. WHITFIELD, M.D., HEALTHCARE**    **JURY TRIAL DEMANDED**
**PROFESSIONALS FOUNDATION OF**
**LOUISIANA, LAWRENCE H. CRESSWELL,**
**M.D., and PROFESSIONAL RENEWAL**
**CENTER, P.A.,**

      **Defendants.**

-------------------------------------------------------

**PLAINTIFF'S COMBINED RESPONSE TO THE DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Plaintiff GREGORY J. DUHON, by counsel, respectfully states as follows in response to the motions to dismiss the Second Amended Complaint filed by Professional Renewal Center, P.A. ("PRC") (Dkt. 149), Healthcare Professionals Foundation of Louisiana ("HPFLA") (Dkt. 160), Dr. Erik Whitfield ("Whitfield") (Dkt. 163) and Lawrence H. Cresswell ("Cresswell") (Dkt. 166):

## I.    INTRODUCTION

The Plaintiff's Second Amended Complaint (Dkt. 131) does not contradict any prior pleading, but as is his right, refocuses the claims against the remaining Defendants to focus on the constructive termination of his Louisiana medical license and the jeopardy and harm that the Defendants' acts have created to the Plaintiff's ability to practice medicine as a board certified internal medicine specialist in every state of the union.  The Second Amended Complaint states a cause of action for due process violations under the Fourteenth Amendment and under Louisiana

law for intentional infliction of emotional distress and defamation.  The motions to dismiss

should be denied.

## II.        LEGAL STANDARDS UNDER F.R.Civ.P. 12(b)(6)

To prevail on a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the

complaint must plead enough facts to state a claim for relief that is plausible on its face.  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  Claims are plausible on their face when the pleaded facts allow

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

A court must accept the complaint's factual allegations as true and draw all reasonable inferences

in the plaintiff's favor. *Id.*

But it is also true that "a motion to dismiss under 12(b)(6) is viewed with disfavor and is

rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation and internal

quotation marks omitted)).  In deciding a Rule 12(b)(6) motion, a court "cannot look outside the

pleadings and must accept all well-pleaded facts as true, considering them, and the inferences to

be drawn therefrom, in the light most favorable to the plaintiff." *Leal v. McHugh*, 731 F.3d 405,

413 (5th Cir. 2013) (*and see LeBeouf v. Manning*, 575 Fed. Appx. 374, 375–76 (5th Cir. 2014)).

## III.       PRELIMINARY MATTERS

HPFLA and Whitfield attach exhibits to their motions that are not mentioned in or central

to the complaint.   Unlike was the case with the PRC report, a document mentioned in the

complaint, Vanderlick's affidavit was not mentioned in Plaintiff's complaint and is not central to

the claim.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).  Nor was

Whitfield's chart or email that were filed under seal.  This material should not be considered.  If it

is considered, then because the material was not mentioned in the complaint and is not central to

it Rule 12(d) requires that the motions be treated as motions for summary judgment and "[a]ll

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." F.R.Civ.P. 12(d).  This would mean that absent further briefing, or discovery, the HPFLA and Whitfield motions should not be heard.

As for PRC's report, while referred to in the complaint, the complaint now specifically alleges the Plaintiff has pled that the report is unreliable (Dkt. 131 at ¶ 41) and that two psychiatrists found Plaintiff fit for duty notwithstanding the PRC report.  *Id*. at ¶ 40.  Therefore, while the PRC report can be attached to a motion under Rule 12(d), there is a well-pled dispute about whether it is accurate and it cannot be relied on without more on a motion to dismiss:

> Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim. For this same reason, what inferences a court may draw from an incorporated document should also be approached with caution. We have stated that, unlike judicial notice, a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Ritchie*, 342 F.3d at 908). While this is generally true, ***it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.*** This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage.

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (emphasis added).
!

## IV.    ARGUMENT

### A.    Defendant's 12(b)(6) Motions Should Be Denied

#### 1.    Section 1983 Deprivation of Due Process (Count I)

To state a claim for deprivation of substantive due process under § 1983, a plaintiff "must demonstrate: 1) he was deprived of a cognizable constitutional right; 2) the State acted with "deliberate indifference" to the protected right; and 3) the policies or practices complained of were the direct cause of the constitutional deprivation."  *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 248 (5th Cir. 2018).

3

To state a claim for procedural due process under Section 1983, Plaintiff must allege facts sufficient to show that (1) he was deprived of a liberty or property interest protected by the due process clause, and (2) that he was deprived of that interest without constitutionally adequate process. *LaCroix v. Marshall Cty., Mississippi*, 409 F. App'x 794, 803 (5th Cir. 2011).

HPFLA is sued in the Second Amended Complaint under § 1983 for procedural and substantive due process violations. (Dkt. 131 at ¶ 60). Cresswell is sued under § 1983 for procedural due process violations in his official capacity. *Id.* Whitfield is sued under § 1983 for procedural and substantive due process violations in his individual and official capacities. *Id.*

### a.  Procedural Due Process

The Second Amended Complaint alleges that the Plaintiff had a property interest in his medical license. (Dkt. 131 at ¶ 64). A medical license is a vested property interest for due process purposes. *Ensenat v. Louisiana State Bd. of Med. Examiners*, 593 So. 2d 929, 933 (La. Ct. App. 1992), *State ex rel. McAvoy v. Louisiana State Bd. of Med. Examiners*, 238 La. 502, 529, 115 So. 2d 833, 843 (1959) and *Louisiana State Bd. of Med. Examiners v. Fife*, 162 La. 681, 111 So. 58 (1926), aff'd, 274 U.S. 720, 47 S. Ct. 590, 71 L. Ed. 1324 (1927).

The Second Amended Complaint also alleges that Defendants HPFLA, Cresswell and Whitfield forced the surrender of his license constructively. (Dkt. 131 at ¶¶ 49, 56(a), and 33-39, 42-47). As in a § 1983 employment case involving resignation, a constructive termination is actionable and requires a showing that the relevant conditions were so intolerable that a reasonable person would feel compelled to resign, or here not renew the Louisiana medical license. *LeBeouf v. Manning*, 575 Fed. Appx. 374, 376 (5th Cir. 2014). This showing can be made where "an employee is subjected to badgering, harassment, or humiliation calculated to encourage the employee to resign." *Id. (citing Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292,

4

297 (5th Cir. 1994)).  The badgering or harassment rises to a § 1983 claim "only if it amounts to forced discharge to avoid affording pretermination procedures." *Id.* (*citing Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986)).  In *LeBeouf*, the court held that plaintiff stated a § 1983 claim for termination of employment, though plaintiff had resigned, when plaintiff alleged that the employer asked her to resign or submit to a three-day psychiatric hospitalization. *LeBeouf*, 575 Fed. Appx. at 377-378.

The Second Amended Complaint alleges that the post-PRC demands by the Defendants HPFLA and Cresswell were badgering, humiliating and harassing.  (Dkt. 131 at ¶¶ 68 and 33-39, 54).  This means that Cresswell's argument, without citation to case law, that Plaintiff "waived" his due process claim by surrendering his license (Dkt. 166-1 at p. 7) is incorrect given that Plaintiff alleges harassment and Cresswell's failure to provide any hearing or comply with state law.  It also means that Plaintiff has stated a claim for constructive termination of his Louisiana license.

The Second Amended Complaint also alleges that Plaintiff repeatedly sought the opportunity to present evidence to the Defendants and be heard after he was instructed to submit to further psychological examinations after the PRC evaluation was issued.  (Dkt. 131 at ¶¶ 40, 42, 43, 44, 45, 46, 51, 62, 63).   No hearing, no opportunity to present evidence, no opportunity to contest the intrusive requests of the Defendants was afforded.  *Id.*  Defendant Cresswell is further alleged to have illegally held Plaintiff in a permanent "preliminary review" denying the Plaintiff his statutory right to be heard in a formal investigation, if one proceeded at all within 90 days of the initiation of a preliminary review.  (Dkt. 131 at ¶¶ 35-39, 43).

Therefore, HPFLA's (Dkt. 160-1 at p. 23) and Cresswell's (Dkt. 166-1 at p. 6) argument that the Plaintiff failed to allege that process was due is simply wrong.  Plaintiff alleged that he should have been heard but was not.

The Second Amended Complaint also alleges that Plaintiff had a liberty interest in his reputation.  In this case the claim is actionable: "[r]eputation alone is not a constitutionally protected interest. *Paul v. Davis,* 424 U.S. at 701, 96 S.Ct. at 1160–61; *White v. Thomas,* 660 F.2d 680, 684 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982). Reputation must be impugned in connection with the termination of employment. *Paul v. Davis,* 424 U.S. at 710, 96 S.Ct. at 1165."  *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 395 at fn.1  (5th Cir. 1989), *opinion reinstated in part*, 901 F.2d 61 (5th Cir. 1990).  Here, the Plaintiff has alleged that he was forced to surrender his license, (Dkt. 131 at ¶¶ 49, 56(a), and 33-39, 42-47), which is a constructive termination.  Plaintiff also alleged how the § 1983 Defendants' actions have damaged his reputation and prevented him from practicing medicine not only in Louisiana, but in many states, even though he is board certified in internal medicine.  (Dkt. 131 at ¶¶ 8, 13-14, 48, 52-56, 64).

HPFLA's argument that Plaintiff has not implicated any liberty interest because he has not alleged any facts supporting the conclusion that the indictment against him is false is mere sophistry.  Plaintiff clearly alleged that he, and HFPLA, believed the PRC report to be false. (Dkt. 131 at ¶¶ 31, 41).  Though HFPLA invites the Court to simply disregard the allegation that Vanderlick told Plaintiff that the PRC report was "incorrect, was a sham and possibly even fraudulent because Plaintiff had no mental illness," *Id.* at ¶ 31, there is no dispute that the Plaintiff pled that the report was unreliable. (*Id.* at ¶ 41).  Claiming that allegations are not plausible when they are factual allegations that must be taken as true on a motion to dismiss, and

when taken as true plausibly suggest that the PRC report was, in fact, unreliable and wrong is mere assertion that should be ignored.

Whitfield's bizarre assertion that Plaintiff is not board certified in internal medicine or could not have practiced medicine as an internal medicine physician (Dkt. 163-1 at p. 3) is simply incorrect. (Dkt. 131 at ¶ 13). What is true is that the § 1983 Defendants have impaired Plaintiff's ability to practice internal medicine anywhere in the U.S. (Dkt. 131 at ¶ 8, 52-55).

Cresswell's assertion that Plaintiff did not allege an ongoing violation is incorrect: the Second Amended Complaint alleges that in addition to past coercion and past reporting to Mississippi, Cresswell also reported the Plaintiff's non-renewal of his Louisiana license during an "investigation" to the National Practitioner Data Bank, which he can retract, but the report has resulted in Plaintiff losing employment in internal medicine and will continue to do so for the rest of his career. (Dkt. 131 at ¶¶ 52-54, 55). The retraction of the NPDB report, like the request that any records of an impairment investigation be sealed, is a request for prospective relief. *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318 (5th Cir. 2008) (request for reinstatement is prospective relief).

Cresswell's assertion that Plaintiff did not allege a violation of federal law is also misplaced. Cresswell is specifically alleged to have flouted the procedural protections afforded to Plaintiff in the investigation of his Louisiana license. (Dkt. 131 at ¶¶ 36-37, 39, 43). This fact is also ignored by HPFLA which erroneously claims that Plaintiff "forewent" administrative proceedings when he abandoned his license before they commenced. (Dkt. 160-1 at p. 21). Plaintiff was never afforded "administrative proceedings" but was kept in limbo under a permanent "preliminary review." Lastly, Cresswell is also specifically alleged to have violated Plaintiff's due process rights, which is, of course, a federal law. (Dkt. 131 at ¶¶ 39, 43).

Cresswell also claims that as the Director of Investigations he is not the proper person to be sued as he cannot give relief.  He is the Director of Investigations at the LSBME. (Dkt. 131 at ¶ 4).  He initiated a "preliminary review" that became a formal investigation.  (Dkt. 131 at ¶¶ 35-36).  He reported to the NPBD that Plaintiff had surrendered his license "during an investigation."  (Dkt. 131 at ¶ 52).  There never was an investigation within the meaning of the statutory framework. (Dkt. 131 at ¶¶ 36-37).   Cresswell, as Director of Investigations can be ordered to correct the record, including by withdrawing the false report to the NPBD that Plaintiff failed to renew while under "investigation."

As to Cresswell's argument about the public records law, for which he cites no cases, this Court can order him to *correct* the record if the contents are not only wrong but rise to the level of a constitutional violation.  Cresswell is arguing, in essence, that even if Plaintiff's records contain a falsehood generated in violation of the due process clause that the Louisiana Public Records Act prevents the correction of the records.  The reason that no cases were cited in support of this assertion is because the argument places the Louisiana Public Records Act ahead of the 14th Amendment, which violates the Supremacy Clause.  *Villas at Parkside Partners v. City of Farmers Branch*, 496 F. Supp. 2d 757, 764 (N.D. Tex. 2007).

HPFLA misconstrues Plaintiff's complaint when it argues that Plaintiff's due process rights were not violated in relation to the post-PRC demands for an occupationally mandated psychological exam ("OMPE") because plaintiff "*never underwent such treatment.*" (Dkt. 160-1 at p. 16) (emphasis in original).  HPFLA ignores that after it identified the PRC report as unreliable, its demands for compliance with the PRC report recommendations or other OMPEs was harassment, (Dkt. 131 at ¶¶ 68 and 33-39,  54), demands that continued after the Plaintiff

secured his own fit for duty reports, one of which criticized the PRC report.  (Dkt. 131 at ¶¶ 40, 35, 41, 42).

HPFLA's argument Plaintiff has no constitutionally protected right because the state has the statutory right to request a mental exam of a medical licensee, La. Rev. Stat. 37:1278 ignores that Plaintiff *did* submit to examination by PRC and that the issue in this case as to his medical license is the unreliability of their report, as acknowledged by HPFLA, and the subsequent insistence of the HPFLA and Cresswell that the Plaintiff submit to further psychological examinations without any opportunity to be heard.  (Dkt. 131 at ¶¶ 27, 30-32, 34-39, 42-43, 45-46, 50).

HPFLA's argument that it did not deprive the Plaintiff of his license is misplaced. HPFLA threatened Plaintiff with being reported to the LSBME as "non-compliant" many times and acted jointly with the LSBME in relation to Plaintiff's license.  (Dkt. 123 at p. 11).

b.      **Under Color of Law**

Despite this Court's ruling that Plaintiff pled that HPFLA acted under color of state law under either the nexus or joint-action test or the public function test, (Dkt. 123 at pp. 10-12), HPFLA reargues the issue.  It first miscites the complaint, focusing only on ¶¶ 31 and 32, which allege that Vanderlick told the Plaintiff that the PRC report was incorrect, but ignoring the many allegations that despite its alleged determination that the PRC report was suspect HPFLA systematically threatened Plaintiff with the loss of his license if he did not comply with the PRC recommendations or submit to psychological evaluations from other providers.  (Dkt. 131 at ¶¶ 29, 33-35, 38, 41, 42, 44, 46, 55, 63).   It then argues that the case law limits the public function test to areas within the exclusive prerogative of the state, such as elections, operation of a company town, eminent domain, peremptory challenges in jury selection or incarceration, and

9

then claims that Plaintiff cannot show that HPFLA acted under color of state law because this case does not involve an election or eminent domain. (Dkt. 160-1 at p. 12). This ignore that the licensing of physicians, as even HPFLA later argues, is the exercise of the state's police power. *Id.* at p. 19. HPFLA was designated to "act on behalf of the [LSBME] in matters of impaired physicians." (Dkt. 89 at p. 25, HPFLA website) (Courts may take judicial notice of websites. *In re Katrina Canal Breaches Consol. Lit.*, 533 F. Supp. 2d 615, 632 (E.D. La. 2008)). As argued previously, Plaintiff alleges that HPFLA was authorized to act for the LSBME and that they did work together in coercing Plaintiff to submit to further unfounded psychological exams at the cost of his license. (Dkt. 131 at ¶¶ 33-35, 38, 42).

Whitfield also argues that he did not act under color of state law. Plaintiff concedes that his connection is more tenuous than HPFLA's, but Whitfield is alleged to have been acting on behalf of LSU, a state entity, and acted jointly with LSU in referring Plaintiff to HPFLA. (Dkt. 131 at ¶¶ 20, 50, 55). Whitfield was interdependent with LSU because he performed fit for duty examinations for it and acted under color of state law because of that interdependence.

### c.    Substantive Due Process

To "prove a substantive due process claim, a plaintiff must show the challenged government action is arbitrary, unreasonable, or has no relationship to a legitimate government interest." *Brantley v. Kuntz*, 98 F. Supp. 3d 884, 889 (W.D. Tex. 2015). If the Plaintiff's allegations are taken as true, the reliance on unreliable report from PRC to demand additional OMPEs, on top of Cresswell's arbitrary flouting of state law procedures, means that the conduct of the § 1983 Defendants was arbitrary. Whitfield is alleged to have been LSU's evaluating psychiatrist and to have irrationally focused on the fact that Plaintiff owned guns and made a report that he was "unable to decide if Plaintiff was fit for duty" even though he reached no

10

diagnosis; HPFLA, alleged to be the agent of the LSBME, is alleged to have acknowledged the unreliability of the PRC report yet it and Cresswell demand compliance with the report's recommendations.  (Dkt. 131 at ¶¶ 2, 19-20 21, 31, 33-35, 38, 42).  It is arbitrary and capricious to demand compliance with a recommendation flowing from an unreliable or false report.  The conduct was unreasonable for the same reasons.  Plaintiff has stated a claim for a substantive due process violation against HPFLA and Whitfield.

### d.    Qualified Immunity

To "overcome the immunity defense, the complaint must allege facts that, if proven, would demonstrate that [Defendant] violated clearly established statutory or constitutional rights." *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 995 (5th Cir. 1995).

As to Plaintiff's Louisiana license,  the complaint alleges facts, which if proven, show that clearly established constitutional and statutory rights were violated.  The clearest is as to Cresswell, who stretched a "preliminary investigation" from the allotted 90 days into perpetuity thus preventing the required hearing if the matter proceeded to an investigation.  (Dkt. 131 at ¶¶ 36-37, 39).  However, as to HPFLA, Cresswell and Whitfield, the case law was also clearly established at all relevant times that a medical license is a property interest under the constitution that cannot be taken without due process. *Ensenat v. Louisiana State Bd. of Med. Examiners*, 593 So. 2d 929, 933 (La. Ct. App. 1992), *State ex rel. McAvoy v. Louisiana State Bd. of Med. Examiners*, 238 La. 502, 529, 115 So. 2d 833, 843 (1959) and *Louisiana State Bd. of Med. Examiners v. Fife*, 162 La. 681, 111 So. 58 (1926), aff'd, 274 U.S. 720, 47 S. Ct. 590, 71 L. Ed. 1324 (1927).  The Second Amended Complaint alleges that the § 1983 Defendants constructively terminated Plaintiff's license with no procedural due process at all.  Defendants are not entitled to qualified immunity.

e.      **Louisiana Medical Malpractice Act**

Whitfield begins his brief by patronizing Plaintiff claiming that he, Whitfield, was just a well-meaning member of the "safety net" meant to protect Plaintiff who inexplicably rejected the good will Whitfield extended.  This is hyperbole, or at the very least closing argument, but it is not proper legal argument on a motion to dismiss.  Whitfield also claims that the only paragraphs of the complaint that pertain to him are paragraph 19 and 20, and ignores paragraphs 22, 55 and 63(a).

After this error filled introduction, Whitfield asserts that the statute of limitations bars all claims.  He alleges that Whitfield sent an email with his evaluation to LSU on July 9, 2019.  That date is not in Plaintiff's complaint.  Whitfield argues, nonetheless, that July 9, 2019 was the date Plaintiff's cause of action accrued, but suit was filed six days after a year had elapsed, or on July 15, 2020.  (Dkt. 163-1 at p. 8).  What Whitfield ignores is that:

> The Louisiana Civil Code provides that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La. C.C. art. 2324.  This Court determines that, under the joint tortfeasor doctrine, RBD is a joint tortfeasor with the defendants that were named in the *Hillard* action. Thus, prescription as to Castanel's claims against RBD was interrupted.

*In re FEMA Trailer Formaldehyde Products Liab. Litig.*, MDL 07-1873, 2010 WL 1663993, at *4 (E.D. La. Apr. 21, 2010).

Therefore, as a matter of law, even if the Plaintiff's claims against Whitfield were filed six days too late, the fact that the claims against HPFLA, Cresswell and PRC are timely means that the claims against Whitfield are also timely.

Whitfield also argues that that all claims are actually medical malpractice claims, and as such are barred because Plaintiff did not first file before the Louisiana Medical Review Panel.  Whitfield argues that Plaintiff *omitted* allegations that Whitfield shared information without consent; that Whitfield's treatment fell below the standard of care; that LSU paid Whitfield; that

12

"the general negligence claims alleged against Whitfield we not related to this treatment or caused by a dereliction of professional skill"; that Whitfield assessed Plaintiff's condition and that Whitfield's' treatment was not medical care. As discussed below, Whitfield's argument is misplaced.

Plaintiff did not bring a general negligence claim against Whitfield, much less a medical malpractice case. As such, the allegations that Whitfield claims are "missing" are not necessary to the claims that the Plaintiff did bring. Plaintiff brought a federal claim asserting due process violations under §1983.  Exhaustion of state administrative remedies is not a prerequisite to an action under § 1983. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 102 S. Ct. 2557 (1982). Further, these claims, even if they were intertwined with "medical malpractice," preempt state law:

> Irrespective of whether Plaintiff's federal claims include a medical malpractice allegation, the law is clear that Plaintiff's federal claims are not subject to the LMMA's medical review panel requirement. District courts in Louisiana have concluded that, under the Supremacy Clause of the United States Constitution, a plaintiff seeking relief under the Rehabilitation Act against a federal grantee need not meet the LMMA's medical review panel requirement.  *Bernius v. Ochsner Medical Center-North Shore, L.L.C.*, No. 16-14730, 2016 WL 10586188, at *7 (E.D. La. Dec. 15, 2016) (*citing Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015)) (holding that a plaintiff need not exhaust administrative remedies before pursuing a claim against a federal grantee under the Rehabilitation Act).

> Courts have similarly applied the Supremacy clause to find that plaintiffs bringing claims under the ACA and ADA also need not meet the medical review panel requirement. *E.g., Lockwood v. Our Lady of the Lake Hosp., Inc.*, No. CV 17-00509-SDD-EWD, 2018 WL 3451514, at *6 (M.D. La. July 17, 2018).

*Chevallier v. Our Lady of the Lake Hosp., Inc.*, CV 18-0997-BAJ-EWD, 2019 WL 3381766, at *2 (M.D. La. July 26, 2019).

Whitfield asks the Court to apply *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), which held, *inter alia*, that there is no "federal common law" to be applied in a diversity suit involving state law claims. The cases cited by Whitfield were mere medical malpractice cases. *See Derrick Phillips, et al v. Hospira Worldwide Inc. d/b/a Hospira, Inc. et al*,

No. 09-3117, (E.D. La. Mar. 23, 2009), and *Jahmal Tillman, et al v. Woldenberg Village, Inc., et al.*, Docket No. 13-4731 (E.D. La. Jun. 6, 2013).

Further, the IIED (Count II) and Defamation (Count III) claims do not sound in general medical negligence. Even if they did, in part, these claims are not subject to the LMMA because they are intentional torts, which are not subject to the LMMA. *Coleman v. Deno*, 813 So. 2d 303 (La. 2002). Defamation requires a showing of malice and is an intentional tort. *Arledge v. Hendricks*, 715 So. 2d 135, 138 (La. Ct. App. 2nd Cir. 1998) *writ denied,* 98-2015 (La. 11/20/98), 728 So. 2d 1287. Intentional infliction of emotional distress is also an intentional tort. *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991).

Therefore, Whitfield's prematurity claims under the LMMA should be rejected and Plaintiff's claims against Whitfield should proceed in this Court.  Lastly, Plaintiff does not dispute that if Count I is dismissed as to all Defendants that there would be no federal claims remaining. However, the due process claim is not "entirely without merit" as Whitfield argues.

### f.      Intentional Infliction of Emotional Distress

The intentional infliction of emotion hard claim is brought against HPFLA, Whitfield and PRC.  Each argue that the Plaintiff has not pled sufficient facts to state a cause of action, HPFLA at the most length.  It argues, on the 12(b)(6) argument, that a plaintiff must establish that: "(1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct." *White v. Monsanto Company,* 585 So.2d 1205, 1209 (La. 1991).  It argues that the conduct at issue must go beyond all possible bounds of decency and that a defendant acting with intent that it tortious or even criminal is not enough. (Dkt. 160-1 at pp. 31-32).

HPFLA then spends time discussing the referral *to* the HPFLA, when the gravamen of the complaint is what HPFLA did with the unreliable PRC report *after* the referral to the HPFLA, a reports that was also later contradicted by two psychiatrists Plaintiff retained.  When HPFLA does discuss those issues it ignores the allegations that it, with knowledge that the PRC report was unreliable, repeatedly threatened Plaintiff's license, and ignores the allegations that the Plaintiff was forced to surrender his license because of HPFLA and its interaction with the LSBME.

PRC nitpicks language and then argues that no facts were alleged to show that the PRC report was false, arguments which ignore paragraphs 31 and 41 of the complaint as they are written. Plaintiff was told that PRC recommended 60 to 90 days of treatment and knew that the cost would exceed $50,000 whether or not that information was in the report, and paragraph 28 does not specifically allege that that information was in the report.  Plaintiff did not quote the entire Spruiell report, but did allege that he and the Chair of Tulane University Department of Psychiatry & Behavioral Sciences found the Plaintiff was fit for duty (Dkt. 131 at ¶ 40), whereas PRC did not as it was improperly trying to generate $50,000 in fees. *Id.* at ¶ 28.  These are fact allegations that go to the falsity of the PRC report.

Whitfield merely argues that LSU referred Plaintiff and that he, Whitfield, saw the Plaintiff and referred him for further evaluation. (Dkt. 163-1).  Whitfield ignores that paragraphs 19 and 20 of the Second Amended Complaint allege that Whitfield irrationally focused on the fact that Plaintiff owned firearms and construed Plaintiff's objection to the request that he disclose information on his firearms as a possible personality disorder, after which Whitfield reported that he was unable to decide whether Plaintiff was fit for duty.

These actions cumulatively resulted in the Plaintiff losing his license to practice medicine in Louisiana.  Defendants ignore that the result of their actions, the loss of the ability to practice

medicine in Louisiana and elsewhere, can constitute intentional infliction of emotional distress.  In *Currier v. Entergy Services, Inc.*, 73 F. Supp. 3d 673, 675 (E.D. La. 2014), plaintiff alleged that her "employer, in retaliation for her stance on aviation safety, grounded her without good cause, launched a sham 'independent' investigation into a decades-old minor injury, and after FAA-certified physicians once again gave her a clean bill of health, contrived a mental health issue that left her grounded permanently."  The Court denied summary judgment as to the relevant defendant on the intentional infliction of emotional distress claim and held that:

> on the present record, Currier was not simply fired, and any wrongful conduct by Entergy did not lead to her loss of only that one job; it destroyed her career. If a fact finder were to deem Currier more credible than the Entergy employees, that would mean that Entergy concocted a plan to destroy Currier's career—whether or not rooted in sex discrimination—and this could be deemed sufficiently severe and outrageous as to allow recovery for intentional infliction of emotional distress.

*Currier v. Entergy Services, Inc.*, 73 F. Supp. 3d 673, 679 (E.D. La. 2014).

In *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992), the Louisiana Supreme Court clarified *White*, *supra¸* holding that even "mild" harassment may support a claim for intentional infliction of emotional distress if it continued over a period of time:

> The rationale underlying our generalization in *White, supra,* regarding repeated conduct is that conduct which, viewed as an isolated incident, would not be outrageous or would not be likely to cause serious damage, can become such when repeated over a period of time. *See Restatement (Second) of Torts* § 46, Comment (j) (noting that both the intensity and the *duration* of the distress are factors to be considered in determining whether a pattern of conduct is actionable). This has been characterized as a sliding scale approach under which even relatively "mild" harassment may become tortious if continued over a substantial time period. Montgomery, *Sexual Harassment in the Workplace: A Practitioner's Guide To Tort Actions,* 10 Golden Gate U.L.Rev. 879, 890 (1980).

*Bustamento v. Tucker*, 607 So. 2d 532, 538 (La. 1992).

Here, Plaintiff did not simply lose his license.  He alleges that he was harassed by Defendants over a period of a period of almost a year into submitting to an OMPE and then

threatened repeatedly with the loss of his license unless he submitted to additional examinations, all based on Whitfield's baseless referral to HPFLA, on HPFLA's reliance on the false and unreliable PRC report generated to fleece Plaintiff of $50,000.   This enduring pattern of coordinated conduct was intended, and did, destroy Plaintiff's ability to practice medicine in Louisiana and other states.   This conduct was intentional and was more than capable of causing severe emotional distress.   It was coordinated because all of the Defendants referenced or relied on each other and all of the Defendants knew that they held Plaintiff's ability to practice medicine in their hand.   They acted in together to destroy Plaintiff's career.   This rises to severe  and outrageous conduct, particularly given the amount of time is lasted and the enduring consequences it has had.

> **g.      Defamation**

The Plaintiff alleged that HPFLA made false statements about the Plaintiff's fitness for duty and compliance to LSBME, to the Mississippi licensing authorities, to the PRC about Plaintiff's fitness. Dkt. 131 at ¶¶ 33, 48, 64(b) and 81.  Plaintiff alleged that Whitfield made false statements about the Plaintiff's fitness for duty to HPFLA. (Dkt. 131 at 64(a)).  Plaintiff alleges that PRC made a false statement about Plaintiff's fitness for duty to HPFLA. (*Id.* at ¶ 84).  Each of these were, despite Defendants' arguments, publications to third parties.  Each of these false statements were intentionally made.  (Dkt. 131 at ¶ 85).  Plaintiff was damaged as argued above in that he lost his Louisiana license and has been denied employment in other states. (Dkt. 131 at ¶¶ 8, 48, 49, and 55).

Therefore, the Defendants' arguments that the Plaintiff failed to pled facts to make the claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), is simply wrong.

HPFLA argues that the Plaintiff failed to pled defamation by focusing only on paragraphs 81, 85 and 86 of the complaint and ignoring that Count III incorporated that allegations of paragraph 1 through 65.  Reading the Count with the incorporated paragraphs, it is clear that Plaintiff did allege specific facts and statements made by HPFLA that support the claim.

Confusing a "qualified privilege" by which HPFLA appears to mean "qualified immunity" as analyzed in *Smith v. Our Lady of the Lake Hospital, Inc.*, 639 So.2d 730 (1994), with a "conditional privilege," HPFLA also argues that that it was required to report about fitness to practice medicine pursuant to and that therefore is immune.  Whether the "conditional privilege" or a "qualified immunity" both require that the communication be made in good faith, which is a fact question:

> The analysis for determining whether a conditional privilege exists involves a two-step process. First, it must be determined whether "the attending circumstances of a communication occasion a qualified privilege," which means that a determination must be made of whether the requirements for invoking the privilege are satisfied. *Soentgen,* 467 N.W.2d at 78–79. The second step of the analysis requires a determination of whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be defined. *Id.* While the first step is generally determined by the court as a matter of law, the second step of determining abuse of a conditional privilege or malice is generally a fact question for the jury "[u]nless only one conclusion can be drawn from the evidence." *Prosser & Keeton on Torts, supra* at § 115, p. 835; *Restatement (Second) of Torts* § 619.

*Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730, 745.

Therefore, HPFLA's mere assertion that it acted in good faith, or without malice, cannot serve as the basis to grant its motion any more than its assertion that its statements were "not false" could.

Whitfield argues that he did not publish a statement, an assertion that is wrong given the allegations of paragraph 64(a).  The fact that Plaintiff was required to sign a consent form when he saw Whitfield is irrelevant since it was not and could not have been an authorization to

publish false statement.  Whitfield's argument that he was paid for his "services" by Plaintiff and that he therefore could not have acted with malice is beside the point as Plaintiff alleges that he was fit for duty at all times.

PRC argues that it did not publish to a third party, though the complaint alleges otherwise.  (Dkt. 131 at ¶ at 84).  Like Whitfield, PRC argues that Plaintiff signed a consent but it was signed as a requirement of "treatment" before the treatment commenced, and is not alleged to have been a general liability waiver.  (Dkt. 131 at ¶ 26).  PRC, like HPFLA, argues that its communication was privileged, but there is a question of fact about its malice, or lack of good faith, given the allegations of paragraphs 31, 40, 41, 55, and 84.

h.      HPFLA is not Immune

HPFLA cites La. Rev. Stat. 37:1287 claiming it is immune from the state law claims in its submission of "information" to the LSBME because Plaintiff did not allege facts that show malice and it reasonably believed that the facts it was reporting were true.

This assertion raises a question of fact that cannot be decided by the Court on a motion to dismiss given that Plaintiff clearly alleged facts that raise the inference of malice and the inability to reasonable believe that the information reported was true. Plaintiff alleged that HPFLA, an agent of the LSBME, was aware that the PRC report was unreliable, yet used it to insist that the Plaintiff submit to further OMPEs, and despite its knowledge that there the PRC report was unreliable or false, it threatened his license repeatedly.  (Dkt. 131 at ¶¶ 29-35, 40-46, 64(b)).  These facts suggest malice, and suggest that there could have been no reasonable belief in the truth of the facts being reported given the Plaintiff's allegations that the PRC report was, at the very least, unreliable.  The motion to dismiss the state law claims on the grounds of immunity should be denied.

WHEREFORE, Plaintiff GREGORY DUHON, M.D., respectfully requests that this Court deny the Defendants' motions to dismiss and set a discovery schedule.  Plaintiff further prays for any other relief that this Court deems just.

Respectfully submitted,

/s/ Edward R. Moor
Edward R. Moor, T.A. (admitted *pro hac vice*)
(IL Bar No. 6205169)
Moor Law Office, P.C.
53 W. Jackson Blvd., Suite 1527
Chicago, Illinois 60604
(312) 726-6207

Jeffrey Weisman (admitted *pro hac vice*)
(IL Bar No. 6295539; DC Bar No. 986696)
Marek Weisman LLC
55 E Monroe Street, Suite 3800
Chicago, Illinois 60603
(312) 470-7662
jweisman@marekweisman.com

and

Kerry Murphy (La. Bar. No. 31382)
Kerry Murphy Law LLC
715 Girod Street, Suite 250
New Orleans, Louisiana 70130
(504) 603-1502
kmurphy@kerrymurphylaw.com