## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GREGORY DUHON, M.D.**                    **CIVIL ACTION**

**VERSUS**                                          **NO: 20-2022**

**HEALTHCARE PROFESSIONALS**          **SECTION "H"**
**FOUNDATION OF LOUISIANA, ET AL.**

### ORDER AND REASONS

Before the Court is Defendant Erik A. Whitfield, M.D.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 163). For the following reasons, the Motion is **GRANTED**.

### BACKGROUND

Plaintiff Gregory Duhon, M.D. brings this action against multiple Defendants for damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at Louisiana State University ("LSU") and the subsequent loss of his Louisiana medical license. Below are the facts from Plaintiff's Second Amended Complaint that are

1

relevant to the instant Motion and assumed true for purposes of a motion to dismiss.[1]

Plaintiff, after completing his residency in internal medicine, contracted with LSU to participate in its cardiology fellowship program for the 2018–2019 academic year. During the course of the program, Plaintiff alleges that he began receiving baseless criticisms of his performance and attitude. On May 3, 2019, the cardiology program director, Neeraj Jain, M.D., issued a disciplinary warning and on May 23 referred Plaintiff to LSU's Campus Assistance Program ("CAP") for a fitness-for-duty evaluation based on alleged behavioral impairments. Scott Embley, assistant director of CAP, instructed Plaintiff to submit to an occupationally mandated psychological evaluation ("OMPE") by Defendant Dr. Erik Whitfield, a psychiatrist in private practice who performs evaluations at the request of LSU.

Dr. Whitfield's OMPE of Plaintiff consisted of four one-hour private sessions. According to Plaintiff, Dr. Whitfield, upon learning that Plaintiff collected guns, insisted that he disclose extensive information about his gun collection and gun licenses. Plaintiff refused, believing that this information was irrelevant to his fitness to practice medicine. Plaintiff avers that Whitfield irrationally construed this refusal as a possible personality disorder.

After the four sessions, Dr. Whitfield reported to LSU's CAP that he was "unable to decide" whether Plaintiff was fit for duty. Dr. Whitfield further reported that to be properly "treated," Plaintiff should register with the

---

[1] *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Healthcare Professionals' Foundation of Louisiana ("HPFLA").[2] Dr. Whitfield had no further involvement in Plaintiff's case.

In this action, Plaintiff brings claims against a number of Defendants, including Dr. Whitfield, for violations of procedural and substantive due process under 42 U.S.C. § 1983 and for intentional infliction of emotional distress and defamation under Louisiana Civil Code article 2315. Now before the Court is Dr. Whitfield's Motion to Dismiss Plaintiff's claims against him under Federal Rule of Civil Procedure 12(b)(6).[3] Plaintiff opposes.[4]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[5] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[7] The court need not, however, accept as true legal conclusions couched as factual allegations.[8] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the

---

[2] HPFLA is a non-profit corporation created by the Louisiana State Board of Medical Examiners ("LSBME") to "oversee the evaluation, treatment, and monitoring of impaired or potentially impaired physicians." Doc. 131, ¶ 3.

[3] Doc. 163

[4] Doc. 169.

[5] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. 547).

[6] *Id.*

[7] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[8] *Ashcroft*, 556 U.S. at 678.

plaintiff's claims are true.[9] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[10] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[11]

## LAW AND ANALYSIS

In his Motion to Dismiss, Dr. Whitfield asks the Court to dismiss Plaintiff's three claims against him: (1) deprivation of procedural and substantive due process in violation of § 1983, (2) intentional infliction of emotional distress, and (3) defamation.[12] The Court will discuss each claim in turn.

## I.   Deprivation of Substantive and Procedural Due Process Under 42 U.S.C. § 1983 and *Ex parte Young*

Plaintiff asserts a claim against Dr. Whitfield in his individual and official capacities for deprivation of procedural and substantive due process under § 1983 and under the *Ex parte Young* exception.[13] "To state a claim under § 1983, plaintiffs must allege two elements: first that they were deprived of a right or interest secured by the Constitution and laws of the United States,

---

[9] *Id.*
[10] *Lormand*, 565 F.3d at 255–57.
[11] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[12] Doc. 163. See Doc. 131, ¶¶ 59–86 for Plaintiff's claims.
[13] Doc. 131, ¶¶ 60, 64.

and second that the deprivation occurred under color of state law."[14] Here, Plaintiff alleges that Dr. Whitfield was acting under color of state law when depriving him of his constitutional right to procedural and substantive due process under the Fourteenth Amendment.

Dr. Whitfield argues that this due process claim must fail because Plaintiff has not sufficiently alleged facts indicating that Dr. Whitfield was acting under color of state law while performing the OMPE of Plaintiff. For a private actor who is not a state official to act "under color of state law" for the purposes of § 1983, his conduct must be fairly attributable to the state.[15] To determine whether the actions of a private entity are fairly attributable to the state, the "inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."[16] To aid in this inquiry, the Supreme Court has articulated three tests: (1) the nexus or joint-action test, (2) the public function test, and (3) the state coercion or encouragement test.[17]

"[T]he nexus or state action test finds state action where the state has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise.'"[18] Under the public function test, "a private entity acts under color of state law when the entity

---

[14] Doe v. Rains Cnty. Ind. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).
[15] Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).
[16] Daigle v. Opelousas Health Care, Inc., 774 F.2d 1344, 1348–49 (5th Cir. 1985) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974) (internal quotation marks omitted)).
[17] Cornish v. Corr. Servs. Corp., 402 F.3d 545, 549–50 (5th Cir. 2005) (citations omitted).
[18] Richard v. Hoechst Celanese Chem. Grp., Inc., 355 F.3d 345, 352 (5th Cir. 2003) (quoting *Jackson*, 419 U.S. at 357–58), *cert denied*, 543 U.S. 917 (2004).

performs a function which is 'exclusively reserved to the state.'"[19] Finally, the state coercion or encouragement test "holds the state responsible 'for a private decision only when [the state] has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[20]

In his Motion to Dismiss, Dr. Whitfield argues that he is a private actor. He avers that he operates a private psychiatric practice in New Orleans, that Plaintiff—not LSU or another state actor—paid him for the OMPE, and that he sent his report to LSU with Plaintiff's consent. Dr. Whitfield denies having any contract of employment or other legal relationship with a state entity like LSU. Plaintiff's allegations do not contradict any of these facts. Private conduct, no matter how discriminatory or wrongful, falls outside § 1983's ambit.[21]

Plaintiff counters that his Second Amended Complaint alleges that Whitfield acted on behalf of and in conjunction with LSU in referring Plaintiff to HPFLA.[22] Additionally, Plaintiff argues that Dr. Whitfield became "interdependent with LSU because he performed fit for duty examinations for it."[23] In fact, Plaintiff's allegations paint a different picture. The only connection alleged between LSU and Dr. Whitfield is CAP's instruction to Plaintiff to submit to an OMPE by Dr. Whitfield and the subsequent report

---

[19] *Id.* (quoting Flagg Bros. v. Brooks, 436 U.S. 149, 157–58 (1978)).

[20] *Id.* (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

[21] *Cornish*, 402 F.3d at 549 (citing *Richard*, 355 F.3d at 352).

[22] *See* Doc. 169 at 10 (citing Doc. 131, ¶¶ 20, 50, 55).

[23] *Id.*

relayed to CAP after the conclusion of the four private sessions.[24] Further, Plaintiff alleges that Dr. Whitfield merely recommended he visit HPFLA, rather than referring him there himself.[25] Indeed, Plaintiff later mentions "the baseless referral to HPFLA *by LSU*," not Dr. Whitfield.[26]

The Court finds that Plaintiff has not sufficiently alleged that Dr. Whitfield's conduct was fairly attributable to the state under any of the above tests. The argument that Dr. Whitfield was "interdependent" with LSU suggests that Plaintiff believes the nexus or joint-action test applies here. However, it can hardly be said that LSU was a "joint participant" in the OMPE of Plaintiff.[27] Besides the initial referral, there is no other allegation of LSU's involvement with the OMPE. A state entity's referral alone cannot transform a private psychiatrist into a state actor.

Given that Plaintiff has failed to plead facts sufficient to show that Dr. Whitfield's conduct was fairly attributable to the state, Dr. Whitfield cannot be liable under § 1983 or *Ex parte Young*. Therefore, Plaintiff's due process claim is dismissed with prejudice. The Court need not consider Plaintiff's other allegations of due process deprivations.

## II.   Intentional Infliction of Emotional Distress

Next, Plaintiff asserts a claim against Dr. Whitfield for intentional infliction of emotional distress ("IIED"). Specifically, Plaintiff alleges that

---

[24] Doc. 131, ¶¶ 17–23.
[25] *Id.* ¶ 20 ("Whitfield reported . . . that to be properly 'treated' Plaintiff would need to register with HPFLA and follow its instructions for treatment and monitoring.").
[26] *Id.* ¶ 55 (emphasis added).
[27] *See* Doc. 169 at 10; *Richard*, 355 F.3d at 352.

"Whitfield's baseless referral to HPFLA was intended to harass and punish the Plaintiff," and that Dr. Whitfield irrationally construed Plaintiff's refusal to disclose information about his gun collection as a possible personality disorder.[28] Dr. Whitfield argues that even assuming he behaved as Plaintiff represents, that conduct does not go beyond all bounds of decency as required by the standard for IIED claims.[29]

"[T]o recover for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[30] To succeed on this claim, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[31] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[32]

This Court finds that Plaintiff has failed to allege sufficient facts to meet any of the three elements of IIED. First, even assuming Dr. Whitfield baselessly recommended that Plaintiff see HPFLA and irrationally fixated on his gun ownership, that conduct is not "atrocious and utterly intolerable in a

---

[28] Doc. 131, ¶¶ 70, 19; *see* Doc. 169 at 15–16.
[29] *See* Doc. 163-1 at 14–15.
[30] White v. Monsanto, 585 So. 2d 1205, 1209 (La. 1991).
[31] *Id.*
[32] *Id.*

civilized community."[33] In support of his IIED claim, Plaintiff quotes the opinion in *Currier v. Entergy Services, Inc.*, wherein another section of this Court denied summary judgment on an emotional distress claim after finding evidence that the defendant's conduct "did not lead to [the plaintiff's] loss of only that one job; it destroyed her career."[34] In *Currier*, however, the Court found a genuine issue of material fact as to whether the defendant "concocted a plan to destroy Currier's career."[35] Here, the allegations do not reflect that Dr. Whitfield executed a plan to destroy Plaintiff's career.

Second, Plaintiff does not present facts that indicate his emotional distress was severe. It is not sufficient to assert severe emotional distress in a conclusory fashion without any facts supporting that allegation, as Plaintiff does.[36] Third and finally, Plaintiff's allegation as to Dr. Whitfield's intent is similarly conclusory.[37] Thus, this Court finds that Plaintiff has failed to meet the high bar for IIED claims in Louisiana, and his claim is dismissed.

---

[33] *Id.*

[34] 73 F. Supp. 3d 673, 679 (E.D. La. 2014).

[35] *Id.*

[36] *See* Wilson v. Ochsner Clinic Found., No. 19-12314, 2019 WL 5693109, at *7 (E.D. La. Nov. 4, 2019) ("Furthermore, the second element of intentional infliction of emotional distress requires Plaintiff to prove symptoms of emotional distress like 'neuroses, psychoses, chronic depression, phobia, and shock.' Plaintiff does not plead any facts — visits to health care providers as result of the emotional stress, physical symptoms resulting from the emotional distress — that would allow him to prove he suffered actual severe emotional distress.") (citations omitted).

[37] *See* Doc. 131, ¶ 75.

## III.   Defamation

Lastly, Plaintiff brings a claim of defamation against Dr. Whitfield. Plaintiff alleges that "Whitfield falsely stated he could not conclude Plaintiff was fit-for-duty" and "knowingly published that false statement to HPFLA."[38] Dr. Whitfield argues that he made no false or defamatory statements about Plaintiff and that he had no malice toward Plaintiff before or after the evaluation.[39]

Under Louisiana law, the elements of a defamation claim include: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[40] "The [defamation] jurisprudence often defines the fault requirement as either actual or implied malice."[41] "Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation."[42]

Here, the Court finds that Plaintiff has failed to sufficiently allege facts indicating that Dr. Whitfield lacked a reasonable belief in his statement that he was "'unable to decide' whether Plaintiff was fit for duty."[43] Even assuming that Dr. Whitfield unreasonably obsessed over Plaintiff's gun ownership and his refusal to disclose information on that front, it does not follow that Dr.

---

[38] *Id.* ¶ 64(a).

[39] *See* Doc. 163-1 at 15–17.

[40] Bellard v. Gautreaux, 675 F.3d 454, 464 (5th Cir. 2012) (citing Costello v. Hardy, 864 So. 2d 129, 139 (La. 2004)).

[41] Meyers v. Siddons-Martin Emergency Group LLC, No. 16-1197, 2016 WL 5337957, at *5 (E.D. La. Sept. 23, 2016) (citing *Costello*, 864 So. 2d at 130).

[42] *Costello*, 864 So. 2d at 143.

[43] Doc. 131, ¶ 20.

Whitfield had no reasonable basis for his ambivalent conclusion. Plaintiff fails to connect Dr. Whitfield's irrationality over guns to his conclusion about Plaintiff. In other words, Dr. Whitfield may have had other, reasonable grounds for his statement that he could not decide whether Plaintiff was fit for duty. Accordingly, the Court dismisses Plaintiff's defamation claim.

"[U]nless futile, courts generally allow one chance to amend deficient pleadings before dismissing with prejudice."[44] Here, Plaintiff has already amended his Complaint on two separate occasions, and the Court finds that further amendment would be futile.

## CONCLUSION

For the foregoing reasons, Dr. Whitfield's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 163) is **GRANTED.**

**IT IS ORDERED** that all of Plaintiff's claims against Dr. Whitfield are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 28th day of January, 2022.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[44] Buc-ee's, Ltd. v. Bucks, Inc., 262 F. Supp. 3d 453, 467 (S.D. Tex. 2017) (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002)).