UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**GREGORY DUHON, M.D.**                                **CIVIL ACTION**

**VERSUS**                                             **NO: 20-2022**

**HEALTHCARE PROFESSIONALS'**                          **SECTION "H"**
**FOUNDATION OF LOUISIANA, ET AL.**

## ORDER AND REASONS

Before the Court is Defendant Professional Renewal Center, P.A.'s Motion to Dismiss (Doc. 149). For the following reasons, this Motion is **GRANTED**.

## BACKGROUND

Plaintiff Gregory Duhon, M.D. brings this action against multiple Defendants for damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at Louisiana State University ("LSU") and the subsequent loss of his Louisiana medical license. Below are the facts from Plaintiff's Second Amended Complaint that are

1

relevant to the instant Motion and assumed true for purposes of a motion to dismiss.[1]

Plaintiff, after completing his residency in internal medicine, contracted with LSU to participate in its cardiology fellowship program for the 2018–2019 academic year. During the course of the program, Plaintiff alleges that he began receiving baseless criticisms of his performance and attitude. On May 3, 2019, the cardiology program director, Neeraj Jain, M.D., issued a disciplinary warning and on May 23 referred Plaintiff to LSU's Campus Assistance Program ("CAP") for a fitness-for-duty evaluation based on alleged behavioral impairments. Scott Embley, assistant director of CAP, instructed Plaintiff to submit to an occupationally mandated psychological evaluation ("OMPE") by Defendant Dr. Erik Whitfield, a psychiatrist in private practice who performs evaluations at the request of LSU.

Dr. Whitfield's OMPE of Plaintiff consisted of four one-hour private sessions. After the four sessions, Dr. Whitfield issued to CAP a report that said he was unable to decide whether Plaintiff was fit for duty. Dr. Whitfield stated that to be properly treated, Plaintiff would need to register with Defendant Healthcare Professionals' Foundation of Louisiana ("HPFLA").[2] Upon receiving the report, CAP instructed Plaintiff to report to HPFLA.[3]

Plaintiff did as CAP instructed, and upon registering with HPFLA, the case manager there directed Plaintiff to report to one of three treatment

---

[1] *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).
[2] HPFLA is a non-profit corporation created by the Louisiana State Board of Medical Examiners ("LSBME") to "oversee the evaluation, treatment, and monitoring of impaired or potentially impaired physicians." Doc. 131, ¶ 3.
[3] *Id.* ¶ 22.

centers to undergo a more comprehensive psychological exam at Plaintiff's expense. Of the three options, Plaintiff chose Defendant Professional Renewal Center, P.A. ("PRC"), an assessment and treatment facility in Lawrence, Kansas. Plaintiff went there in July 2019. After examining Plaintiff for three days, PRC rendered what Plaintiff alleges to be a sham report that diagnosed past ADHD and past substance abuse disorder, among other allegedly false "behavioral traits." Plaintiff alleges, "The report's 'diagnostic formulation' . . . was a confused mix of historical information (including his resignation from the fellowship program); supposed conditions 'in sustained remission'; general categories of purported 'personality traits'; several 'other,' 'unspecified' and 'possible' issues; and 'self-reported' matters."[4] PRC's report recommended further treatment, which Plaintiff claimed was likely to cost him more than $50,000. After issuing its report to HPFLA, PRC was no longer involved in Plaintiff's case.

In this action, Plaintiff brings claims against a number of Defendants, including PRC, for intentional infliction of emotional distress and defamation under Louisiana Civil Code article 2315. Now before the Court is PRC's Motion to Dismiss all of Plaintiff's claims against it under Federal Rule of Civil Procedure 12(b)(6).[5] Plaintiff opposes.[6]

## **LEGAL STANDARD**

---

[4] *Id.* ¶ 28.
[5] Doc. 149.
[6] Doc. 169.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[7] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[9] The court need not, however, accept as true legal conclusions couched as factual allegations.[10] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[11] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[12] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[13]

## LAW AND ANALYSIS

In its Motion to Dismiss, PRC asks the Court to dismiss Plaintiff's two claims against it: (1) intentional infliction of emotional distress ("IIED") and (2) defamation.[14] The Court will discuss each claim in turn.

### I.   IIED

---

[7] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 547).
[8] *Id.*
[9] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[10] *Ashcroft*, 556 U.S. at 678.
[11] *Id.*
[12] *Lormand*, 565 F.3d at 255–57.
[13] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[14] Doc. 149. See Doc. 131, ¶¶ 59–86 for Plaintiff's claims.

4

Plaintiff asserts a claim of IIED against PRC. Specifically, Plaintiff alleges that PRC finding him unfit for duty was extreme and outrageous behavior and that its report was made "with the intent to force [Plaintiff] to undergo further psychological examinations and treatment at the cost of his medical license."[15] PRC counters that these allegations fail to state a claim for IIED.[16]

"[T]o recover for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[17] To succeed on this claim, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[18] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[19]

This Court finds that Plaintiff has failed to allege sufficient facts to meet any of the three elements of IIED. First, intentionally rendering a fraudulent or sham report with baseless diagnoses could certainly be extreme and outrageous behavior, but Plaintiff has not alleged sufficient facts to support these conclusions. In fact, what little Plaintiff does allege is often directly

---

[15] Doc. 131, ¶¶ 68, 73.
[16] *See* Doc. 149-1 at 7–8.
[17] White v. Monsanto, 585 So. 2d 1205, 1209 (La. 1991).
[18] *Id.*
[19] *Id.*

contradicted by the PRC report.[20] PRC did not recommend inpatient treatment of a certain cost, did not suggest any particular length of stay, and did not refer Plaintiff to PRC alone.[21] Further, Plaintiff takes issue with some of PRC's statements about him that, even according to his own version of events, are true.

Plaintiff's allegations as to his psychiatrist's reaction to the PRC report are similarly unavailing. Dr. Graham Spruiell wrote that the PRC psychiatrist who performed Plaintiff's mental status examinations reached conclusions "hardly consistent" with PRC's recommendations.[22] Notwithstanding the fact that the mental status exam was only one among a battery of other analyses of Plaintiff, Dr. Spruiell's conclusion is hardly consistent with fraud. An incorrect or even negligent psychological report does not rise to the level of a fraudulent one.

As to the second element of IIED, Plaintiff does not present facts that indicate his emotional distress was severe. It is not sufficient to assert severe emotional distress in a conclusory fashion without any facts supporting that contention, as Plaintiff does.[23] Plaintiff's allegation as to PRC's intent to inflict

---

[20] The Court can consider PRC's report because it is attached by reference in PRC's motion to dismiss, referred to in Plaintiff's Complaint, and central to his claims against PRC. Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019) ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents.").

[21] *See* Doc. 96-1 at 27–28 (sealed). PRC actually recommended less than inpatient treatment with no particular length or cost at a couple suggested locations or any other HPFLA-approved provider.

[22] Doc. 131, ¶ 41.

[23] *See* Wilson v. Ochsner Clinic Found., No. 19-12314, 2019 WL 5693109, at *7 (E.D. La. Nov. 4, 2019) ("Furthermore, the second element of intentional infliction of emotional distress requires Plaintiff to prove symptoms of emotional distress like 'neuroses, psychoses, chronic

emotional distress is also conclusory.[24] Thus, this Court finds that Plaintiff has failed to meet the high bar for IIED claims in Louisiana, and his claim is dismissed.

## II. Defamation

Lastly, Plaintiff brings a claim of defamation against PRC. Specifically, Plaintiff alleges that "PRC's statements to HPFLA that the Plaintiff was not fit for duty were false" and that "PRC's laundry list of alleged diagnoses were defamatory."[25] PRC responds that Plaintiff has not alleged that PRC engaged in an unprivileged publication because it did not; Plaintiff authorized the disclosure of PRC's report to HPFLA.[26]

Under Louisiana law, the elements of a defamation claim include: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[27] The Court finds that Plaintiff has failed to sufficiently allege facts indicating that PRC made an unprivileged publication. The Court's conclusion is supported by the case of *Bass v. DISA Global Solutions, Inc.*[28] There, the plaintiff signed a release that authorized

---

depression, phobia, and shock.' Plaintiff does not plead any facts — visits to health care providers as result of the emotional stress, physical symptoms resulting from the emotional distress — that would allow him to prove he suffered actual severe emotional distress.").
[24] *See* Doc. 131, ¶ 75.
[25] *Id.* ¶ 84. Plaintiff also alleges that "PRC's recommendations for further treatment given Plaintiff's actual mental condition were false statements to the extent that they asserted that he needed to follow any of the recommendations." *Id.*
[26] *See* Doc. 149-1 at 8–10.
[27] Bellard v. Gautreaux, 675 F.3d 454, 464 (5th Cir. 2012) (citing Costello v. Hardy, 864 So. 2d 129, 139 (La. 2004)).
[28] 318 So. 3d 909 (La. App. 1 Cir. 2020).

7

the defendant-company to report the results of his drug test to a national database.[29] Based on the language of the release, the court held that the plaintiff was unable to establish that there was an unprivileged publication to a third party, and his defamation claim failed as a result.[30]

Here, Plaintiff signed an "Authorization to Exchange Information" that provided, "I hereby authorized the staff of the Professional Renewal Center® and its employees, agents, or consultants to: Exchange information with Felix Vanderlick," the case manager at HPFLA.[31] The form also stated, "I understand that this consent may be revoked at any time, except to the extent already acted upon by PRC®, and in which case I agree to hold PRC harmless, by giving notice to PRC."[32] Because Plaintiff consented to PRC sending its report to HPFLA, he cannot establish an unprivileged publication.

"[U]nless futile, courts generally allow one chance to amend deficient pleadings before dismissing with prejudice."[33] Here, Plaintiff has already amended his Complaint on two separate occasions, and the Court finds that further amendment would be futile.

---

[29] *Id.* at 924.

[30] *Id.* at 925.

[31] Doc. 96-1 at 10. Plaintiff mentions this document in his Complaint. Doc. 131, ¶ 26. The document is also central to his claim for defamation in the sense that the claim turns on the validity and effect of it.

[32] Doc. 96-1 at 10.

[33] Buc-ee's, Ltd. v. Bucks, Inc., 262 F. Supp. 3d 453, 467 (S.D. Tex. 2017) (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002)).

## CONCLUSION

For the foregoing reasons, PRC's Motion to Dismiss (Doc. 149) is **GRANTED.**

**IT IS ORDERED** that Plaintiff's claims against PRC are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 1st day of February, 2022.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**