UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREGORY DUHON, M.D.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 20-2022** |
| **HEALTHCARE PROFESSIONALS' FOUNDATION OF LOUISIANA, ET AL.** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendant Lawrence Cresswell's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 166). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Gregory Duhon, M.D. brings this action against multiple Defendants for damages and injunctive relief arising from his suspension and termination from the cardiology fellowship program at Louisiana State University ("LSU") and the subsequent loss of his Louisiana medical license. Below are the facts from Plaintiff's Second Amended Complaint that are

1

relevant to the instant Motion and assumed true for purposes of a motion to dismiss.[1]

Plaintiff, after completing his residency in internal medicine, contracted with LSU to participate in its cardiology fellowship program for the 2018–2019 academic year. During the course of the program, Plaintiff alleges that he began receiving baseless criticisms of his performance and attitude. On May 3, 2019, the cardiology program director, Neeraj Jain, M.D., issued a disciplinary warning and on May 23 referred Plaintiff to LSU's Campus Assistance Program ("CAP") for a fitness-for-duty evaluation based on alleged behavioral impairments. Scott Embley, assistant director of CAP, instructed Plaintiff to submit to an occupationally mandated psychological evaluation ("OMPE") by Defendant Dr. Erik Whitfield, a psychiatrist in private practice who performs evaluations at the request of LSU.

After conducting the OMPE, Dr. Whitfield created a report that said he was unable to decide whether Plaintiff was fit for duty. Dr. Whitfield stated that to be properly treated, Plaintiff should register with Defendant Healthcare Professionals' Foundation of Louisiana ("HPFLA").[2] Dr. Whitfield sent his report to CAP, which then instructed Plaintiff to report to HPFLA.[3]

Plaintiff did as CAP instructed, and upon registering with HPFLA, it directed Plaintiff to report to one of three treatment centers to undergo a more comprehensive psychological exam at Plaintiff's expense. Of the three options,

---

[1] *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).
[2] HPFLA is a non-profit corporation created by the Louisiana State Board of Medical Examiners ("LSBME") to "oversee the evaluation, treatment, and monitoring of impaired or potentially impaired physicians." Doc. 131, ¶ 3.
[3] *Id.* ¶ 22.

Plaintiff chose Defendant Professional Renewal Center ("PRC") in Lawrence, Kansas and went there in July 2019. After examining Plaintiff for three days, PRC rendered an allegedly sham report that diagnosed past ADHD and past substance abuse disorder, among other allegedly baseless "behavioral traits" that Plaintiff supposedly needed to address with counseling. PRC's report recommended further treatment, which Plaintiff claimed was likely to cost him more than $50,000.

PRC then sent its report to HPFLA. Despite allegedly knowing of the borderline fraudulent nature of PRC's report, HPFLA threatened to report Plaintiff to LSBME if he did not comply with PRC's recommendation. Plaintiff refused to comply because he could not afford the treatment and did not believe it was medically necessary.

In September 2019, HPFLA reported to LSBME that Plaintiff was not compliant with its or PRC's recommendations. In October, Defendant Lawrence Cresswell, D.O., the Director of Investigations at LSBME, notified Plaintiff that he was under investigation for possible violations of the Louisiana Medical Practice Act based on his noncompliance with HPFLA and PRC's instructions. Over the course of the next few months, Dr. Cresswell would repeatedly state that to help resolve the investigation, Plaintiff should comply with those instructions.

Plaintiff alleges that LSBME opened an indefinite preliminary review of his case that never proceeded to the next steps, in violation of state law and regulations. Plaintiff further contends that LSBME held no hearing and gave no opportunity for Plaintiff to present evidence that he was fit for duty, which

Plaintiff claimed to have in the form of independent psychological examinations from two retained psychiatrists. Fed up with LSBME and refusing to undergo more allegedly unjustified exams, Plaintiff let his Louisiana medical license lapse in July 2020. Afterwards, LSBME, acting at Dr. Cresswell's behest, allegedly reported Plaintiff to the National Practitioner Data Bank ("NPDB") for surrendering his license during an investigation. Any institution to which a physician applies for employment queries the NPDB, so LSBME's report allegedly hurt Plaintiff's employment opportunities in other states.

In this action, Plaintiff brings a claim against Dr. Cresswell in his official capacity for due process violations under the Fourteenth Amendment. Plaintiff alleges that due process requires some kind of hearing or opportunity to present evidence during an investigation such as this, and Plaintiff was given no such opportunity. Invoking *Ex parte Young*, Plaintiff seeks injunctive relief in the form of ordering Dr. Cresswell to "expunge from or seal [his] records to the extent that they indicate in any way that Plaintiff was subject to any impairment inquiry."[4] Now before the Court is Dr. Cresswell's Motion to

---

[4] *Id.* ¶ 65(A); 209 U.S. 123 (1908).

Dismiss Plaintiff's claim against him under Federal Rule of Civil Procedure 12(b)(1).[5] Plaintiff opposes.[6]

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[7] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[8] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[9]

## LAW AND ANALYSIS

In his Motion to Dismiss, Dr. Cresswell asks the Court to dismiss Plaintiff's due process claim against him in his official capacity on the grounds

---

[5] Doc. 166. While Dr. Cresswell does not explicitly mention Rule 12(b)(1) in his Motion to Dismiss, he does correctly note that if *Ex parte Young* does not apply, the Court would lack jurisdiction, meaning dismissal is appropriate under Rule 12(b)(1). The Fifth Circuit considers dismissals based on state sovereign immunity as jurisdictional under Rule 12(b)(1). *See* Cantu Servs., Inc. v. Roberie, 535 Fed. Appx. 342, 346 n.3 (5th Cir. 2013) ("Generally, this court has treated dismissals based on state sovereign immunity as jurisdictional under Fed. Rule Civ. Proc. 12(b)(1). Like the Supreme Court itself, however, we recognize the uniquely ambiguous character of Eleventh Amendment immunity.") (citations omitted).
[6] Doc. 169.
[7] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).
[8] Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001).
[9] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

that the requirements for *Ex parte Young* have not been met.[10] "The Eleventh Amendment generally precludes actions against state officers in their official capacities."[11] However, the *Ex parte Young* doctrine allows a plaintiff to sue a state officer in his official capacity for prospective injunctive or declaratory relief.[12] "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[13]

Here, Plaintiff seeks prospective relief insofar as he asks Dr. Cresswell to purge his records at some point in the future. However, there is no allegation of an *ongoing* violation of federal law. Plaintiff alleges that Dr. Cresswell denied him due process during his investigation. That investigation has since ceased. *Ex parte Young* only applies to "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."[14] Plaintiff has not alleged that, after letting his medical license lapse, he has attempted to reapply for a Louisiana license. There is no reason to believe that the same

---

[10] Doc. 166 at 4–6. Plaintiff amended his Second Amended Complaint so that it was clear that Dr. Cresswell was sued only in his official capacity and only for injunctive relief. *See* Doc. 155.
[11] *Cantu Servs., Inc.*, 535 Fed. Appx. at 344 (internal quotations omitted).
[12] *See* Fontenot v. McCraw, 777 F.3d 741, 752 (5th Cir. 2015).
[13] Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)).
[14] Papasan v. Allain, 478 U.S. 265, 277–78 (1986).

6

alleged due process violations that occurred in the past are ongoing or likely to reoccur anytime soon.

Plaintiff unsuccessfully attempts to respond to this point.[15] He claims that because Dr. Cresswell can retract his report to the NPDB and seal or expunge certain damaging records, Dr. Cresswell can ameliorate the harm to Plaintiff's employment prospects that is allegedly ongoing. This argument conflates an ongoing constitutional violation with a continued effect or byproduct of a past violation.[16] As the Fifth Circuit has explained,

> While "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law," the same rationale does not apply to remediation of a *prior* violation of federal law. Thus, to comply with the dictates of *Ex parte Young*, plaintiffs' lawsuit must allege that the defendants' actions are *currently* violating federal law.[17]

This Court notes that the Fourth Circuit reached the same conclusion in a similar case. In *Jemsek v. Rhyne*, the plaintiff, a physician licensed in North Carolina, was sanctioned for misconduct in 2006 by the North Carolina Medical Board.[18] The Board then investigated the plaintiff's medical practice two years later and upon completion, informed him that if he allowed his medical license to lapse, the Board would end the investigation.[19] The plaintiff let his license expire, and the Board issued a "public letter of concern" as to his

---

[15] *See* Doc. 169 at 7.
[16] *See* Manion v. N.C. Med. Bd., No. 5:16-CV-63, 2016 WL 4523902, at *4 (E.D.N.C. Aug. 22, 2016).
[17] Williams On Behalf of J.E. v. Reeves, 954 F.3d 729, 737 (5th Cir. 2020) (quoting *Papasan*, 478 U.S. at 278) (emphasis in original) (cleaned up).
[18] 662 Fed. Appx. 206, 208 (4th Cir. 2016).
[19] *Id.*

conduct. Afterwards, the plaintiff filed suit against members of the Board, invoking *Ex parte Young* on the grounds that because the sanctions were still on the record, the violation was ongoing.[20]

Presented with these facts, the Fourth Circuit concluded that the Eleventh Amendment barred the plaintiff's claims against the Board members and that *Ex parte Young* did not apply.[21] The court reasoned, "[T]he Board is not continuing to violate Jemsek's rights."[22] It noted that the plaintiff let his own license lapse and had not sought reinstatement of it.[23] "[E]ven though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation. Rather, it is an attempt 'to avoid the obvious fact that the actual violation alleged is a past event that is not itself continuing.'"[24]

Although this Court is not bound by the Fourth Circuit's precedent, its reasoning is persuasive and applicable to this case. Here, Plaintiff let his license lapse, and he has not sought to reapply for a Louisiana medical license. All of the alleged violations occurred in the past, and no violations are alleged to have continued beyond the context of the investigation into Plaintiff's fitness for duty. The consequences of that investigation may continue to reverberate, but that is immaterial for purposes of *Ex parte Young*.

---

[20] *Id.* at 211.
[21] *Id.* at 209.
[22] *Id.* at 211.
[23] *Id.* at 212.
[24] *Id.* at 211 (quoting Republic of Paraguay v. Allen, 134 F.3d 622, 628 (4th Cir. 1998)).

8

Plaintiff cites the Fifth Circuit case of *Nelson v. University of Texas at Dallas* in support of the proposition that "reinstatement is prospective relief."[25] Plaintiff's argument seems to be that his request for relief from Dr. Cresswell is akin to a request for reinstatement of employment. In *Nelson*, the Fifth Circuit followed its precedent in *Warnock v. Pecos County*, holding that a request for reinstatement of employment satisfies the requirements of *Ex parte Young*.[26] This holding, however, is inapplicable to the instant case for two reasons. First, Plaintiff's request for Dr. Cresswell to retract a report and expunge a record is not comparable to reinstatement. Second, the Fifth Circuit has since acknowledged that "[t]he special considerations surrounding public employment, and the holding in *Warnock*, are not binding" in other contexts unless *Warnock* and its progeny have been extended to those settings.[27] Here, Plaintiff cites no cases extending the holdings of *Warnock* and *Nelson* to instances of due process deprivations.

Accordingly, the Court finds that Plaintiff has not satisfied the requirements of *Ex parte Young*, and therefore sovereign immunity bars his claim. "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."[28] Thus, the Court dismisses without prejudice Plaintiff's claim against Dr. Cresswell for injunctive relief.

---

[25] 535 F.3d 318 (5th Cir. 2008); Doc. 169 at 7.
[26] *Nelson*, 535 F.3d at 323–24 (citing Warnock v. Pecos Cnty., 88 F.3d 341, 343 (5th Cir. 1996)).
[27] *Cantu Servs., Inc.*, 535 Fed. Appx. at 344.
[28] *Warnock*, 88 F.3d at 343.

9

## CONCLUSION

For the foregoing reasons, Dr. Cresswell's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 166) is **GRANTED.**

**IT IS ORDERED** that Plaintiff's only claim against Dr. Cresswell is hereby **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana this 2nd day of February, 2022.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**